STUART F. DELERY
Assistant Attorney General
COLIN A. KISOR
Acting Director
ELIZABETH J. STEVENS
Assistant Director
JENNIFER A. BOWEN
Trial Attorney, District Court Section
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3558
Email: Jennifer.Bowen@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUDLEY BARRINGTON LYON, JR., *et al.*, | No. 3:13-cv-05878-EMC |
| Plaintiffs, | DEFENDANTS' ANSWER |
| vs. | |
| U.S. IMMIGRATION & CUSTOMS ENFORCEMENT, *et al.*, | |
| Defendants. | |

1

Defendants U.S. Immigration and Customs Enforcement ("ICE"); John Sandweg ("Sandweg"), Acting Director of ICE[1]; U.S. Department of Homeland Security ("DHS"); Jeh Johnson ("Johnson"), Secretary of DHS; and Timothy Aitken ("Aitken"), Field Office Director for the ICE Enforcement and Removal Operations ("ERO") Field Office in San Francisco (collectively, "Defendants"), without waiving affirmative defenses as follow, hereby answer the Complaint for Injunctive and Declaratory Relief filed by Plaintiffs Audley Barrington Lyon, Jr. ("Lyon"); Edgar Cornelio[2] ("Cornelio"); José Elizandro Astorga-Cervantes ("Astorga-Cervantes"); and Lourdes Hernandez-Trujillo ("Hernandez-Trujillo") on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"). *See* ECF No. 1 (hereinafter, "Complaint").

Defendants state as follows in response to each of the numbered paragraphs in Plaintiffs' Complaint:

<u>INTRODUCTION</u>

1.      DENIED in part and ADMITTED in part.  The first sentence of Paragraph 1 is a summary of the relief Plaintiffs seek on behalf of the class they propose to certify, to which no response is required.  To the extent a response is

---

[1] Mr. Sandweg will resign from his position as Acting Director of ICE effective February 21, 2014.  His successor will be substituted under Federal Rule Civil Procedure 25(d) on all future filings.

[2] According to DHS databases, "Edgar Cornelio" is one of the aliases used by Santos Garcia Morales (Axx-xxx-714).  For ease of reference, Defendants will refer to this individual as Cornelio, the name under which he filed this litigation, but note that Garcia Morales is the name that appears on the administrative file and all immigration documents related to this individual.

required, Defendants deny any allegation of "ongoing violations of the constitutional and statutory rights of immigrants held in government custody pending deportation proceedings." Defendants also deny any and all allegations that "[t]hose rights (and others) are systematically denied by Defendants. Defendants further deny that Plaintiffs have alleged claims sufficient to certify the class they propose. Defendants admit that aliens in removal proceedings have certain procedural and substantive rights afforded by the U.S. Constitution and federal statutes.

2.     DENIED. Paragraph 2 is a broad summary of Plaintiffs allegations in this litigation, including Plaintiffs' reasoning for filing this litigation, to which no response is required. To the extent a response is required, Defendants deny that any DHS or ICE "policies or practices . . . deny and severely restrict [Plaintiffs'] ability to make telephone calls." Indeed, Plaintiffs' Complaint does not identify or otherwise challenge as insufficient or otherwise violative of Plaintiffs' rights any DHS or ICE policy governing immigration detainees who are held in government custody pending deportation proceedings.

3.     DENIED in part and ADMITTED in part. Defendants admit that the two of the four named Plaintiffs – Lyon and Hernandez-Trujillo – are in ICE custody pending resolution of their removal proceedings. Defendants deny Astorga-Cervantes is in ICE custody; Astorga-Cervantes posted bond and was released from detention on February 20, 2104. Defendants deny that Cornelio is detained by ICE and that removal proceedings against Cornelio remain pending; Cornelio was ordered removed to Guatemala by an Immigration Judge at his hearing on January

23, 2014, and waived appeal of that decision, rendering it a final removal order, thus concluding his removal proceedings. Additionally, Cornelio was removed to Guatemala on February 11, 2014, ending his immigration detention. Defendants further deny that the class Plaintiffs seek to represent consists only of aliens detained by ICE "pending" their removal proceedings. Plaintiffs seek to certify a class consisting of "all current and future adult immigration detainees who . . . are or will be held in ICE custody in its northern California immigration detention facilities," Compl. (ECF No. 1) ¶ 7, but not all those within Plaintiffs' proposed class definition will have or have had pending removal proceedings. Defendants admit that – with the exception of those mentally incompetent aliens who are within the class certified in *Franco-Gonzalez v. Holder*, Case No. 10-cv-02211-DMG (DTBx) – aliens in removal proceedings are not entitled to appointed counsel. Defendants lack sufficient information to admit or deny the remainder of Plaintiffs' claims in Paragraph 3, and, therefore, deny them.

4.     DENIED.

5.     DENIED. Additionally, Defendants note that Plaintiffs' Complaint does not identify any DHS or ICE policy that allegedly denies or restricts telephone access. *See generally* Compl. (ECF No. 1).

6.     DENIED. Defendants lack sufficient information to admit or deny the numerous causes for continuances sought by Plaintiffs or other aliens in their removal proceedings, and, therefore, deny Plaintiffs' allegations regarding the causes of such continuances. Additionally, Plaintiffs' allegation regarding "some

4

[aliens] who would accept a removal order much earlier in the process" appears to be pure speculation, to which no response is required. To the extent a response is required, Defendants deny this allegation. Defendants deny the remainder of the allegations in Paragraph 6.

7.    DENIED. Paragraph 7 contains Plaintiffs' proposed class definition and request to certify a class action, to which no response is required. To the extent a response is required, Defendants deny that Plaintiffs have stated claims sufficient to maintain a class under Federal Rules of Civil Procedure 23(a) and 23(b).

JURISDICTION

8.    The allegations in Paragraph 8 contain legal conclusions as to jurisdiction, to which no response is required. To the extent a response is required, Defendants deny any allegation of independent jurisdiction under the Declaratory Judgment Act, 8 U.S.C. §§ 2201 and 2202. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

VENUE

9.    The allegations contained in Paragraph 9 contain legal conclusions as to venue, which do not require a response. To the extent a response is required, Defendants admit that venue for claims asserted by Plaintiffs Lyon and Hernandez-Trujillo, who are detained in Contra Costa County and Yuba County, respectively, is proper in the Northern District of California. Defendants deny venue for claims asserted by Plaintiff Astorga-Cervantes, who was previously detained in the Rio Cosumnes Correctional Facility in Sacramento County, California ("Sacramento

facility") is proper in the Northern District of California; the Sacramento facility is located in the Eastern District of California.

