United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDLEY BARRINGTON LYON, JR., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION & CUSTOMS<br>ENFORCEMENT, *et al.*,<br><br>Defendants.<br>_____/ | No. C-13-5878 EMC<br><br>**ORDER GRANTING PLAINTIFFS'<br>MOTION TO MODIFY CLASS<br>CERTIFICATION, SUPPLEMENT<br>COMPLAINT, AND MODIFY THE<br>CASE MANAGEMENT SCHEDULING<br>ORDER**<br><br>**(Docket No. 86)** |

## I.    INTRODUCTION

Plaintiffs in this putative class action are Audley Barrington Lyon, Jr.; José Elizandro Astorga-Cervantes; and other similarly situated immigration detainees (hereafter "Plaintiffs").  They filed this class action against the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), and certain employees of both agencies on the grounds that their constitutional and statutory rights are being violated while they are held in government custody awaiting deportation proceedings.  Specifically, Plaintiffs challenge practices that they claim restrict their ability to make telephone calls necessary to prepare for their removal proceedings in the San Francisco Immigration Court.  Initially, Plaintiffs were held at three county detention facilities located throughout Northern California while awaiting the resolution of their removal proceedings: Richmond, Yuba, and Elk Grove (collectively, the "County Facilities").  In April 2014, the Court certified a class in this litigation consisting of all detainees held at the three County Facilities.  *Lyon v. U.S. Immigration and Customs Enforcement*, 300 F.R.D. 628, 643 (N.D. Cal. 2014).  The Court

**United States District Court**
For the Northern District of California

1   determined that despite variations among the practices of the three facilities, Plaintiffs alleged a

2   system-wide denial of telephone access and sought to impose a constitutional standard that is

3   equally applicable to all facilities. *Id.* at 642-43.

4       In March 2015, ICE opened a new detention facility in Bakersfield and began housing

5   certain aliens and class members there.  Plaintiffs allege that the telephone policies and practices at

6   the Bakersfield facility do not allow detainees adequate access to resources necessary to prepare for

7   their removal proceedings.  Currently pending before the Court is Plaintiffs' motion to: (1) modify

8   the Court's Class Certification Order to include detainees housed at the newly opened Bakersfield

9   facility as class members; (2) file a supplemental complaint that would add allegations regarding the

10  Bakersfield facility and add a new representative plaintiff; and (3) extend all deadlines in the Case

11  Management Scheduling Order ("Scheduling Order") by seventy five days or longer to allow for

12  necessary discovery regarding the Bakersfield facility.

13      Having considered the parties' briefs and accompanying submissions, for the reasons stated

14  on the record and as set forth herein, the Court hereby **GRANTS** Plaintiffs' motion to modify the

15  Class Certification Order and to file a supplemental complaint.  The Court will also extend the

16  deadlines in its Scheduling Order to allow for additional discovery.

17                           **II.    BACKGROUND**

18      Plaintiffs filed this lawsuit on December 19, 2013, challenging the adequacy of telephone

19  access for aliens detained in the three County Facilities.  Docket No. 86 (Motion) at 2.  In their

20  complaint, Plaintiffs allege that Defendants have engaged in a common course of conduct restricting

21  detainees' telephone access in violation of their rights under the United States Constitution and the

22  Immigration and Nationality Act.  Docket No. 1 (Complaint) ¶ 4.  More specifically, Plaintiffs allege

23  that telephone access in the County Facilities is prohibitively expensive and inconsistently available,

24  and that this impedes their ability to communicate with counsel or independently gather evidence for

25  their removal proceedings.  *Id.* ¶ 38.  Under ICE's National Detention Standards, detention facilities

26  must provide a "platform" that permits detainees to make free calls and leave voicemail messages

27  for nonprofit legal services providers and certain government entities.  *Id.* ¶ 41.  However, because

28  the majority of immigration attorneys and other local and state government offices are not within the

free call platform, Plaintiffs allege that these standards are largely ineffectual, and therefore their legal claims focus on detainees' ability to make calls outside of this platform. *Id.*

Plaintiffs argue that phone calls outside of the free call platform at the County Facilities are not sufficiently private, affordable, or available to detainees. Complaint ¶¶ 42-49. For example, Plaintiffs argue that intrastate calls from the Richmond facility cost $3.00 to connect and $0.25 per minute. *Id.* ¶ 46. Calls from certain facilities are automatically disconnected after fifteen minutes, and detainees must pay a new connection fee to continue the conversation. Docket No. 14-8 (Vincent Decl.) ¶ 6; Docket No.14-6 (Lee Decl.) ¶ 6. Furthermore, detainees are only permitted to use the phones during certain specified "free time" hours, which are typically held outside the normal business hours of most private attorneys or government agencies. Docket No. 14-5 (Hernandez-Trujillo Decl.) ¶ 9. Moreover, detainees claim they may only complete calls if a live person answers the phone, meaning they are unable to leave voicemail messages or navigate "voicemail trees" that are common to many offices. Hernandez-Trujillo Decl. ¶¶ 16-17. According to Defendants, this restriction prevents detainees from contacting individuals who do not want to speak with them or with whom they are not permitted to speak. Docket No. 90-1 Ex. 2 (Bonnar Decl.) ¶ 10. Detainees also cannot receive incoming calls or voicemail messages. Vincent Decl. ¶ 3; Lee Decl. ¶ 7. Finally, detainees claim they are afforded little privacy for privileged attorney calls, as most of the phones available are located in the housing units of the County Facilities. Docket No. 86-1 (Neria-Garcia Decl.) ¶¶ 18-19.