INTRADISTRICT ASSIGNMENT

10.　The allegations in Paragraph 10 contain legal conclusions as to Local Rule 3-2(d) regarding assignment to the San Francisco Division of this Court, to which no response is required.

PARTIES

11.　DENIED in part and ADMITTED in part.　Defendants admit that Lyon is in ICE custody at the West County Detention Center in Contra Costa County, California ("Contra Costa facility") and that he has pending removal proceedings in the San Francisco Immigration Court.　Defendants cannot admit or deny whether Lyon is seeking a U-Visa as disclosure of such information is barred by 8 U.S.C. § 1367(2).　Defendants lack sufficient information to admit or deny whether Lyon "may seek cancellation of removal under 8 U.S.C. § 1229b," and, therefore, deny that allegation.　Defendants deny the remainder of the allegations contained in Paragraph 11.

12.　DENIED.　Defendants deny that Cornelio is in ICE custody at the Contra Costa facility; Cornelio was removed to Guatemala pursuant to a final removal order on February 11, 2014.　Defendants deny that Cornelio has removal proceedings pending in the San Francisco Immigration Court; Cornelio was ordered removed to Guatemala at his hearing before an Immigration Judge on January 23, 2014, and waived any appeal of that decision, rendering it a final removal order and

concluding this removal proceedings. Defendants cannot admit or deny whether Plaintiff Cornelio has applied for asylum as release of such information is prohibited by 8 C.F.R. § 208.6. Defendants deny the remainder of the allegations contained in Paragraph 12.

13. DENIED. Defendants deny that Astorga-Cervantes is currently in ICE custody at the Sacramento facility; Astorga-Cervantes posted bond and was released from ICE custody on February 20, 2014. Defendants lack sufficient information to admit or deny the allegations in the second and third sentences of Paragraph 13 regarding Astorga-Cervantes intentions to seek relief from pre-removal order detention and removal, and, therefore, deny those allegations. Defendants deny the remainder of the allegations contained in Paragraph 13.

14. Defendants admit that Hernandez-Trujillo is in ICE custody at the Yuba County Jail ("Yuba facility") and has removal proceedings pending in the San Francisco Immigration Court. Defendants cannot admit or deny that Hernandez-Trujillo has applied for a U-Visa as release of such information is barred by 8 U.S.C. § 1367(2). Defendants lack sufficient information to admit or deny Plaintiffs' allegation that Hernandez-Trujillo plans to seek relief under 8 U.S.C. § 1231(b)(3), and, therefore, deny that allegation. Defendants admit that Hernandez-Trujillo was initially detained at the Sacramento facility before being transferred to the Yuba facility in April 2013. Defendants deny the remainder of the allegations contained in Paragraph 14.

15.     Paragraph 15 merely states that Plaintiffs' Complaint will refer to "Lyon, Cornelio, Astorga-Cervantes, and Hernandez-Trujillo" as "the Individual Plaintiffs," to which no response is required.

16.     DENIED in part and ADMITTED in part.  Defendants admit that ICE is a federal law enforcement agency within DHS.  Defendants admit that ICE is responsible for the criminal and civil enforcement of U.S. immigration laws; Defendants deny any implication that ICE is the sole government agency responsible for the criminal and civil enforcement of U.S. immigration laws. Defendants admit that ICE is responsible for detaining certain aliens placed in removal proceedings, including those detained under 8 U.S.C. § 1226(a) who are denied or fail to post bond and 8 U.S.C. § 1226(c) who are subject to mandatory pre-removal order detention.  Defendants further admit that ICE is responsible for detaining those aliens subject to a final removal order and subject to mandatory detention under 8 U.S.C. § 1231 as having a sufficient likelihood of removal in the reasonably foreseeable future. Defendants deny any implication in Paragraph 16 that ICE is responsible for the detention of all immigrants, including all immigrants in removal proceedings.  Defendants lack sufficient information to admit or deny Plaintiffs' allegation that ICE is responsible for the "incarceration" of aliens, which Plaintiffs appear to distinguish from detention; Defendants therefore deny this allegation.  Defendants admit that ICE is responsible for the removal of aliens subject to a final removal order.  Defendants admit that Enforcement and Removal Operations ("ERO"), a division of ICE, manages and oversees the immigration

detention system.  Defendants admit that ICE promulgates detention standards to be followed in the facilities that detain aliens subject to pre- and post-final removal orders.  Defendants further admit that ICE contracts with other government entities and private corporations to detain those aliens subject to immigration detention.

17.     DENIED in part and ADMITTED in part.  Defendants admit that ICE pays a fixed rate per night to house detainees in accordance with applicable ICE detention standards.  Defendants deny any implication in Paragraph 17 that any of the contracts between ICE and the three detention facilities at issue in this litigation – the Contra Costa facility, the Yuba facility, and the Sacramento facility – is governed by the 2011 National Detention Standards.

18.     DENIED in part and ADMITTED in part.  Defendants deny any implication in Paragraph 18 that the 2011 Performance-Based National Detention Standards are applicable to any of the facilities in which any of the four named Plaintiffs have been or are detained.  Defendants admit that the 2011 Performance-Based National Detention Standards are the most recent detention standards promulgated by ICE.

19.     ADMITTED.  Defendants note that Plaintiffs have failed to identify as allegedly responsible for the harm alleged by Plaintiffs any ICE policy for which the Acting Director of ICE is responsible.

20.     DENIED in part and ADMITTED in part.  Defendants deny any implication in Paragraph 20 that DHS is the only arm of the federal government

9

responsible for the enforcement and administration of the immigration laws. Defendants admit that DHS is one arm of the federal government responsible for the enforcement and administration of the immigration laws. Defendants admit that ICE, U.S. Citizenship and Immigration Services ("CIS"), and U.S. Customs and Border Protection ("CBP") are component agencies of DHS. Defendants deny any implication in Paragraph 20 that ICE, CIS, and CBP are the only component agencies of DHS. Defendants further note that CIS and CBP are not parties in this action, and therefore deny Plaintiffs characterization of these agencies' responsibilities within the U.S. immigration system as irrelevant to this litigation.