On April 16, 2014, the Court certified a class of "all current and future immigration detainees who are or will be held by ICE in Contra Costa, Sacramento, and Yuba Counties." *Lyon*, 300 F.R.D. at 643. Plaintiffs' overarching claim that detainees lacked adequate phone access to effectively pursue vindication of their legal rights satisfied the requirements of Rule 23(a), and the "singular nature of the injunctions sought" was appropriate for certification under Rule 23(b)(2). *Id.* at 642-43. Although precise practices may vary among the facilities, the Court held that this "does not negate the application of a constitutional floor equally applicable to all facilities." *Id.* at 642. After the Court certified the class, two of the named plaintiffs, Edgar Cornelio and Lourdes Hernandez-Trujillo, voluntarily dismissed their claims because they were unable to continue serving as class

United States District Court
For the Northern District of California

1  representatives.  Docket No. 84 (Voluntary Dismissal of Lourdes Hernandez-Trujillo); Docket No.

2  71 (Voluntary Dismissal of Edgar Cornelio).  One of these plaintiffs, Lourdes Hernandez-Trujillo,

3  was the only named plaintiff asserting claims related to the Yuba facility.  Complaint ¶¶ 11-14.

4  Hence, there is currently no representative plaintiff with claims related to the Yuba facility, and

5  Plaintiffs seek to add a new class representative who alleges claims against both the Bakersfield and

6  Yuba facilities.  Motion at 13; *see also* Neria-Garcia Decl. ¶¶ 14-28.

7          Plaintiffs acknowledge that Defendants have implemented several changes to their phone

8  access policies at the County Facilities in response to this litigation.  For example, at the Yuba and

9  Elk Grove facilities, detainees' telephone calls now disconnect after twenty minutes, instead of

10 fifteen.  Docket No. 86-3 Ex. A (Proposed First Supplemental Complaint) ¶ 48.  Plaintiffs

11 acknowledge that detainees are also allowed to make unmonitored calls to their attorneys in private

12 rooms at the Richmond and Yuba facilities.  *Id.* ¶ 49.  Plaintiffs maintain, however, that detainees'

13 phone access remains limited and inconsistent despite these changes.  *Id.* ¶ 59.  For example,

14 Plaintiffs allege that the private telephone at the Richmond facility is generally only available during

15 free time hours and that high demand for this phone often leads to long wait periods or limited call

16 times for detainees wishing to make private calls.  *Id.* ¶ 50.  Furthermore, Plaintiffs claim that

17 detainees may wait two or more weeks to gain access to the two private phones at the Yuba facility

18 and that once they gain access, they often must share the private room with another person.  *Id.* ¶ 51.

19         In March 2015, Defendants opened a new detention facility in Bakersfield, California.

20 Docket No. 86-2 (Mass Decl.) ¶ 5.  Like the County Facilities, the Bakersfield facility houses

21 detainees who are in deportation proceedings in the San Francisco Immigration Court.  *Id*. ¶¶ 5-6.

22 Defendants contend that the telephone conditions at the Bakersfield facility "differ in material

23 respects" from those challenged by Plaintiffs in the County Facilities.  Docket No. 90 (Response) at

24 4.  According to Defendants, the Bakersfield facility houses only ICE detainees, unlike the County

25 Facilities.  *Id.* at 3.  Defendants note that the Bakersfield facility operates under the 2011 ICE

26 Performance-Based National Detention Standards instead of the 2000 standards under which the

27 County Facilities operate.  *Id.*  However, Defendants do not point to specific differences between

28 these standards that would lend relevance to this distinction.  *See id.*  While Defendants contract

4

**United States District Court**
For the Northern District of California

with the individual County Facilities to house detainees, they contract with a private third party, the GEO Group, to operate the Bakersfield facility. Docket No. 24 (Answer) ¶ 90(e); Docket No. 90-1 Ex. 1 (Vaughn Decl.) ¶ 3. Defendants claim that phones within the housing units are generally available to detainees twenty four hours a day, and are separated by Plexiglas partitions that offer privacy. Bonnar Decl. ¶¶ 6-7; *see also* Response at 4. They also claim that calls disconnect after 180 minutes rather than after fifteen or twenty minutes. Bonnar Decl. ¶ 8; *see also* Response at 4. Defendants contend that calls at the Bakersfield facility cost $0.10 per minute with no connection fee, unlike the $0.25 per minute rate and $3.00 connection fee at certain County Facilities. Bonnar Decl. ¶ 13; Proposed First Supplemental Complaint ¶ 45. According to Defendants, detainees at the Bakersfield facility can request use of one of four private rooms to make legal phone calls in addition to phones in the housing units. Bonnar Decl. ¶ 20; *see also* Response at 4. Defendants allege that legal calls from these private rooms are free and unrecorded, and detainees may leave voicemail messages from these private phones. Bonnar Decl. ¶¶ 23-24, 29. Defendants claim that to date, demand for these private rooms has not exceeded their availability, but if that should happen, ICE will transfer detainees who wish to make private calls to another office where they may access a private phone. *Id.* ¶ 28.