21.     ADMITTED.

22.     DENIED in part and ADMITTED in part. Defendants deny that Aitken is the Field Office Director for the San Francisco Field Office; Aitken is the Field Office Director for the ICE ERO Field Office in San Francisco. Defendants also deny any implication in Paragraph 22 that the San Francisco ERO Field Office promulgates its own detention standards. Defendants admit the remaining allegations contained in Paragraph 22.

23.     Paragraph 23 contains Plaintiffs' assertion that Defendants Sandweg, Johnson and Aitken are sued in their official capacities only, to which no response is required.

<u>ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF</u>

**Background on Removal Proceedings**

24.     Paragraph 24 contains Plaintiffs' characterization of removal proceedings before the U.S. immigration courts and the Board of Immigration Appeals ("BIA"), including the way in which removal proceedings are initiated, to which no response is required.  Defendants further note that four named Plaintiffs do not challenge the decision to place them into removal proceedings or place them in immigration detention pending their removal proceedings.

25.     DENIED in part and ADMITTED in part.  To the extent that Paragraph 25 is a recitation of the Executive Office for Immigration Review, Immigration Judge Benchbook, that document speaks for itself and no response is required.  Furthermore, Defendants admit that an initial appearance occurs at a master calendar hearing, but Defendants deny any implication in Paragraph 25 that a master calendar hearing is only held for purposes of entering an initial appearance.  The remaining allegations in Paragraph 25 include Plaintiffs' characterization of removal proceedings and how such proceedings typically proceed, to which no response is required.  To the extent a response is required, Defendants deny that all removal proceedings proceed as summarized by Plaintiffs; each removal proceeding requires an individual and independent review of all charges as to removability and any defenses to those charges or requests for relief from removal put forth by the alien.  Defendants deny that removal proceedings can be summarized *in toto* as Plaintiffs attempt to do in Paragraph 25.

26.     Paragraph 26 contains Plaintiffs' characterization of the ways in which an alien may contest any charges of removability in his or her removal proceedings, to which no response is required.

27.     DENIED.  Paragraph 27 contains Plaintiffs' characterization of relief from removal that aliens may seek under 8 U.S.C. §§ 1158 & 1229b, each of which speaks for itself and to which no response is required.  Defendants deny any implication in Paragraph 27 that 8 U.S.C. § 1231(b)(3) provides any relief from removal that would result in the termination of removal proceedings without the issuance of a removal order.

28.     DENIED in part and ADMITTED in part.  Defendants deny any implication in Paragraph 28 that all "forms of statutory relief from removal" not previously mentioned in Plaintiffs' Complaint "are granted by CIS."  Defendants admit that CIS is the component of DHS that determines whether an alien in removal proceedings is eligible to receive a visa under 8 U.S.C. § 1101(a)(15)(U), and that the grant of such a visa results in the termination of removal proceedings without the issuance of a removal order.

29.     Paragraph 29 is Plaintiffs' characterization of bond redetermination hearings, which Plaintiffs concede are not available to all immigrants held in ICE custody, to which no response is required.

30.     DENIED.  Defendants lack sufficient information to admit or deny the allegations in Paragraph 30, and, therefore, deny them.

31.    DENIED.  Defendants lack sufficient information to admit or deny the allegations in Paragraph 31, and, therefore, deny them.

**Immigration Detention in Northern California**

32.    DENIED.  Defendants lack sufficient information to admit or deny the allegations in Paragraph 32, and, therefore, deny them.

33.    ADMITTED.

34.    DENIED in part and ADMITTED in part.  Defendants admit the following:  the Contra Costa facility is approximately 21 miles from San Francisco; the Sacramento facility is approximately 83 miles from San Francisco; and the Yuba facility is approximately 123 miles from San Francisco.  Defendants lack sufficient information to admit or deny the remainder of the allegations on Paragraph 34, and, therefore, deny them.

35.    DENIED.  Defendants lack sufficient information to admit or deny the allegations in Paragraph 35, and, therefore, deny them.

36.    DENIED.  Defendants lack sufficient information to admit or deny the allegations in Paragraph 36, and, therefore, deny them.  Furthermore, Defendants note that the detention histories of three of the four named Plaintiffs do not support Plaintiffs' assertion that "ICE frequently transfers detainees among detention facilities":  (1) Lyon was transferred to the Contra Costa facility, where he remains detained, on the first day of his immigration detention in October 2013; (2) Cornelio spent the entirety of his time in immigration detention at the Contra Costa facility; and (3) Astorga-Cervantes spent one day of his immigration detention in a facility

not at issue in this litigation before being transferred to the Sacramento facility where he was previously detained prior to posting bond and being released from ICE custody on February 20, 2014.

37.    DENIED.  Defendants lack sufficient information to admit or deny the allegations in Paragraph 37, and, therefore, deny them.  Defendants especially lack sufficient information to admit or deny the allegation in Paragraph 37 that "**_all_** of the immigration detainees" at the Contra Costa, Yuba, and Sacramento facilities "have, have had, or may have proceedings in the San Francisco Immigration Court," and, therefore, deny that allegation.  (Emphasis added).

**DENIED.  Defendants deny Plaintiffs assertion on page 9 of their Complaint between Paragraphs 37 and 38 that "Defendants' [Alleged] Denial and Restriction of Telephone Access Results in a Dramatic Disparity of Outcomes.**

38.    DENIED.

39.    DENIED.  Defendants lack sufficient information to admit or deny the allegations in Paragraph 39, and, therefore, deny them.  Furthermore, Defendants deny any implication in Paragraph 39 that an alien's detention pending his or her removal proceedings is the sole determinative factor as to whether that alien is able to retain counsel.  Defendants further deny any implication in Paragraph 39 that an alien's detention pending his or her removal proceedings is the sole determinative factor as to whether that alien can successfully challenge his or her charges of removability or successfully secure relief from removal.

14

**DENIED. Defendants deny Plaintiffs assertion on page 10 of their Complaint between Paragraphs 39 and 40 that "Defendants' [Allegedly] Den[y] and Restrict [ ] Telephone Access**

40.     DENIED.  Defendants deny the entirety of Plaintiffs' allegations in Paragraph 40.  Defendants further note that Plaintiffs' Complaint fails to identify any specific or particular ICE detention standard as allegedly "deficient."