Plaintiffs dispute that the private rooms at the Bakersfield facility are consistently available, and they submitted a declaration from proposed class representative, Nancy Neria-Garcia, stating "the facility's response to these requests [to use the private room] varied." Neria-Garcia Decl. ¶ 25. Ms. Neria-Garcia stated that she made at least four requests to use the private phone at the Bakersfield facility. *Id.* ¶¶ 25-26. Two were not granted, one was granted the next day, and another was granted four days later. *Id.* She also stated that another detainee in her housing unit did not receive a response to her request to use the private phones for more than two weeks. *Id.* at ¶ 26. Plaintiffs claim that this and other practices at the Bakersfield facility provide detainees with inadequate phone access there. Proposed First Supplemental Complaint ¶¶ 53-58.

Indeed, Plaintiffs argue that the Bakersfield facility is similar to the County Facilities in a number of material respects. For instance, Plaintiffs contend that detainees may only place a call if they have sufficient funds to purchase a calling card. Neria-Garcia Decl. ¶ 23. Phones in the

**United States District Court**
For the Northern District of California

housing units apparently do not offer detainees any privacy, and detainees may have to wait a week or longer before they can use one of the four private phones.  Neria-Garcia Decl. ¶ 22; *see also* Proposed First Supplemental Complaint ¶ 58.  Like the housing unit phones in the County Facilities, housing unit phones in the Bakersfield facility will only connect if a live person answers the phone.  Neria-Garcia Decl. ¶ 23.  Plaintiffs also contend that detainees are unable to make private calls to government agencies or other parties because the four private phones at the Bakersfield facility may only be used to call attorneys.  Neria-Garcia Decl. ¶ 25; *see also* Proposed First Supplemental Complaint ¶ 57.  Plaintiffs argue that this claimed restriction on private calls can be particularly burdensome to detainees who are appearing *pro se*.  Proposed First Supplemental Complaint ¶ 57; *see also* Motion at 5.  Calls related to their legal cases may include calls to governmental agencies to obtain documents, to friends and family to locate and access witnesses and records, etc.  Plaintiffs claim that "[t]he need for private phones is even clearer at the Bakersfield facility than in the Richmond, Yuba, and Elk Grove facilities because it is a greater distance from the San Francisco Immigration Court," and Defendants do not transport detainees from the Bakersfield facility to meet with *pro bono* counsel, as they do in the County Facilities.  Proposed First Supplemental Complaint ¶ 60; *see also* Neria-Garcia Decl. ¶ 21.

Through their proposed supplemental complaint, Plaintiffs seek to add Nancy Neria-Garcia as a class representative.  Proposed First Supplemental Complaint ¶ 13.  Ms. Neria-Garcia has been housed in the Yuba, Bakersfield, and Richmond facilities.  Neria-Garcia Decl. ¶¶ 6-10.  She alleges that she did not have adequate privacy when using the housing unit phones at the Bakersfield facility and that the noise level in the housing unit was a significant distraction during her calls.  *Id.* ¶¶ 22-23.  Ms. Neria-Garcia further claims that her requests to use a private phone at the Bakersfield facility were sometimes ignored or delayed, and when she did gain access to a private room, she feared that her conversations were overheard by a guard outside the room.  *Id.* ¶¶ 25-27.  Due to this lack of privacy, Ms. Neria-Garcia claims she felt unable to speak confidentially with her attorney until she met with him in person.  *Id.* ¶ 28.  She further alleges that the Bakersfield facility's distance from the San Francisco Immigration Court prevented her from meeting in person with her attorney until she was brought to San Francisco for a hearing.  *Id.* ¶¶ 21, 28.  Ms. Neria-Garcia claims that

United States District Court

For the Northern District of California

1  the telephone policies at the Bakersfield facility impeded her communication with her attorney and

2  prevented her from "gather[ing] information and evidence that is critical to [her] case." *Id.* ¶ 29.

3  ### III.  **DISCUSSION**

4  Based on the above evidence, Plaintiffs request that the Court modify its Class Certification

5  Order, and specifically the class definition, to include "[a]ll current and future adult immigration

6  detainees who are or will be held by ICE in Contra Costa County [where the Richmond facility is

7  located], Kern County [where the Bakersfield facility is located], Sacramento County [where the Elk

8  Grove facility is located], or Yuba County [where the Yuba facility is located]." Motion at 1; *see*

9  *also* Fed. R. Civ. P. 23(c)(1)(C) (permitting a court to alter or amend a class certification order

10  "before final judgment"). The current class includes only detainees housed in Contra Costa,

11  Sacramento, and Yuba Counties. *Lyon*, 300 F.R.D. at 643. Plaintiffs also seek leave to file a

12  supplemental complaint pursuant to Federal Rule of Civil Procedure 15(d) that alleges claims

13  regarding the Bakersfield facility and adds Ms. Neria-Garcia as a class representative. Motion at 1.