41.     DENIED in part and ADMITTED in part.  Defendants admit that the 2000 National Detention Standards, which govern the contracts between ICE and the three facilities at issue in this litigation, provide that the facility shall permit an ICE detainee to make direct calls to (1) the local immigration court and the BIA; (2) to Federal and State courts where the detainee is or may become involved in a legal proceeding; (3) to consular officials; (4) to legal service providers; (5) to a government office, to obtain documents relevant to his or her immigration case; and (6) in a personal or family emergency, or when the ICE detainee can otherwise demonstrate a compelling need. Defendants further admit that the 2000 National Detention Standards provide that indigent detainees shall be not be required to pay for these six (6) types of calls if they are local or if there is a compelling need.  *See* 2000 National Detention Standards, § Section III(E).  Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 41, and, therefore, deny them.[3]

---

[3] Defendants lack sufficient information to admit or deny Plaintiffs' allegations in Footnote 1 of their Complaint that "the majority of immigration attorneys [and] all local, state and federal government offices outside of DHS" are not pre-programmed into the telephone system at any of the three facilities at issue in this litigation, and therefore deny those allegations.  Defendants deny any implication in Footnote 1 of

15

42.    DENIED in part and ADMITTED in part.  Defendants deny any implication in Paragraph 42 that the methods for placing telephone calls described in Paragraph 42 are the only methods by which an immigration detainee could place a call at the Contra Costa facility, Yuba facility, or Sacramento facility. Defendants admit the remainder of the allegations in Paragraph 42.

43.    ADMITTED.   Defendants admit that the telephone systems generally available to detainees at the Yuba, Sacramento and Contra Costa facilities require a live person to answer and accept any call; this feature is deemed necessary to prevent detainees, including criminal inmates not in ICE custody but housed at the same facilities, from calling any crime victims or leaving threatening messages.

44.    DENIED in part and ADMITTED in part.  Defendants admit that the 2000 National Detention Standards, which govern the three facilities at issue in this litigation, require that ICE detainees have reasonable access to telephones during established facility waking hours.  Defendants deny any implication in Paragraph 44 that the Sacramento facility is located in the Northern District of California; the Sacramento facility is located in the Eastern District of California. Defendants deny the remainder of the allegations in Paragraph 44.

45.    DENIED in part and ADMITTED in part.  Defendants admit that 2000 National Detention Standards, which govern the three facilities at issue in this litigation, require that ICE detainees are ensured a reasonable degree of privacy for

Plaintiffs' Complaint that ICE has any obligation to provide its detainees with free telephone calls to "private parties."

16

telephone calls regarding legal matters. Defendants deny the remainder of the allegations in Paragraph 45.

46. DENIED in part and ADMITTED in part. Defendants deny any implication in Paragraph 46 that the Sacramento facility is located in the Northern District of California; the Sacramento facility is located in the Eastern District of California. Defendants deny the allegation in Paragraph 46 that the cost of telephone calls from each of the three facilities at issue in this litigation is "unreasonably" expensive. Defendants admit that the 2011 National Detention Standards cited by Plaintiffs in Paragraph 46 require that facilities provide access to reasonably priced telephone services; Defendants deny that the 2011 National Detention Standards govern any of the three facilities in this litigation. Defendants admit that the 2000 National Detention Standards, which govern the three facilities at issue in this litigation, require each facility housing ICE detainees to "provide detainees with reasonable and equitable access to telephone during established facility waking hours, limited only by the restrictions" specified by those 2000 National Detention Standards. Defendants admit that the cost of an intrastate, long distance call from the Contra Costa facility is $3.00 to connect the call plus $0.25 per minute. Defendants deny that a phone call placed from the Contra Costa facility will disconnect after fifteen minutes; calls placed from the Contra Costa facility do not automatically disconnect. Defendants admit that a call placed from the Yuba facility or the Sacramento facility will be cut off after fifteen minutes in order to prevent ICE detainees and criminal inmates housed at the facility from

17

monopolizing the phones. Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 46, and, therefore, deny them.

47.     DENIED.[4]

48.     DENIED in part and ADMITTED in part. Defendants admit that the telephone systems generally available to detainees at the Yuba, Sacramento and Contra Costa facilities require a live person to answer and accept any call; this feature is deemed necessary to prevent detainees, including criminal inmates not in ICE custody but housed at the same facilities, from calling any crime victims or leaving threatening messages. Defendants deny that a phone call placed from the Contra Costa facility will disconnect after fifteen minutes; calls placed from the Contra Costa facility do not automatically disconnect. Defendants admit that a call placed from the Yuba facility or the Sacramento will automatically disconnect after fifteen minutes; this feature is deemed necessary to prevent detainees from monopolizing the phones. Because Plaintiffs have failed to provide an exhaustive list of the "basic technical features of the telephone system" that are allegedly "common across all housing units and detention facilities," Defendants lack sufficient information to admit or deny the remainder of Paragraph 48, and therefore further deny any additional allegations or implications regarding the

---

[4]  Defendants admit the allegation in footnote 2 of the Complaint that the Sacramento facility, which is located in the Eastern District of California, permits incoming messages via an online system. Defendants deny any implication in footnote 2 of the Complaint that this online system can never be used to relay messages which are not of a confidential nature, such as requesting that a detainee return a telephone call between certain hours.

telephone systems in place at the Contra Costa, Yuba and Sacramento facilities in this paragraph.

49.     DENIED.  Defendants deny that "it is common" for ICE to move detainees within a facility or between facilities; while it is not "common," reasons for moving a detainee within a facility or between facilities include – but are not limited to – disciplinary issues, medical issues, and problems with staff or other detainees.

**DENIED.  Defendants deny Plaintiffs assertion on page 12 of their Complaint between Paragraphs 49 and 50 regarding any "Denial of Rights to Legal Representation"**

50.     DENIED.  Defendants lack sufficient information to admit or deny the allegation in Paragraph 50, and, therefore, deny that allegation.

51.     DENIED.  Defendants lack sufficient information to admit or deny the allegation in Paragraph 51, and, therefore, deny that allegation.

52.     DENIED in part and ADMITTED in part.  Defendants deny the allegation in Paragraph 52 that "it is impossible for the attorneys to call or arrange calls" with ICE detainees housed at the Yuba facility; Defendants assert that the Yuba facility could make arrangements to allow an attorney to call a detainee or arrange a time for that detainee to call his or her attorney.  Defendants admit that attorneys cannot call or arrange calls with ICE detainees at the Contra Costa facility.  Defendants admit that there is no formal mechanism in place to allow attorneys to call or arrange calls with ICE detainees at the Sacramento facility, but Defendants note that an attorney may be allowed to call or schedule a call with a

detainee at the discretion of the Sacramento facility. Defendants admit that the telephone systems generally available to detainees at the Yuba, Sacramento and Contra Costa facilities require a live person to answer and accept any call; this feature is deemed necessary to prevent detainees, including criminal inmates not in ICE custody but housed at the same facilities, from calling any crime victims or leaving threatening messages. Defendants further assert the following: (1) the Yuba facility will on occasion allow an ICE detainee to use the Sheriff's Department phone to make a call when there is a compelling reason. Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 52, and, therefore, deny them.