14  Finally, Plaintiffs request to extend all existing deadlines in the Scheduling Order by seventy five

15  days or longer to allow the parties additional time to conduct discovery regarding the Bakersfield

16  facility. *Id.* The Court will address each of these requests in turn.

17  A.     Motion to Modify Class Certification Order

18  Plaintiffs seek to modify the Class Certification Order pursuant to Rule 23(c)(1)(C) to

19  include as class members those detainees housed in the newly opened Bakersfield facility. Motion

20  at 1. Plaintiffs assert that modifying the class will allow for more complete relief to the class and

21  will avoid the "cost, delay, and waste" of duplicative litigation. *See Keith v. Volpe*, 858 F.2d 467,

22  473 (9th Cir. 1988). The Court agrees.

23  A court may alter or amend an order granting or denying class certification prior to final

24  judgment. Fed. R. Civ. P. 23(c)(1)(C). Rule 23 gives courts "broad discretion to determine whether

25  a class should be certified, and to revisit that certification throughout the legal proceedings before

26  the court." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers*

27  *Int'l Union, AFL–CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 810 (9th Cir. 2010) (internal

28  quotation marks omitted). "Even after a certification order is entered, the judge remains free to

United States District Court

For the Northern District of California

1  modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of the Sw. v.*

2  *Falcon,* 457 U.S. 147, 160 (1982).  The original class was certified under Rule 23(b)(2).  *Lyon*, 300

3  F.R.D. at 643.  In order for the Court to modify the Class Certification Order, the modified class

4  must meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), as

5  well as the requirements for injunctive relief under Rule 23(b)(2).  *See Hanon v. Dataproducts*

6  *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  As discussed below, Plaintiffs' proposed modified class

7  meets these requirements.

8        1.      <u>Rule 23(a) Requirements</u>

9             a.      <u>Numerosity:  Class So Numerous that Joinder of All Members is</u>

10                  <u>Impracticable</u>

11        Plaintiffs contend that the numerosity requirement is met for the modified class because "the

12  [County] Facilities hold a combined total of 500 immigration detainees on an average day" and "the

13  class may now be even more numerous" with the addition of the detainees housed at the Bakersfield

14  facility.  Motion at 13.  Defendants correctly concede that the numerosity requirement is satisfied.

15  *See Newton v. Am. Debt Servs., Inc.*, No. C-11-3228 EMC, 2015 WL 3164197, at *6 (N.D. Cal. June

16  9, 2015) (recognizing "there is a presumption of numerosity where [the] proposed class contains 100

17  or more members").

18             b.      <u>Commonality:  There Are Questions of Law or Fact Common to the Class</u>

19        Commonality requires Plaintiffs to show that "there are questions of law or fact common to

20  the class."  Fed. R. Civ. P. 23(a)(2).  "Even a single [common] question" will suffice to satisfy Rule

21  23(a).  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2556 (2011) (internal quotation marks

22  omitted).  However, plaintiffs must do more than allege "merely that they have all suffered a

23  violation of the same provision of law."  *Id.* at 2551.  They must "demonstrate that the class

24  members have suffered the same injury," putting forth a "common contention . . . that it is capable of

25  classwide resolution."  *Id.* (internal quotation marks omitted).  "What matters to class

26  certification . . . is not the raising of common questions – even in droves – but, rather the capacity of

27  a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."

28  *Id.* (internal quotation marks omitted) (emphasis in original).

United States District Court

For the Northern District of California

1       As this Court previously recognized in its original Class Certification Order, when the

2   practices or conditions of several different facilities are challenged, certain factual variations among

3   facilities will not defeat commonality as long as class members were subject to roughly the same

4   harm.  *See Lyon*, 300 F.R.D. at 642; *see also Williams v. City of Philadelphia*, 270 F.R.D. 208, 215

5   (E.D. Penn. 2010) (granting 23(b)(2) class certification for inmates contesting overcrowding at

6   several prison facilities).  The *Williams* court held that although the putative class was subject to

7   varying policies at different prisons, it satisfied commonality because it alleged a system-wide

8   denial of constitutional rights that spanned all facilities.  *Id*.

9       In their opposition, Defendants argue that adding detainees at the Bakersfield facility to the

10  class would defeat commonality because the "Bakersfield facility differs from the County Facilities

11  in ways that are material to determining whether the facility conditions impede detainees'

12  communication with attorneys."  Response at 18.  According to Defendants, the different policies

13  and practices at the Bakersfield facility and County Facilities preclude a resolution of common

14  questions "in one stroke."  *Id.* at 18 (internal quotation marks omitted).