53. DENIED. Defendants lack sufficient information to admit or deny the allegations in Paragraph 53, and, therefore, deny them.

54. DENIED. Defendants lack sufficient information to admit or deny the allegations in Paragraph 54, and, therefore, deny them.

55. DENIED in part and ADMITTED in part. Defendants deny any implication in Paragraph 55 that ICE detainees in removal proceedings and housed at any of the three facilities at issue in this litigation are unreasonably and unnecessarily restricted or denied access to a telephone in any way that violates their statutory or constitutional rights. Defendants deny any implication in Paragraph 55 that ICE detainees at any of the three facilities at issue in this litigation may only receive written correspondence related to legal matters. Defendants admit that any letters sent to ICE detainees housed at any of the three

facilities at issue in this litigation must be inspected to ensure that those letters do not contain contraband. With respect to the Yuba facility, Defendants admit that any incoming mail from an attorney, judicial officer, elected representative, or government entity to an ICE detainee is opened in the presence of that detainee for inspection of contraband only. With respect to the Sacramento facility, Defendants admit that all mail is inspected for contraband except for legal mail; legal mail is given to the ICE detainee to be opened in the presence of a deputy. With respect to the Contra Costa facility, Defendants admit that, with the exception of legal mail, all mail is opened and inspected before being brought into the facility, and that legal mail is opened in front of the detainee for security purposes. Defendants lack sufficient information to admit or deny the allegation in Paragraph 55 that "legal correspondence to and from ICE custody can take a week in each direction," and therefore deny that allegation. With respect to the Yuba facility, Defendants note that incoming mail is distributed to detainees the same day it is picked up from the Post Office. With respect to the Sacramento facility, Defendants note that all mail is delivered the day it arrives with the exception of Sunday, holidays, and any mail that is forwarded to investigations following inspection. With respect to the Contra Costa facility, Defendants note that received mail will be inspected and given to the detainee within a day or less. Defendants deny the allegation in Paragraph 55 that attorneys representing ICE detainees in removal proceedings and housed in any of the three facilities at issue in this litigation have no ability to arrange calls with

their detained client(s).  Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 55, and, therefore, deny them.

56.     DENIED.  Defendants deny any implication in Paragraph 56 that ICE detainees in removal proceedings who are housed at any of the three facilities at issue in this litigation are unreasonably and unnecessarily restricted or denied access to a telephone in any way that violates their statutory or constitutional rights.  Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 56, and, therefore, deny them.

**DENIED.  Defendants deny Plaintiffs assertion on page 14 of their Complaint between Paragraphs 56 and 57 regarding any "Denial of Right to Gather and Present Evidence"**

57.     DENIED.     Defendants deny any and all allegations in Paragraph 57 that ICE detainees in removal proceedings who are housed at any of the three facilities at issue in this litigation are unreasonably and unnecessarily denied access to a telephone in any way that violates their statutory or constitutional rights.  Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 57, and, therefore, deny them.

58.     DENIED.  Defendants deny any and all allegations in Paragraph 58 that ICE detainees in removal proceedings who are housed at any of the three facilities at issue in this litigation are unreasonably and unnecessarily restricted or denied access to a telephone in any way that violates their statutory or constitutional rights.  Defendants deny that it is "rare" for an ICE detainee housed at any of the three facilities at issue in this litigation to have access to a telephone

22

during "business hours." Defendants further deny the allegation that costs of making a telephone call from any of the three facilities at issue in this litigation are "prohibitive," and deny any implication in Paragraph 58 that the costs of placing a telephone call at each facility are unreasonable. Additionally, Plaintiffs' allegation that "the prohibitive telephone rates render most Plaintiffs unable to actually complete the call," appears to be pure speculation, to which no response is required. To the extent a response is required, Defendants deny this allegation. Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 58.

**DENIED Defendants deny Plaintiffs assertion on page 15 of their Complaint between Paragraphs 58 and 59 regarding any "Prolonged Incarceration." Defendants further note that Plaintiffs are not challenging the legality of their immigration detention, but rather challenging conditions of their lawful detention in this litigation.**

59. DENIED. Defendants deny any and all allegations in Paragraph 59 that ICE detainees in removal proceedings who are housed at any of the three facilities at issue in this litigation are unreasonably and unnecessarily restricted or denied access to a telephone in any way that violates their statutory or constitutional rights, including the right to not be subject to unreasonably or unconstitutionally prolonged detention. Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 59, and, therefore, deny them.

60. DENIED. Defendants deny any and all allegations in Paragraph 60 that ICE detainees in removal proceedings who are housed at any of the three

facilities at issue in this litigation are unreasonably and unnecessarily restricted or denied access to a telephone in any way that violates their statutory or constitutional rights, including the right to not be subject to unreasonably or unconstitutionally prolonged detention. Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 60, and, therefore, deny them.

<u>ADDITIONAL ALLEGATIONS RE: INDIVIDUAL PLAINTIFFS</u>

**Audley Barrington Lyon, Jr.**

61. ADMITTED.

62. DENIED in part. Defendants cannot admit or deny whether Lyon is seeking a U-Visa as disclosure of such information is barred by 8 U.S.C. §1367(2). Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 62 and, therefore, deny them.

63. DENIED. Defendants lack sufficient information to admit or deny the allegations in Paragraph 63, and, therefore, deny them. Defendants note that Lyon is currently represented in his removal proceedings.

64. DENIED in part and ADMITTED in part. Defendants cannot admit or deny whether Lyon is seeking a U-Visa as disclosure of such information is barred by 8 U.S.C. §1367(2). Defendants admit that the Contra Costa facility does not permit detainees to purchase calling cards or phone credit. Defendants deny any implication in Paragraph 64 that the family of an ICE detainee at the Contra Costa facility could not contact the facility's phone provider and put money into an

account for the detainee to make calls. Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 64, and, therefore, deny them.

65. DENIED in part. Defendants cannot admit or deny whether Lyon is seeking a U-Visa as disclosure of such information is barred by 8 U.S.C. §1367(2). Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 65, and, therefore, deny them.