15      This argument is unconvincing for several reasons.  First, Plaintiffs point to several

16  challenged practices that apply to both the Bakersfield facility and the County Facilities.  For

17  example, the housing unit phones at the Bakersfield facility, like those at the other facilities, require

18  a live person to answer and accept any call.  Neria-Garcia Decl. ¶ 23; *see also* Proposed First

19  Supplemental Complaint ¶ 54.  Plaintiffs also claim that those facilities with private phone rooms

20  (*i.e.* Richmond, Yuba, and Bakersfield) do not provide consistent access to these rooms, and

21  detainees may be subject to lengthy waiting periods before making a private call.  Proposed First

22  Supplemental Complaint ¶¶ 50-51, 58.

23      Second, as this Court stated in its original Class Certification Order, "the fact that the precise

24  practices among . . . facilities may vary does not negate the application of a constitutional floor

25  equally applicable to all facilities."  *Lyon*, 300 F.R.D. at 642.  In this case, "the overarching claim is

26  that ICE detainees in these facilities are denied effective access to telephones and that this impedes

27  communications with counsel, family, and others necessary to protect and vindicate their legal

28  rights."  *Id*.  The harms that Plaintiffs allege with regard to the Bakersfield facility fall within this

1    overarching claim.  As the court held in *Williams*, variations among the practices of each facility,

2    including how those practices specifically affect individual class members, are not sufficient to

3    defeat commonality.  *See Williams*, 270 F.R.D. at 215.

4              c.    Typicality:  Claims or Defenses of Representative Parties are Typical of

5                    Claims or Defenses of the Class

6              To demonstrate typicality, Plaintiffs must show that "the claims and defenses of the

7    representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  In

8    analyzing typicality, courts look to "whether other members have the same or similar injury,

9    whether the action is based on conduct which is not unique to the named plaintiffs, and whether

10   other class members have been injured by the same course of conduct."  *Hanon*, 976 F.2d at 508.

11   Moreover, "[t]ypicality refers to the nature of the claim or defense of the class representative, and

12   not to the specific facts from which it arose or the relief sought."  *Ellis v. Costco Wholesale Corp.*,

13   657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted).

14             Defendants argue that Ms. Neria-Garcia's claims are not typical because she has not suffered

15   the same injuries alleged by other class members, and she is therefore subject to the unique defense

16   of insufficient prejudice.  Response at 22-23.  According to Defendants, Ms. Neria-Garcia's

17   allegation are void of "specific facts showing that her ability to obtain or present evidence was

18   frustrated during her stay at Bakersfield."  *Id*. at 23.  While "she generally alleges that the telephone

19   conditions at Bakersfield and Yuba restricted her communications with counsel," Defendants claim

20   she does not allege that those conditions interfered with her attorney's representation of her or

21   prolonged her detention.  *Id*.  Because of these alleged discrepancies between Ms. Neria-Garcia's

22   claims and the claims of other class members, Defendants argue that she was not deprived of any of

23   the constitutional rights that are the basis of Plaintiffs' claims. *Id*. at 24.  Defendants also argue that

24   Ms. Neria-Garcia's claims are atypical because she did not request to use the private phone rooms at

25   Bakersfield to make calls to anyone other than her attorney.  *Id*. at 23-24.  Therefore, according to

26   Defendants, she cannot represent detainees who wished to make non-attorney calls from these

27   phones but claim that they were prevented from doing so.  *Id.*

28

United States District Court

For the Northern District of California

1    Defendants' arguments fall short.  First, Ms. Neria-Garcia has alleged that phone conditions

2   at the Bakersfield facility hindered her access to an attorney and that she was unable to speak

3   privately with her attorney until meeting in person.  Neria-Garcia Decl. ¶¶ 26-28.  This claim falls

4   squarely within Plaintiffs' overarching allegation that Defendants have failed to provide adequate

5   telephone access at the Bakersfield facility and County Facilities.  *See* Reply at 5.  Ms. Neria-Garcia

6   also claims that she was subject to long wait times before making a private call at the Bakersfield

7   facility, and that she was sometimes denied access to the private phones entirely.  Neria-Garcia

8   Decl. ¶¶ 25-26.  These claims are similar to those of existing class members, who allege that they are

9   frequently unable to access the private phone rooms at the Yuba and Richmond facilities, or must

10  wait days or sometimes weeks to make a private call.  *See* Proposed First Supplemental Complaint

11  ¶¶ 50-51.  Furthermore, as the Court noted in its original Class Certification Order, "what is

12  centrally at issue is access to counsel and other persons so that Plaintiffs can effectively pursue

13  vindication of their legal rights."  *Lyon*, 300 F.R.D. at 639.  In claiming that she could not speak

14  privately with her attorney because of inadequate phone access, Ms. Neria-Garcia has alleged harms

15  that are typical of those "centrally at issue" in this case.

16    As to Defendants' argument that Ms. Neria-Garcia is subject to the unique defense of

17  insufficient prejudice, "[s]everal courts have held that class certification is inappropriate where a

18  putative class representative is subject to unique defenses which threaten to become the focus of the

19  litigation."  *Hanon*, 976 F.2d at 508 (internal quotation marks omitted).  However, if other class

20  members may be subject to the same defenses as the representative plaintiff, such defenses are not

21  "unique" and therefore do not defeat typicality.  *See Ewert v. eBay, Inc*., No. C-07-02193 RMW,

22  2010 WL 4269259, at *4 (N.D. Cal. Oct. 25, 2010); *Vedachalam v. Tata Consultancy Servs., Ltd*.,

23  No. C 06–0963 RMW, 2012 WL 1110004, at *10 (N.D. Cal. Apr. 2, 2012).

24    In the present case Defendants have done little to show that the insufficient prejudice defense

25  is actually unique to Ms. Neria-Garcia.  As discussed above, the harms that Ms. Neria-Garcia alleges

26  *are* typical of the class; therefore, if she is subject to the defense of insufficient prejudice, other class

27  members may be subject to this defense as well.  However, even if this defense were unique to Ms.