66. DENIED. Defendants lack sufficient information to admit or deny the allegation in Paragraph 66, and, therefore, deny this allegation.

67. DENIED. Defendants cannot admit or deny whether Lyon is seeking a U-Visa as disclosure of such information is barred by 8 U.S.C. §1367(2). Defendants otherwise deny the allegation in Paragraph 67.

**Edgar Cornelio**

68. DENIED. Defendants deny that Cornelio is "a 36-year old man"; ICE records reflect that Cornelio is approximately thirty-one (31) years of age. Defendants deny that Cornelio is currently in ICE custody; Cornelio was removed to Guatemala on February 11, 2014. Defendants lack sufficient information to admit or deny the remaining allegation in Paragraph 68, and therefore deny it. DHS records reflect that Cornelio entered the United States without inspection – thus without being admitted or paroled – and cannot confirm Cornelio's date of illegal entry.

69.     DENIED in part.  Defendants cannot admit or deny whether Cornelio previously applied for asylum as release of such information is prohibited by 8 C.F.R. § 208.6.  Defendants deny that Cornelio currently seeks any form of relief from removal; Cornelio was ordered removed to Guatemala by an Immigration Judge at his removal hearing on January 23, 2014, and waived appeal of that decision, rendering it a final removal order, thus concluding his removal proceedings.

70.     DENIED in part and ADMITTED in part.  Defendants deny any and all allegations or implications in Paragraph 70 that Cornelio, while he was in immigration detention at the Contra Costa facility prior to his removal on February 11, 2014, was unreasonably or unnecessarily restricted or denied access to a telephone in any way that violated his statutory or constitutional rights. Defendants admit that the Contra Costa facility does not allow detainees to purchase calling cards.  Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 70, and, therefore, deny them.

71.     DENIED in part and ADMITTED in part.  Defendants deny any allegation or implication in Paragraph 71 that Cornelio's immigration detention was unreasonably or unconstitutionally prolonged.  Defendants note that Cornelio was previously released from immigration detention on a bond of $1,500 in August 2010, but that bond was revoked as a result of a July 2013 arrest and incarceration. Defendants further note that Cornelio's removal proceedings are no longer proceeding; Cornelio was ordered removed to Guatemala by an Immigration Judge

at his removal hearing on January 23, 2014, and waived appeal of that decision, rendering it a final removal order, thus concluding his removal proceedings. Defendants admit that following Cornelio's most recent immigration detention commencing in September 2013, he had hearings before an Immigration Judge on the following dates: October 29, 2013; November 12, 2013; December 3, 2013; January 8, 2014; and January 24, 2014.

72. DENIED. Defendants deny any and all allegations or implications in Paragraph 70 that Cornelio, while he was in immigration detention at the Contra Costa facility prior to his removal on February 11, 2014, was unreasonably or unnecessarily restricted or denied access to a telephone in any way that violated his statutory or constitutional rights. Defendants deny the allegation in Paragraph 72 that it is impossible for ICE detainees housed at the Contra Costa facility to make international calls; ICE detainees at the Contra Costa facility can make international-collect calls or the detainees family can contact the phone provider and set up an account for the detainee, allowing him to make international calls. Defendants cannot admit or deny whether Cornelio previously applied for asylum as release of such information is prohibited by 8 C.F.R. § 208.6. Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 72, and, therefore, deny them.

**Jose Elizandro Astorga-Cervantes**

73. DENIED in part and ADMITTED in part. Defendants admit that Astorga-Cervantes is a 52-year-old man previously held in ICE custody at the

27

Sacramento facility.  Defendants deny that Astorga-Cervantes is currently in ICE custody; Astorga-Cervantes posted bond and was released from immigration detention on February 20, 2014.  Defendants note that the Sacramento facility is located in the Eastern District of California.  Defendants further admit that Astorga-Cervantes was admitted to the United States in January 1977, when Astorga-Cervantes was approximately fifteen-years old, as an IR-2 Immigrant.  Defendants admit Astorga-Cervantes has been a Lawful Permanent Resident ("LPR") since 1977, when he was admitted as an Immigrant IR-2.  Defendants lack sufficient information to admit or deny the allegation that Astorga-Cervantes "has lived in the United States since he was a child," and, therefore, deny that allegation.  Defendants note that DHS records do not support any allegation that Astorga-Cervantes lived in the United States prior to his admission in January 1977 when he was approximately fifteen-years old.

74.     DENIED.   Defendants note that Astorga-Cervantes was granted bond in the amount of $6,000 by an Immigration Judge on January 23, 2014.  DHS records reflect that Astorga-Cervantes posted bond and was released from ICE custody on February 20, 2014.  Defendants deny any implication in Paragraph 74 that release for any ICE detainee from discretionary pre-removal order custody under 8 U.S.C. § 1226(a), the custody detention statute under which Astorga-Cervantes was previously detained, necessarily requires both "letters and testimony from family and community members." Defendants lack sufficient information to

admit or deny the remainder of the allegations in Paragraph 74, and, therefore, deny them.

75.     DENIED.  Defendants deny any and all allegations and/or implications in Paragraph 75 that Astorga-Cervantes, while previously in immigration detention at the Sacramento facility, was unreasonably or unnecessarily restricted or denied access to a telephone in any way that violated his statutory or constitutional rights. Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 75, and, therefore, deny them.  Defendants note that Astorga-Cervantes was granted bond in the amount of $6,000 by an Immigration Judge on January 23, 2014; he posted bond and was released from ICE custody on February 20, 2014.

76.     DENIED.  Defendants lack sufficient information to admit or deny the allegations in Paragraph 76, and, therefore, deny them.

**Lourdes Hernandez-Trujillo**

77.     DENIED in part and ADMITTED in part.  Defendants admit that Hernandez-Trujillo is "a 29-year-old woman currently in ICE custody in the Yuba facility."  Defendants lack sufficient information to admit to deny the remaining allegation in Paragraph 77, and, therefore, deny this allegation.

78.     DENIED in part.  Defendants cannot admit or deny whether Hernandez-Trujillo has applied for relief from removal under the Convention Against Torture (CAT) as release of such information is prohibited by 8 C.F.R. § 208.6.  Additionally, Defendants cannot admit or deny whether Hernandez-Trujillo

is seeking a U-Visa as disclosure of such information is barred by 8 U.S.C. §1367(2). Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 78, and, therefore, deny them.