28

United States District Court

For the Northern District of California

1   Neria-Garcia, it is unlikely that it would threaten to become a central focus of the litigation to the

2   extent that it would interfere with her representation of the class.  *See Hanon*, 976 F.2d at 508.

3        For the foregoing reasons, the proposed modified class satisfies the typicality requirement.

4        d.   Adequacy:  The Representative Parties Will Fairly and Adequately Protect

5             Interests of the Class

6        The adequacy requirement asks courts to resolve two questions: "(1) do the named plaintiffs

7   and their counsel have any conflicts of interest with other class members and (2) will the named

8   plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Ellis*, 657 F.3d

9   at 985.

10       Defendants do not question the ability of Plaintiffs' counsel to adequately represent the

11  proposed class.  However, they assert that Ms. Neria-Garcia is an inadequate representative for the

12  same reasons they claim she cannot satisfy the typicality requirement: her claims are subject to a

13  unique defense of insufficient prejudice and are not sufficiently similar to those of her fellow class

14  members.  Response at 24.

15       For the reasons set forth above, this Court finds that Ms. Neria-Garcia's claims are

16  sufficiently similar to those of her fellow class members, and that she is therefore an adequate class

17  representative.

18  2.   Rule 23(b)(2) Requirements

19       Under Rule 23(b)(2), a court may grant injunctive or declaratory relief when "the party

20  opposing the class has acted or refused to act on grounds that apply generally to the class."  Fed. R.

21  Civ. P. 23(b)(2).  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory

22  remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful

23  only as to all of the class or as to none of them."  *Wal-Mart*, 131 S. Ct. at 2557.  Rule 23(b)(2) is

24  often used for the prosecution of civil rights actions and is particularly suited for class actions

25  challenging oppressive prison policies or conditions.  *See Walters v. Reno*, 145 F.3d 1032, 1047 (9th

26  Cir. 1998); *Williams*, 270 F.R.D. at 222.

27

28

**United States District Court**
For the Northern District of California

1    Defendants argue that differences between the Bakersfield facility and the County Facilities

2    preclude a finding that they have "acted or refused to act on grounds that *apply generally* to the

3    class."  Response at 24-25 (emphasis added); *See* Fed. R. Civ. P. 23(b)(2).  Defendants claim that

4    their practices at any particular facility "cannot be enjoined or declared unlawful as to all of the

5    facilities given the particular security concerns, physical make-up, and staffing of each individual

6    facility."  Response at 25.  According to Defendants, Plaintiffs must "establish a practice that results

7    in a constitutional deprivation for detainees at *each* facility to obtain injunctive relief related to all

8    facilities."  *Id.* (emphasis in original).  Defendants claim that "a determination of systemwide impact

9    is not appropriate in this action, as it would require differing and fact-specific inquiries into the

10   actual telephone access at each of the facilities at issue."  *Id.*

11   Defendants' arguments with respect to the (b)(2) requirement, much like their arguments

12   against commonality, hinge upon the practical differences between the Bakersfield facility and

13   County Facilities.  However, these differences do not negate the fact that Plaintiffs seek relief that is

14   applicable to and appropriate for the entire class; "an order setting forth what elements of telephone

15   access are required to effectuate Plaintiffs' statutory and constitutional rights."  Reply at 10.

16   Plaintiffs do not seek individualized relief for each class member, but rather ask for systemic

17   changes consistent with a single overarching constitutional standard that will be applicable to all

18   class members in all facilities.  "That each facility may have to change its current policies in varying

19   ways in order to comply does not negate the singular nature of the injunction sought."  *Lyon*, 300

20   F.R.D. at 643.  As the Court noted in the original Class Certification Order, this case is "materially

21   indistinguishable" from prison condition cases that are often certified under Rule 23(b)(2).  *Id.*; *see*

22   *also Riker v. Gibbons*, No. 3:08-CV-00115-LRH-RAM, 2009 WL 910971 (D. Nev. March 31, 2009)

23   (finding certification appropriate under Rule 23(b)(2) where plaintiffs "challenge[d] [Ely State

24   Prison's] medical system, which they allege subjects all of the them to a significant risk of injury

25   and unnecessary infliction of pain"; adding that "[o]ther courts have also certified classes under Rule

26   23(b)(2) when prisoners challenge the constitutionality of prison conditions.").

27

28

B.      Motion to Supplement Complaint

Plaintiffs argue that allowing them to file the proposed supplemental complaint, which includes allegations regarding the Bakersfield facility, would allow the Court to fashion more complete relief for the class than if a separate action must be filed, and further argue that supplementation would not be prejudicial toward Defendants because the current discovery deadlines can be extended.  Motion at 8-9.  The Court agrees.