79. DENIED in part and ADMITTED in part. Defendants admit that that Hernandez-Trujillo was initially detained in the Sacramento facility, in the Eastern District of California, for the first 160 days of her immigration detention following the commencement of her removal proceedings in November 2012. Defendants deny any and all allegations and/or implications in Paragraph 79 that Hernandez-Trujillo while in immigration detention at the Sacramento facility was unreasonably or unnecessarily restricted or denied access to a telephone in any way that violated her statutory or constitutional rights. Defendants deny that Hernandez-Trujillo was housed in segregation while she was detained in the Sacramento facility, and as such was confined to her cell for approximately 22 hours each day. Defendants deny that Hernandez-Trujillo had "no access to a telephone" while detained at the Sacramento facility. Defendants further note that ICE detainees in segregation at the Sacramento facility can make legal phone calls outside the two-hour time frame outside their cells by submitting a written or oral request to facility staff. Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 79, and, therefore, deny them.

80. DENIED in part and ADMITTED in part. Defendants deny any and all allegations and/or implications in Paragraph 80 that Hernandez-Trujillo, while in immigration detention at the Sacramento facility or Yuba facility, has been

unreasonably or unnecessarily restricted or denied access to a telephone in any way that violated her statutory or constitutional rights. Defendants cannot admit or deny whether Hernandez-Trujillo is seeking a U-Visa as disclosure of such information is barred by 8 U.S.C. §1367(2). Defendants admit that Hernandez-Trujillo is represented by counsel in her removal proceedings. Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 80, and, therefore, deny them.

81. DENIED. Defendants deny any and all allegations in Paragraph 81 that Hernandez-Trujillo has been unreasonably and unnecessarily restricted or denied access to a telephone in any way that violates her statutory or constitutional rights, including the right to not be subject to unreasonably or unconstitutionally prolonged detention. Defendants note that Hernandez-Trujillo is subject to mandatory pre-removal order detention under 8 U.S.C. § 1226(c). Defendants further note that Hernandez-Trujillo, through counsel, has declined her right to a custody hearing before an Immigration Judge under *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013). Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 81, and, therefore, deny them.

82. DENIED in part and ADMITTED in part. Defendants deny any and all allegations in Paragraph 81 that Hernandez-Trujillo has been unreasonably and unnecessarily restricted or denied access to a telephone in any way that violates her statutory or constitutional rights, including the right to not be subject to unreasonably or unconstitutionally prolonged detention and her right to counsel.

31

Defendants note that Hernandez-Trujillo is subject to mandatory pre-removal order detention under 8 U.S.C. § 1226(c). Defendants further note that Hernandez-Trujillo, through counsel, has declined her right to a custody hearing before an Immigration Judge under *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013). Defendants admit that Hernandez-Trujillo was transferred to the Yuba facility in April 2013. Defendants deny that "under Defendants' policies and practices [Hernandez-Trujillo's] attorney cannot call or schedule a call" with Hernandez-Trujillo; on a case-by-case basis, the Yuba facility will accommodate requests to permit a scheduled call between a detainee and their counsel. Defendants note that Plaintiffs have failed to identify a single DHS or ICE policy that would allegedly prohibit an attorney from calling or scheduling a call with their client in immigration detention. Defendants further admit that the telephone system provided to ICE detainees at the Yuba facility cannot navigate a phone tree. Defendants lack sufficient information to admit or deny the remainder of the allegations in Paragraph 82, and, therefore, deny them.

CLASS ALLEGATIONS

83.     Paragraph 83 contains Plaintiffs proposed class definition, to which no response is required. To the extent a response is required, Defendants deny that Plaintiffs' proposed class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. Defendants further deny any implication that the proposed class of "all current and future adult immigration detainees who are or will be held by ICE in Contra Costa County, Sacramento County, or Yuba County" is reasonable;

this proposed class definition is overly broad and fails to limit the class to those "immigrants held in government custody ***pending*** deportation proceedings," on whose behalf Plaintiffs allegedly bring this action. *See* Compl. (ECF No. 1) ¶ 1. (emphasis added). Furthermore, Defendants deny any implication in Paragraph 83 that the Sacramento facility in Sacramento County is located within the Northern District of California; Sacramento County is located within the Eastern District of California.

84.     DENIED.

85.     Paragraph 85 contains Plaintiffs statement as to the relief they seek in this litigation, to which no response is required. To the extent a response is required, Defendants deny any implication in Paragraph 85 that Plaintiffs are entitled to the relief they seek.

86.     Paragraph 86 contains Plaintiffs' legal conclusion that joinder is impracticable, to which no response is required. To the extent a response is required, Defendants do not contest at this time that Plaintiffs' proposed class can meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), but deny that Plaintiffs can otherwise meet the requirements of Rule 23(a) to certify their purported class. Defendants admit that the Contra Costa, Sacramento, and Yuba facilities can "hold a combined total of between 500 and 600 immigration detainees on an average day"; Defendants deny any implication in Paragraph 86 that this average is not subject to change as it could fluctuate up or down on any given day. Defendants deny any implication in Paragraph 86 that the Sacramento facility is located within the

Northern District of California; Sacramento County is located within the Eastern District of California.

87.    Paragraph 87 contains Plaintiffs' legal conclusion that joinder is impracticable, to which no response is required.  To the extent a response is required, Defendants do not contest that Plaintiffs' proposed class can meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), but deny that Plaintiffs can otherwise meet the requirements of Rule 23(a) to certify their purported class.

88.    Paragraph 88 contains Plaintiffs' legal conclusion that there are questions of law and fact common to their purported class, to which no response is required.  To the extent a response is required, Defendants deny that Plaintiffs can meet the requirements of Rule 23(a) to certify their purported class.

(a)    DENIED

(b)    DENIED

(c)    DENIED

(d)    DENIED

(e)    DENIED

89.    DENIED.

90.    Paragraph 90 contains Plaintiffs' legal conclusion that the four named Plaintiffs "will fairly and adequately represent the interests of the [purported] class," to which no response is required.  To the extent a response is required, Defendants deny this conclusion.  Defendants note that Cornelio was removed to Guatemala on February 11, 2014, rendering him unable to fairly and adequately

34

represent the interests of the [purported] class. Defendants do not challenge that the proposed class counsel can serve as adequate representatives for the class.

91. Paragraph 91 contains Plaintiffs' legal conclusion that certification of their proposed class would be appropriate in this litigation, to which no response is required. To the extent a response is required, Defendants deny that Plaintiffs have met the requirements of Fed. R. Civ. P. 23(a) and (b)(2) to certify the class they propose.