Supplemental pleadings are governed by Rule 15(d).  New claims, new parties, and allegations regarding events that occurred after the original complaint was filed are all properly permitted under Rule 15(d).  *Griffin v. Cnty. School Bd. of Prince Edward Cnty.*, 377 U.S. 218, 226 (1964).  Supplementation is generally favored because it promotes judicial economy and convenience.  *See Keith*, 858 F.2d at 473.  "The legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as for amending one under 15(a)."  *Paralyzed Veterans of America v. McPherson*, No. C 06-4670 SBA, 2008 WL 4183981, at *26 (N.D. Cal. Sept. 9, 2008).

The five factors commonly used to evaluate the propriety of a motion for leave to amend (and thus, a motion to supplement) are: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  Courts also consider whether allowing leave to supplement would align with the goal of Rule 15(d), which is to promote judicial efficiency.  *See Planned Parenthood of Southern Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997); *Keith*, 858 F.2d at 473.  Among the five *Foman* factors, "it is the consideration of prejudice to the opposing party that carries the greatest weight."  *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003).  Absent prejudice or a "strong showing" of any other *Foman* factor, there is a presumption in favor of granting leave to supplement.  *Id.*

1.      Defendants Will Not Be Unduly Prejudiced by a Supplemental Complaint

Prejudice may be established in a variety of ways, such as where a motion to amend is made after the cutoff date for such motions, or when discovery has already closed or is about to close.  *See, e.g., Zivkovic v. Southern Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of plaintiff's motion for leave to amend filed five days before the close of discovery, where

**United States District Court**
For the Northern District of California

1    proposed amendment would have necessitated expanded discovery); *see also Solomon v. North Am.*

2    *Life & Cas. Ins. Co.*, 151 F.3d 1132, 1138-39 (9th Cir. 1999) (denying leave to amend when sought

3    two weeks before the discovery deadline, because amendment would have delayed proceedings by

4    requiring the reopening of discovery).  However, the Ninth Circuit has affirmed the grant of leave to

5    supplement even where it required reopening discovery because "most of the information on the

6    added claim would be available in [defendant's] own files" and "little additional discovery would be

7    needed."  *LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir. 1986).

8         Defendants concede that "prejudice [would be] diminished if there were an extension of 90

9    days."  Docket No. 97 (Hrg. Tr.) at 20:19-20.  Defendants also stated that "90 days is sufficient for

10   us to serve written discovery on Ms. Neria-Garcia, and take her deposition."  *Id.* at 28:7-8.  They

11   accordingly request that if the Court modifies its Scheduling Order, it extend all deadlines by at least

12   ninety days.  Response at 12.  Defendants also argue that a supplemental complaint prematurely

13   forces them to litigate the conditions of the Bakersfield facility, imposing "undue costs and burden

14   on the government by requiring discovery about a facility that corrects most, if not all, of the

15   conditions complained of in the prior complaint."  *Id*. at 12-13.

16        The Court does not find Defendants' arguments compelling.  First, Plaintiffs have conceded

17   to extending discovery deadlines by the requested ninety days, allowing time for any preparation or

18   discovery necessitated by the addition of the Bakersfield facility.  Reply at 4.  Furthermore, it is not

19   apparent that significant additional discovery will be necessary since the Bakersfield facility has

20   been open for a relatively short time.  Motion at 4; *see also* Mass Decl. ¶ 5.  While allowing the

21   addition of the Bakersfield facility would require little additional discovery, requiring Plaintiffs to

22   bring a second suit on behalf of detainees at the Bakersfield facility would force them to duplicate

23   several depositions already taken for this suit.  *Id.*  Therefore, because leave to supplement is

24   necessary in this case to "award complete relief . . . in one action, and to avoid the cost of delay,"

25   and because Plaintiffs have conceded to a ninety-day extension of all discovery deadlines, Plaintiffs'

26   motion to supplement is not prejudicial.  *See Keith*, 858 F.2d at 473.

27

28

United States District Court

For the Northern District of California

1    2.    Judicial Efficiency Will Not Be Hindered By the Filing of a Supplemental Complaint

2    The goal of Rule 15 is to promote judicial efficiency by avoiding "the cost, delay and waste

3    of separate actions, which must be separately tried and prosecuted." *Keith*, 858 F.2d at 473.

4    Defendants' argument that Plaintiffs' motion to supplement is judicially inefficient is similar

5    to their argument that the modified class does not satisfy commonality. *See* Response at 8.

6    Defendants claim that because Plaintiffs cannot point to any overlap in the practices of the

7    Bakersfield facility and County Facilities, a supplemental complaint "would result in two separate

8    actions within the same case." *Id.* According to Defendants, no legal or factual issues would be

9    truly common across the new proposed class. *Id.*

10   Just as these arguments were unconvincing in the commonality analysis, they are equally

11   without merit here. The addition of the Bakersfield facility will not result in the trial of "two

12   separate actions within the same case" because, as was previously noted, Plaintiffs have submitted

13   evidence that there is significant overlap between Defendants' practices at the Bakersfield facility

14   and their practices at the County Facilities. *See* Response at 8. While those policies and practices

15   may not be identical at each facility, such differences do not negate Plaintiffs' overarching claim

16   that detainees are unable to confer with counsel due to limited phone access at all four facilities.