(a) DENIED;

(b) DENIED. Defendants lack sufficient information to admit or deny the allegations in Paragraph 91(b), and, therefore, deny them. Defendants deny any implication in Paragraph 91(b) that any conduct by DHS or ICE has violated any legal rights of immigration detainees at the Contra Costa facility, Yuba facility, and Sacramento facility;

(c) DENIED. Paragraph 91(c) includes Plaintiffs' legal conclusion that "prosecution of individual actions would be impossible," to which no response is required. To the extent a response is required, Defendants lack sufficient information to admit or deny the allegations in Paragraph 91(c), and, therefore, deny them;

(d) DENIED. Paragraph 91(d) includes Plaintiffs' legal conclusion that "prosecution of separate actions . . . would be inefficient," to which no response is required. To the extent a response is required, Defendants lack sufficient

information to admit or deny the allegations in Paragraph 91(d), and, therefore, deny them;

(e) DENIED in part and ADMITTED in part. Defendants admit that ICE contracts with the Contra Costa facility, the Yuba facility, and the Sacramento facility to house immigration detainees. Defendants deny that any other defendants in this action contract with these three facilities to house immigration detainees. Defendants deny any implication in Paragraph 91(e) that the 2000 National Detention Standards governing telephone access at three facilities at issue in this litigation are inadequate or otherwise disregard immigration detainees' constitutional and statutory rights as alleged by Plaintiffs.

(f) Paragraph 91(f) contains Plaintiffs' request for injunctive and declaratory relief, to which no response is required. To the extent a response is required, Defendants deny that Plaintiffs are entitled to the relief they seek in this litigation.

DECLARATORY RELIEF ALLEGATIONS

92. DENIED in part and ADMITTED in part. Defendants admit that a controversy exists between Plaintiffs and Defendants. Defendants admit that they "deny that their policies, practices and omissions [if any] violate Plaintiffs' constitutional and statutory rights." Defendants deny any implication in Paragraph 92 that Defendants' policies and practices regarding telephone access at three facilities at issue in this litigation are inadequate or otherwise disregard immigration detainees' constitutional and statutory rights as alleged by Plaintiffs.

FIRST CLAIM FOR RELIEF
**Right to Representation of Counsel**
**(Fifth Amendment Due Process Clause; 8 U.S.C. §§ 1362; 1229a(b)(4)(A))**

93. Defendants incorporate by reference all foregoing responses in response to the allegation in Paragraph 93 that "Plaintiffs reallege the foregoing paragraphs and incorporate them herein by this reference."

94. Paragraph 94 contains legal conclusions to which no response is required.

95. Paragraph 95 contains legal conclusions to which no response is required.

96. DENIED.

97. DENIED.

SECOND CLAIM FOR RELIEF
**Right to a Full and Fair Hearing**
**(Fifth Amendment Due Process Clause; 8 U.S.C. § 1229a(b)(4)(B))**

98. Defendants incorporate by reference all foregoing responses in response to the allegation in Paragraph 98 that "Plaintiffs reallege the foregoing paragraphs and incorporate them herein by this reference."

99. Paragraph 99 contains legal conclusions to which no response is required.

100. Paragraph 100 contains legal conclusions to which no response is required.

101. DENIED.

102. DENIED.

THIRD CLAIM FOR RELIEF
**Right to Petition the Government for Redress of Grievances**
**(First Amendment Petition Clause)**

103.    Defendants incorporate by reference all foregoing responses in response to the allegation in Paragraph 98 that "Plaintiffs reallege the foregoing paragraphs and incorporate them herein by this reference."

104.    Paragraph 104 contains legal conclusions to which no response is required.

105.    DENIED.

106.    DENIED.

PRAYER FOR RELIEF

The remainder of the Complaint for Injunctive and Declaratory Relief consists of Plaintiffs' Prayer for Relief, to which no response is required. To the extent a response is required, Defendants deny that ICE's policies and practices governing telephone access at the Contra Costa facility, Yuba facility, or Sacramento facility are inadequate or otherwise disregard Plaintiffs' constitutional and statutory rights such that Plaintiffs are entitled to any relief.

## FIRST AFFIRMATIVE DEFENSE

The Complaint for Injunctive and Declaratory Relief fails in whole or in part to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs have failed to allege claims sufficient to certify the proposed class, which is too broadly defined and lacks the prerequisites of Fed. R. Civ. P. 23.

### THIRD AFFIRMATIVE DEFENSE

Venue for any and all claims related to immigration detainees housed at the Rio Cosumnes Correctional Facility in Sacramento County, California is improper in the Northern District of California; the Sacramento facility is located in the Eastern District of California.

### FOURTH AFFIRMATIVE DEFENSE

Defendants have not violated any rights, privileges or immunities under the Constitution, laws of the United States, or any political subdivision thereof.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs fail to allege or demonstrate standing for those proposed class members who cannot show an actual injury caused by Defendants' policies and practices related to their conditions of confinement, including their access to telephones while in immigration custody.  *See Lewis v. Casey*, 518 U.S. 343 (1996).

### SIXTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs assert challenges to their individual immigration proceedings – including review of, or relief from, their respective immigration proceedings – this Court lacks jurisdiction to hear any such claims.  *See* 8 U.S.C.A. § 1252(g).

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs fail to state a cognizable claim under the Administrative Procedure Act ("APA") insofar as the allegations in the complaint do not challenge final agency

action within the meaning of the APA. 5 U.S.C. § 704; *see also Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

## EIGHTH AFFIRMATIVE DEFENSE

Defendants reserve the right to assert additional affirmative defenses.

DATED:                     February 21, 2014

                          STUART DELERY
                          Assistant Attorney General
                          Civil Division

                          COLIN A. KISOR
                          Acting Director

                          ELIZABETH J. STEVENS
                          Assistant Director

                           */s/ Jennifer A. Bowen*
                          JENNIFER A. BOWEN
                          Trial Attorney
                          District Court Section
                          Office of Immigration Litigation
                          Civil Division
                          United States Department of Justice

                          *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

No. 3:13-cv-05878-EMC

I hereby certify that on this 21st day of February 2014, a true and correct copy of DEFENDANTS' ANSWER was served with the Clerk of Court by using the CM/ECF system, which provided an electronic notice and electronic link of the same to all attorneys of record through the Court's CM/ECF system.

*/s/ Jennifer A. Bowen*
JENNIFER A. BOWEN
Trial Attorney, District Court Section
Office of Immigration Litigation
Civil Division
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044