17   Furthermore, adding the Bakersfield facility in fact *promotes* judicial efficiency in this case by

18   saving the Court and the parties the time and expense of litigating the adequacy of phone access at

19   the Bakersfield facility in a separate action.

20   3.    Plaintiffs Have Not Unduly Delayed in Bringing This Action or in Naming Ms.

21        Neria-Garcia as a Representative Plaintiff

22   Defendants do not argue that Plaintiffs have unduly delayed in bringing claims related to the

23   Bakersfield facility. Response at 13. However, Defendants argue that Plaintiffs have unduly

24   delayed in bringing Ms. Neria-Garcia's claims with respect to the Yuba facility. *Id.* The only

25   named plaintiff who alleged claims relating to the Yuba facility, Lourdes Hernandez-Trujillo,

26   withdrew as a class representative in March 2015. *Id.*; *see also* Voluntary Dismissal of Lourdes

27   Hernandez-Trujillo. Defendants contend that Plaintiffs "[have] known since January 2015 that

28   former Plaintiff Lourdes Hernandez-Trujillo was likely not able or willing to continue in her role as

United States District Court

For the Northern District of California

1   a class representative" and that Plaintiffs provide no evidence to show that they were diligent in

2   finding a substitute representative.  Response at 13-14.

3        Defendants' objections to Ms. Neria-Garcia's allegations regarding the Yuba facility are

4   without merit.  In their Response, Defendants make clear that they "do not oppose Plaintiffs' Motion

5   for Leave to Supplement the Complaint to the extent it seeks to add allegations regarding the

6   county-run facilities already at issue."  Response at 1 n.1.  Because the Yuba facility is already

7   included in the class (*i.e.* it is one of the "county-run facilities already at issue"), Defendants have

8   conceded that they do not oppose additional allegations regarding that facility.

9        4.   Plaintiffs' Supplemental Complaint is Not Futile

10       "[A] proposed amendment is futile only if no set of facts can be proved under the amendment

11  to the pleadings that would constitute a valid and sufficient claim or defense."  *Miller v.*

12  *Rykoff–Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir. 1988).  When an amended complaint seeks to

13  expand the definition of a class, the futility analysis should examine whether the new class meets

14  Rule 23 requirements.  *See Rodriguez v. Instagram, LLC*, No. C 12–06482 WHA, 2013 WL

15  3732883, at *3 (N.D. Cal. July 15, 2013) ("[I]t would be futile to allow plaintiff to amend a putative

16  nationwide class where plaintiff's overreaching will almost certainly be denied at the class

17  certification stage.").

18       Defendants argue that allowing Plaintiffs to supplement their complaint would be futile

19  because the newly proposed class is unlikely to satisfy the requirements of Rule 23.  Response at 11.

20  However, for the reasons laid out above, Defendants are incorrect.  The modified class satisfies Rule

21  23's requirements, and thus the filing of Plaintiffs' supplemental complaint is not futile.

22  C.   Motion to Modify the Current Case Management Scheduling Order

23       Rule 16(4)(b) holds that a scheduling order "may be modified only for good cause and with

24  the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The "good cause" standard primarily considers the

25  diligence of the party seeking the amendment.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d

26  604, 609 (9th Cir. 1992).  The inquiry should focus on the moving party's reasons for seeking

27  modification to the order:  If these reasons do not indicate proper diligence, the inquiry should end.

28  *Id.*  As relevant here, courts often find good cause when the motion to amend the scheduling order is

based upon new and pertinent information. *See Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (finding good cause to extend a scheduling order's deadline to amend when the amendment was based on new information learned through discovery and a recent change in the law); *see also Johnson*, 975 F.2d at 609 (finding no good cause to extend a scheduling order's deadline to amend when plaintiff's amendment was based on information that had been available to him throughout the suit).

In the present case, Plaintiffs have shown due diligence in seeking to supplement their complaint and therefore satisfy the good cause requirement of Rule 16. Plaintiffs learned that Defendants would open a new facility after the original class was certified, spent several months gathering information about the new facility, and conducted an investigatory site visit. Mass Decl. ¶¶ 5-13. Because the supplemental complaint is based on new and pertinent information, and because Plaintiffs exercised due diligence in filing for leave to supplement, the good cause requirement has been satisfied. The Court therefore sets a new trial date for May 23, 2016 and accordingly extends all corresponding deadlines in the Scheduling Order by sixteen weeks. *See* Docket No. 96 (Case Management Scheduling Order).

## IV.   CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion to modify the Class Certification Order and to file a supplemental complaint. The Court also extends all current deadlines in the Case Management Scheduling Order by sixteen weeks to allow for additional discovery with regard to the Bakersfield facility.

This order disposes of Docket No. 86.

IT IS SO ORDERED.

Dated: July 27, 2015

_____
EDWARD M. CHEN
United States District Judge