ROBERT P. VARIAN (SBN 107459)
CHARLES J. HA (*pro hac vice*)
DAVID KEENAN (*pro hac vice*)
JUDY KWAN (SBN 273930)
ALEXIS YEE-GARCIA (SBN 277204)
MATTHEW R. KUGIZAKI (SBN 286795)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone:  (415) 773-5700
Facsimile:   (415) 773-5759
Email:  rvarian@orrick.com

JULIA HARUMI MASS (SBN 189649)
MICHAEL T. RISHER (SBN 191627)
MEGAN SALLOMI (SBN 300580)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: jmass@aclunc.org

*Attorneys for Plaintiffs*

[Additional Counsel appear on signature page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| AUDLEY BARRINGTON LYON, JR., et. al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et. al., <br><br> Defendants. | Case No.: 13-cv-05878 EMC <br><br> **FIRST SUPPLEMENTAL COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** <br><br> **CLASS ACTION** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

JURISDICTION .................................................................................................................... 3

VENUE .................................................................................................................................. 3

INTRADISTRICT ASSIGNMENT........................................................................................ 3

PARTIES ............................................................................................................................... 3

ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF............................................. 6

    Background on Removal Proceedings ..................................................................... 6

    Immigration Detention in Northern and Central California .............................. 8

    Defendants' Denial and Restriction of Telephone Access Results in a Dramatic
    Disparity of Outcomes ........................................................................................... 9

    Defendants' Denial and Restriction of Plaintiffs' Telephone Access ........................... 10

    Defendants' Modifications to Plaintiffs' Telephone Access in Response to
    Litigation.............................................................................................................. 13

    Denial of Right to Legal Representation .......................................................... 16

    Denial of Right to Gather and Present Evidence ........................................... 18

    Prolonged Incarceration ..................................................................................... 18

ADDITIONAL ALLEGATIONS RE INDIVIDUAL PLAINTIFFS......................................... 19

    Audley Barrington Lyon, Jr. .............................................................................. 19

    José Elizandro Astorga-Cervantes ................................................................... 20

    Nancy Neria-Garcia ............................................................................................ 21

CLASS ALLEGATIONS ...................................................................................................... 22

DECLARATORY RELIEF ALLEGATIONS ........................................................................ 25

FIRST CLAIM FOR RELIEF ............................................................................................... 25

SECOND CLAIM FOR RELIEF .......................................................................................... 26

THIRD CLAIM FOR RELIEF .............................................................................................. 26

PRAYER FOR RELIEF ........................................................................................................ 27

# INTRODUCTION

1.     This is a class action for injunctive and declaratory relief necessary to remedy ongoing violations of the constitutional and statutory rights of immigrants held in government custody pending deportation proceedings.  Because such proceedings seek to deprive immigrants of the opportunity to live and work in the United States, the United States Constitution and federal statutes afford them substantive and procedural rights, including the right to be represented by counsel, the right to gather and present evidence, and the right to a fair hearing. Those rights (and others) are systematically denied by defendants.

2.     Plaintiffs Audley Barrington Lyon, Jr., José Elizandro Astorga-Cervantes, and Nancy Neria-Garcia ("Individual Plaintiffs") bring this class action lawsuit to challenge policies and practices that deny and severely restrict their ability to make telephone calls necessary to consult with or obtain counsel, to gather information and evidence necessary for their cases, and to obtain a fair hearing while in government custody.

3.     Individual Plaintiffs and the class they seek to represent (collectively "Plaintiffs") are held in detention facilities under the custody of Defendant Immigration and Customs Enforcement ("ICE") pending resolution of ICE's charges that they should be deported or "removed" from the United States.  Respondents in immigration proceedings are not entitled to appointed counsel and most in northern and central California are held in remote locations that render in-person visits impractical at best.  Telephone access is therefore critical to Plaintiffs' ability to locate, retain, and seek advice from legal counsel.  For those who cannot afford an attorney and are not able to retain *pro bono* counsel, telephone contact with the outside world is essential to gather the evidence and government documents necessary to defending against removal charges, locate witnesses, and do other things necessary to represent themselves in complex legal proceedings. It is also necessary to enable Plaintiffs to exercise their First Amendment rights to petition government agencies to obtain immigration benefits and related documents that may provide relief from removal.

1     4.     However, ICE, and its parent agency, the Department of Homeland Security

2     ("DHS") have engaged in a common course of conduct that severely restricts Plaintiffs'

3     telephone access in violation of their rights under the United States Constitution and the

4     Immigration and Nationality Act ("the Act").

5     5.     Defendants' policies, practices, and omissions in denying and restricting

6     telephone access have a dramatic impact on the outcomes of removal proceedings.  As a result of

7     Defendants' conduct, many Plaintiffs who would be eligible to remain in the United States are

8     deported.

9     6.     Many Plaintiffs are also unnecessarily detained for months.  Such prolonged

10    incarceration is a direct result of the Defendants' violations of Plaintiffs' constitutional and

11    statutory rights -- not as punishment for conviction of a crime.  Plaintiffs are forced to seek

12    continuances while they struggle to locate, retain and communicate with counsel, to gather

13    evidence to be presented in the removal proceedings, and to obtain documents and immigration

14    benefits that can provide relief from removal.  There are even some Plaintiffs who would accept

15    a removal order much earlier in the process if they were able to obtain legal consultation over the

16    telephone -- sparing themselves and the taxpayer the significant costs of detention.

17    7.     For these reasons, the Individual Plaintiffs seek to represent a class of all current

18    and future adult immigration detainees who, like the Individual Plaintiffs at the time the original

19    complaint was filed, are or will be held in ICE custody in California immigration detention

20    facilities that house detainees with cases venued in San Francisco, *i.e.* detainees who are or will

21    be held in ICE custody in Kern County, Contra Costa County, Sacramento County, and Yuba

22    County (the "Class") and to obtain an order from this Court enjoining the policies, practices, and

23    omissions that are preventing Plaintiffs from realizing their statutory and constitutional rights,

24    including the promise of due process in immigration proceedings.

25

26

27

1

## JURISDICTION

2       8.    This Court has subject-matter jurisdiction over this matter under 28 U.S.C. § 1331

3 (federal question), 28 U.S.C. §§ 2201 and 2202 (declaratory relief), and 5 U.S.C. § 706 (waiver

4 of sovereign immunity).

5

## VENUE

6       9.    Venue is proper in the Northern District of California under 28 U.S.C. §§ 1391(b)

7 and (e) because a substantial part of the events and omissions giving rise to Plaintiffs' claims

8 occurred, and continues to occur, in this district.

9

## INTRADISTRICT ASSIGNMENT

10       10.    Assignment to the San Francisco Division of this Court is proper under Local

11 Rule 3-2(d) because a substantial part of the events or omissions giving rise to Plaintiffs' claims

12 occurred, and continues to occur, in San Francisco County.

13

## PARTIES

14       11.    At the time that the original complaint was filed, Plaintiff Audley Barrington

15 Lyon, Jr. was in ICE custody at the West County Detention Facility in the city of Richmond,

16 Contra Costa County, California ("Richmond Facility") and had removal proceedings pending in

17 the San Francisco Immigration Court.  On April 17, 2015, Plaintiff Lyon was granted release

18 from custody on bond; his removal proceedings are still pending in the San Francisco

19 Immigration Court. He is seeking a U visa as a victim of and witness to a crime under 8 U.S.C. §

20 1101(a)(15)(U), protection relief under 8 U.S.C. § 1231(b)(3).  Defendants' restrictions on

21 telephone access in immigration detention have harmed and will continue to harm Plaintiff Lyon

22 in the event he is returned to custody by, *inter alia*, denying or severely restricting his ability to

23 obtain information and documents necessary to support his U visa application.

24       12.    At the time that the complaint was filed, Plaintiff José Elizandro Astorga-

25 Cervantes was in ICE custody at the Rio Cosumnes Correction Facility in the city of Elk Grove,

26 Sacramento County, California ("Elk Grove Facility") and had removal proceedings pending in

27 the San Francisco Immigration Court.  On or about February 20, 2014, Plaintiff Astorga-

1  Cervantes was released from custody on bond.  On or about June 12, 2014, ICE re-arrested

2  Plaintiff Astorga-Cervantes and placed him in custody at the Yuba County Jail in the city of

3  Marysville, Yuba County, California ("Yuba Facility").  Plaintiff Astorga-Cervantes was

4  released from ICE custody the following day.  His removal proceedings are pending in the San

5  Francisco Immigration Court.  He is seeking relief from removal under former § 212(c) of the

6  Immigration and Nationality Act.  Defendants' restrictions on telephone access have harmed and

7  will continue to harm Plaintiff Astorga-Cervantes in the event he is returned to custody by, *inter*

8  *alia*, preventing him from contacting attorneys for legal advice or representation and denying or

9  severely restricting his ability to gather information and evidence in support of his release from

10  custody and § 212(c) waiver of inadmissibility.

11       13.    Plaintiff Nancy Neria-Garcia is in ICE custody at the Richmond Facility. She has

12  been transferred three times during her incarceration and was previously detained at the Yuba

13  Facility and the Mesa Verde Detention Facility in Bakersfield, Kern County, California

14  ("Bakersfield Facility").  She had removal proceedings in the San Francisco Immigration Court

15  and sought withholding of removal and protection under the Convention Against Torture.  The

16  Immigration Judge denied her relief and she appealed her case to the Board of Immigration

17  Appeals ("BIA").  The BIA reversed and remanded her case for further proceedings in the San

18  Francisco Immigration Court, which are currently pending.  She also intends to seek release from

19  custody by demonstrating to an immigration judge or ICE that she does not pose a risk of flight

20  or a danger to society.  Defendants' restrictions on telephone access have harmed and will

21  continue to harm Plaintiff Neria-Garcia by, *inter alia*, denying or severely restricting her ability

22  to consult with counsel and by denying or severely restricting her ability to gather information

23  and evidence in support of her claims for relief from removal.

24       14.    Defendant ICE is a federal law enforcement agency within DHS.  ICE is

25  responsible for the criminal and civil enforcement of the immigration laws, including the

26  detention, incarceration and removal of immigrants.  ICE discharges its responsibility for

27  incarceration of immigrants by: (1) promulgating detention standards to be followed in the

facilities in which immigrants are held pending removal hearings, including with respect to telephone access; and (2) contracting with the government entities and private corporations that operate detention facilities, including the facilities in which all members of the Class are incarcerated.  Enforcement and Removal Operations ("ERO"), a division of ICE, manages and oversees the immigration detention system.

15.     Under the terms of ICE's contracts with the jails and the private facility in which Plaintiffs are incarcerated, the federal government pays a specified amount of money per immigration detainee per night to house detainees in accordance with ICE's detention standards.

16.     ICE's most recent set of standards purporting to govern conditions of confinement in ICE custody are the 2011 Performance-Based National Detention Standards, available at http://www.ice.gov/detention-standards/2011 (last visited June 4, 2015).

17.     Defendant Sarah Saldaña is the Director of ICE.  As Director, Defendant Saldaña is responsible for ICE's policies, practices and procedures, including those relating to the detention of immigrants during their removal proceedings.

18.     Defendant DHS is the arm of the federal government responsible for the enforcement and administration of the immigration laws.  The component agencies of DHS include ICE; United States Citizenship and Immigration Services ("CIS"), which administers the legal immigration system and grants immigration benefits; and United States Customs and Border Protection ("CBP"), which apprehends individuals suspected of unauthorized entry at and around the border.

19.     Defendant Jeh Johnson is the Secretary and highest-ranking member of DHS.  As Secretary of DHS, Defendant Johnson is responsible for DHS's policies, practices, and procedures and exercises authority and oversight over ICE.

20.     Defendant Timothy Aitken is the Field Office Director for the San Francisco Field Office of ICE. The San Francisco Field Office is responsible for carrying out ICE's immigration detention and removal operations in northern California, Hawaii, and Guam.  As Director,

Defendant Aitken oversees the San Francisco Field Office's functions and implementation of its detention standards, including with respect to telephone access.

21.   Defendants Saldaña, Johnson, and Aitken are sued in their official capacities only.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

**Background on Removal Proceedings**

22.   Deportation or "removal" proceedings begin when DHS issues a Notice to Appear ("NTA") charging an immigrant as removable.  Removal cases are adjudicated by the immigration courts in the first instance and are reviewed by the BIA.  Both the immigration courts and the BIA are part of the Executive Office for Immigration Review within the United States Department of Justice.  Decisions of the BIA are reviewable by the United States Courts of Appeals.

23.   The initial appearance in removal proceedings is the master calendar hearing.  At this hearing, the immigration judge advises the respondent of his or her rights with respect to the hearing, asks whether the respondent wishes to fight removal and whether he intends to seek legal advice or representation, and may take pleas on the charges in the NTA.  Once the respondent is prepared to proceed with his case, the immigration judge will set the case for an evidentiary hearing on removability, relief from removability, and other issues that determine whether the respondent will be permitted to remain in the United States, or deported.  *See generally* Executive Office for Immigration Review, *Immigration Judge Benchbook*, available at http://www.justice.gov/eoir/vll/benchbook/ (last visited June 4, 2015).

24.   An immigrant facing removal proceedings may contest the charges on which ICE and DHS seek removal.  For example, a respondent can demonstrate that he is in fact a U.S. citizen, or -- if alleged to be removable because of a criminal offense -- that he was not convicted of the alleged offense, or that the offense is not a removable offense.  If the charges of removability are not sustained, the removal proceedings are terminated.

1    25.    An immigrant facing removal proceedings may also seek relief from removal.

2  For example, an immigration judge may grant "cancellation of removal" based on certain

3  statutory eligibility requirements and evidence demonstrating compelling reasons for being

4  permitted to remain in the United States.  8 U.S.C. § 1229b.  To secure cancellation of removal,

5  an immigrant must prove his worthiness for discretionary relief through evidence such as

6  employment records and letters of support or live testimony from community members.  The

7  respondent may also apply for "protection relief," shorthand for asylum, withholding of removal,

8  and relief under the Convention Against Torture, which are related forms of relief available to

9  immigrants who would face harm if returned to their native countries.  All forms of protection

10  relief have different requirements and standards, but generally require presentation of detailed

11  evidence, including affidavits, testimony and documents.  *See* 8 U.S.C. §§ 1158; 1231(b)(3); 8

12  C.F.R §§ 208.16-208.18.

13    26.    Other forms of statutory relief from removal are granted by CIS, the component

14  of DHS that administers immigration benefits.  For example, immigrants in removal proceedings

15  who have been injured as victims of crime and are able to obtain a "certification" from a law

16  enforcement agency that they assisted in the investigation or prosecution of the crime may obtain

17  a U visa.  8 U.S.C. § 1101(a)(15)(U).  The grant of a U visa results in termination of removal

18  proceedings and allows the crime victim to remain in the United States.

19    27.    With some exceptions, immigrants held in ICE custody can request a bond

20  redetermination hearing at which an immigration judge reviews ICE's initial custody

21  determination.  At this hearing, which is separate from evidentiary hearings on removability and

22  relief from removability, the immigrant has the right to present evidence to demonstrate that he is

23  neither a danger to the community nor a flight risk.  This evidence may include, among other

24  things, the immigrant's own testimony, testimony from third-party witnesses, and documentary

25  evidence of his good character and community ties.

26    28.    In order to seek release on bond, most detained immigrants seek legal

27  representation.  If they cannot afford to hire an attorney and are unable to secure *pro bono*

1    representation, they need to obtain legal advice and independently gather information and

2    evidence in connection with bond redetermination hearings.

3        29.    Of all immigration proceedings completed in fiscal year 2011, 42% involved

4    respondents who were detained during the proceedings.  Lenni B. Benson & Russell R. Wheeler,

5    *Enhancing Quality and Timeliness in Immigration Removal Adjudication*, at 19 (June 7, 2012),

6    available at http://www.acus.gov/sites/default/files/documents/Enhancing-Quality-and-

7    Timeliness-in-Immigration-Removal-Adjudication-Final-June-72012.pdf (last visited June 4,

8    2015).

9    **Immigration Detention in Northern and Central California**

10       30.    In addition to obstacles generated by incarceration, English language limitations,

11   and the complexity of the immigration and procedural laws governing removal proceedings and

12   relief from removal, Plaintiffs' efforts to exercise their rights to be represented by counsel, gather

13   and present evidence, and obtain a fair hearing are restricted by geographic isolation.  In many

14   cases telephone communication provides the only avenue through which Plaintiffs can secure

15   and exercise those rights.

16       31.    ICE contracts with Yuba County, Sacramento County, and Contra Costa County

17   to hold immigration detainees with cases venued in San Francisco in the Yuba, Elk Grove, and

18   Richmond Facilities, respectively.

19       32.    In or around January 23, 2015, ICE contracted with The GEO Group, Inc. to hold

20   immigration detainees with cases venued in San Francisco at the Bakersfield Facility.

21       33.    Plaintiffs are geographically isolated from the San Francisco Immigration Court,

22   and from the immigration attorneys who practice removal defense, most of whom are based in or

23   near San Francisco.  Of the four detention facilities, only the Richmond Facility is within an

24   hour's drive from San Francisco.  The Yuba and Elk Grove Facilities are several hours away

25   from San Francisco.  The Bakersfield Facility, ICE's newest detention facility housing detainees

26   with cases venued in San Francisco, is located approximately 280 miles, or more than four hours,

27   away from San Francisco.

34.     Many Plaintiffs are also geographically isolated from their families and others who might provide assistance in obtaining documents and other evidence necessary to defend against removal or seek relief from deportation.

35.     The effects of Plaintiffs' geographical isolation are compounded by the fact that ICE frequently transfers detainees among detention facilities based on the agency's operational needs.  Between 1998 and 2010, 40% of detainees experienced at least one transfer, and 46% of those detainees were transferred two or more times.  *See* Human Rights Watch, *A Costly Move: Far and Frequent Transfers Impede Hearings for Immigrant Detainees in the United States*, at 17 (June 2011), available at

http://www.hrw.org/sites/default/files/reports/us0611webwcover_0.pdf (last visited June 4, 2015).

36.     All of the immigration detainees in the Yuba, Elk Grove, Richmond, and Bakersfield Facilities have, have had, or may have proceedings in the San Francisco Immigration Court located at 630 Sansome Street.  Most detainees have active removal proceedings in the San Francisco Immigration Court.  Other detainees had removal proceedings in the San Francisco Immigration Court, and are deciding whether to appeal to the BIA or are awaiting the outcome of their appeals.  Some cases pending on appeal may be remanded for further proceedings at the San Francisco Immigration Court.  Some await an agency determination as to whether they will have a hearing in the San Francisco Immigration Court based on reasonable fear of returning to their home countries.

**Defendants' Denial and Restriction of Telephone Access Results in a Dramatic Disparity of Outcomes**

37.     Defendants' denial and restriction of telephone access in these circumstances denies or severely limits Plaintiffs' statutory and constitutional rights to retain counsel, to communicate with retained counsel, to gather and present evidence, to obtain a fair hearing, and to apply for immigration benefits from CIS in seeking relief from removal, with a dramatic and devastating impact on Plaintiffs.

38.     Of all removal proceedings completed in San Francisco in fiscal year 2011, only 34% of detained respondents were able to exercise their right to retain counsel, compared to 75% of non-detained respondents. *Enhancing Quality and Timeliness*, *supra* ¶ 29 at 127.  Of all removal proceedings completed in San Francisco in fiscal year 2011, only 11% of detained respondents had successful outcomes in their cases, compared to 59% of non-detained respondents.  Transactional Records Access Clearinghouse, *Immigration Court Processing Time by Outcome*, available at

http://trac.syr.edu/phptools/immigration/court_backlog/court_proctime_outcome.php (last visited June 4, 2015).

**Defendants' Denial and Restriction of Plaintiffs' Telephone Access**

39.     Defendants' policies, practices, and omissions in denying and restricting telephone access violate Plaintiffs' statutory and constitutional rights in numerous ways. They also violate ICE's own detention standards with respect to telephone access, which are both deficient and not adhered to or enforced by Defendants.  *See* 2011 Performance-Based National Detention Standards, *Telephone Access*, available at http://www.ice.gov/doclib/detention-standards/2011/telephone_access.pdf (last visited June 2, 2015) ("2011 PBNDS"); 2008 Performance-Based National Detention Standards, available at http://www.ice.gov/doclib/dro/detention-standards/pdf/telephone_access.pdf (last visited June 2, 2015) ("2008 PBNDS"); 2000 National Detention Standards, available at http://www.ice.gov/doclib/dro/detention-standards/pdf/teleacc.pdf (last visited June 2, 2015) ("2000 NDS").

40.     Although ICE's detention standards on telephone access provide that detention facilities must operate a system that permits detained immigrants to make free calls to and leave voicemail messages for nonprofit legal services providers and certain government entities (referred to as the "free call platform"), *see* 2011 PBNDS at 361-63; 2008 PBNDS at 4-5; and 2000 NDS at 2, the free call platform is ineffectual and has little practical impact on the ability of

immigrants in ICE custody to obtain counsel, gather evidence, or secure their rights to a fair removal hearing.[1]

41.    In general, there are three ways to make a telephone call from immigration detention in the Yuba, Elk Grove, Richmond, and Bakersfield Facilities: A detainee can place a collect call, in which the recipient agrees to accept the charges for the call.  A family member or friend can contact the telephone service provider for the detention facility to establish a prepaid account, which funds a detainee's calls to a specific telephone number.  In the Yuba, Elk Grove, and Bakersfield Facilities, a detainee can use his own money to purchase a calling card.

42.    Plaintiffs who are language minorities or who have disabilities face special difficulties using the phone systems in the facilities.  Instructions on how to use the free call platform or other calling systems are generally unavailable in minority languages.  ICE and Facility officers routinely ignore or deny requests for assistance from these Plaintiffs, often instructing detainees to obtain advice and assistance from other detainees.

43.    The telephone systems in the housing units of the detention facilities allow a call to be completed only if a live person answers the telephone and accepts the call (by pressing a number in response to a prompt), even if a prepaid account has been established.  If a recorded greeting begins to play, the call is disconnected.  Consequently, Plaintiffs cannot leave voicemail messages even to parties who have set up prepaid accounts or on calls Plaintiffs are willing and able to pay for through calling cards.  Plaintiffs are also unable to complete calls to offices that use voicemail trees, *i.e.*, automated systems that require selection of options to reach a live person.  Three-way calls are not permitted in any of the facilities.  Detainees cannot make international calls from the Richmond facility.  International calls are prohibitively expensive from the Yuba and Elk Grove facilities.

---

[1] Unless otherwise specified, the remainder of allegations in this section of the complaint are related to the telephone system detainees must use to reach anyone that is not included on the free call platform, *i.e.,* the substantial majority of immigration attorneys; all local, state and federal government offices outside of DHS; and private parties.

44.     At the Yuba, Elk Grove, and Richmond facilities, many Plaintiffs spend up to 22 hours a day confined to their cells.  They are permitted to make telephone calls only during "free time," which occurs at inconsistent hours and often early in the morning or at night. Thus, Plaintiffs cannot reliably arrange to call people at particular times. When free time occurs outside of business hours, Plaintiffs are unable to reach law offices or any other offices. *Cf.* 2011 PBNDS at 362 (detainees shall be provided "reasonable and equitable access to telephones during established facility 'waking hours'").

45.     At the time the original complaint was filed, Plaintiffs held in the Yuba, Elk Grove, and Richmond facilities were only allowed to use telephones that were located in the common areas of each housing unit ("housing unit phones").  Plaintiffs had absolutely no privacy when making privileged calls to current or prospective attorneys, which are often about sensitive topics.  *Cf. id.* at 364 (facilities shall ensure privacy for legal calls and may do so by installing privacy panels, placing telephones in locations where conversations are not readily overheard, or by providing detainees access to office telephones).  Plaintiffs' ability to locate, retain and communicate with counsel, and to gather and present evidence in their removal proceedings, is further restricted by the fact that telephone calls from the housing unit phones at the Yuba, Elk Grove, and Richmond facilities are unreasonably -- and often prohibitively -- expensive.  In the Richmond Facility, for example, an intrastate, long-distance call costs $3.00 to connect plus $0.25 per minute, totaling $5.50 for a ten-minute call, making it prohibitively expensive for many members of the class, who are indigent.  The phone systems at these facilities regularly malfunction and fail to connect or disconnect mid-call for technical reasons, requiring Plaintiffs to pay a new connection fee to continue their conversations.  Moreover, at the time the complaint was filed, calls made from the Yuba and Sacramento facilities automatically disconnected after 15 minutes.  *Cf. id.* at 360 (facilities shall provide access to "reasonably priced telephone services"); *id.* at 363 ("Indigent detainees are afforded the same telephone access and privileges as other detainees.").

46.     Immigrants held in ICE custody are completely unable to receive incoming telephone calls.  Thus, attorneys, family members and others who might assist in gathering evidence necessary to defend removal charges or seek relief from removal can contact Plaintiffs only by mail or by in-person visitation.[2]

**Defendants' Modifications to Plaintiffs' Telephone Access in Response to Litigation**

47.     Around September 2014, approximately nine months after Plaintiffs filed their complaint, Defendants made some limited changes to the Plaintiffs' telephone access at the Yuba, Elk Grove, and Richmond detention facilities in response to the litigation.

48.     In response to this litigation, Defendants adjusted the telephone systems at Yuba and Elk Grove so that Plaintiffs' calls automatically disconnect after 20 minutes instead of 15 minutes.  Plaintiffs at those facilities are still required to pay a new connection fee after their call is automatically disconnected due to the time limit.

49.     Also in response to this litigation, Defendants began permitting some Plaintiffs held at the Yuba and Richmond facilities to make free, unmonitored telephone calls in support of their immigration cases from a private or a semi-private room.  In addition, officials at Yuba and Richmond also began accepting messages from attorneys wishing to speak with Plaintiffs at those facilities.

50.     In the Richmond Facility, there is one free, unmonitored telephone in a closed room available to detainees in each housing unit.  Access to this telephone is limited based on particular deputy practices, and generally is available only during free time hours.  The telephone can be used only to place calls to attorneys.  There are often more detainees who want to use this telephone than there is time for each person to make a call and detainees must limit the time of their calls or wait another day to try to get access to the telephone.

51.     In the Yuba Facility there are two free, unmonitored telephones in a closed room.  Detainees can submit a written request to use these telephones.  After submitting their requests,

---

[2] The Elk Grove Facility permits incoming messages via an online system, but the system cannot be used for confidential communications because all messages are reviewed by jail staff or recorded.

detainees wait several days and sometimes two or more weeks to be informed it is their turn to use one of these telephones.  Detainees are not given notice before a telephone is made available to them, and they are therefore unable to make advance arrangements for their intended call recipients to be available to take their calls.  Detainees often have to share the room with another person and therefore the telephones do not offer privacy.  These telephones can be used only to place calls to attorneys and they have an outgoing message informing the recipient of the call that it is being made from a detention facility.  Calls from these telephones do not connect unless the recipient affirmatively accepts the call.

52.     Officials at the Yuba and Richmond Facilities also began accepting messages verbally and through e-mail, respectively, from attorneys wishing to speak with Plaintiffs at those facilities.  The Facilities' practices and procedures for accepting and delivering such messages are uncertain and inconsistent.

53.     In March 2015, Defendants began transferring many Plaintiffs held at the Yuba, Elk Grove, and Richmond Facilities to a new detention facility in Kern County, California (the Bakersfield Facility).  Plaintiffs are informed and believe and thereon allege that Defendants have also begun to house new detainees whose cases are venued in San Francisco in the Bakersfield Facility.

54.     The basic technical features of the telephones available in the housing units at the Bakersfield Facility are identical to the Yuba, Elk Grove, and Richmond Facilities, as alleged in paragraphs 40-43, *supra*.  For example, Plaintiffs at the Bakersfield Facility calling from the housing unit telephones are unable to leave voicemail messages or penetrate voicemail trees and, in order for the call to connect, a live person must answer and accept the call.

55.     Like Plaintiffs at Yuba, Elk Grove, and Richmond, Plaintiffs at the Bakersfield Facility are required to pay for all outgoing calls from the housing unit telephones.  Other than the free call platform, there is no free calling option for indigent Plaintiffs who need to make calls from the housing units in support of their immigration cases.

56.     The housing unit telephones in the Bakersfield Facility are located in open areas of 100-bed dormitories, allowing no privacy for calls made from those telephones.  All calls from the housing unit phones are monitored and recorded.

57.     The Bakersfield Facility has four rooms with free, unmonitored telephones. Pursuant to a written policy that is attached to the First Supplemental Complaint as Exhibit "1," detainees can request to use the room only to call attorneys.  Plaintiffs are only permitted to use the private telephones if Bakersfield Facility staff and the telephone service provider approve the attorney as "a legal representative."

58.     The telephone rooms in the Bakersfield Facility are not soundproof and calls are within earshot of an officer at the Facility, so calls made from those rooms are not confidential. Similar to the private phone rooms at the Yuba and Richmond Facilities, Plaintiffs' requests to make free legal calls from the attorney rooms are frequently ignored or denied.  Plaintiffs may wait a week or longer for a response to their requests to use an unmonitored telephone.  The rooms in which these telephones are located at the Bakersfield Facility are also designated for attorney visitation.  Plaintiffs are informed and believe and thereon allege that at least two of the four rooms that hold these unmonitored telephones will be used during business hours for videoconference hearings in Immigration Court and will therefore be unavailable to detainees for unmonitored telephone use.  Plaintiffs are informed and believe and thereon allege that the telephones available in the Bakersfield Facility will be inadequate to meet the needs of detainees for direct, private calls to seek legal advice and representation, to contact witnesses and government agencies, and to gather evidence and information necessary for Plaintiffs' immigration cases and affirmative applications for relief.

59.     The changes Defendants have made in response to litigation fail to address many of Plaintiffs' concerns in this action and are insufficient to fully support Plaintiffs' rights. Defendants maintain the changes were not necessary to effectuate Plaintiffs' rights as alleged in this case.  The limited improvements to telephone access since the filing of this litigation are

1  subject to change at Defendants' discretion; they are not embodied in any contract modifications

2  or amendments to ICE detention standards.

3      60.    The need for private telephones is even clearer at the Bakersfield Facility than in

4  the Richmond, Yuba, and Elk Grove Facilities because it is a greater distance from the San

5  Francisco Immigration Court and there are few immigration attorneys nearby.  It has been and

6  continues to be ICE's practice to transport detainees from the Richmond, Yuba, and Elk Grove

7  Facilities to meet with *pro bono* counsel upon request of counsel.  However, ICE has announced

8  to representatives of the immigration bar in San Francisco that such accommodations will not be

9  made for detainees in the Bakersfield Facility and their *pro bono* counsel.

10  **Denial of Right to Legal Representation**

11      61.    The capacity of nonprofit legal services providers in northern and central

12  California to provide representation for detained immigrants is very limited.  The bulk of the

13  legal representation for detained immigrants is provided by the private immigration bar,

14  sometimes on a low-fee or sliding scale basis, and occasionally on a *pro bono* basis.  There are

15  no nonprofit legal services providers who represent immigrants in removal proceedings in the

16  region surrounding Bakersfield, California, where ICE located its newest detention facility.

17      62.    The restriction and denial of telephone access makes it extremely difficult, and

18  often impossible, for Plaintiffs to secure private counsel from within detention facilities.

19  Plaintiffs often obtain the names and telephone numbers of attorneys who represent detained

20  immigrants through word of mouth in the detention facility, but restrictions on telephone access

21  prevent Plaintiffs from contacting those attorneys.  Some Plaintiffs are confined to their cells for

22  most of the day; many lack sufficient funds to make calls.  Plaintiffs who are able to access the

23  telephones during business hours and pay for calls are stymied by the inability to leave voicemail

24  messages and navigate voicemail trees, and it is difficult – and sometimes impossible – for

25  attorneys to call or arrange calls with Plaintiffs to follow up on Plaintiffs' requests for

26  representation.

27

63.     Although immigrants held in ICE custody can sometimes locate counsel through family members, many Plaintiffs do not have family members or friends who are able and willing to help them retain counsel.  Many Plaintiffs have been transferred far from their communities, sometimes without the knowledge of those who might otherwise attempt to assist in locating counsel.  Some Plaintiffs are eligible for immigration relief based on abusive domestic relationships and cannot rely on their partners to facilitate that relief.  In addition, when Plaintiffs must funnel their communications with counsel through family members, they are forced to compromise the attorney-client privilege.

64.     ICE's free call platform can rarely help Plaintiffs secure counsel.  Half of the organizations on the list that are designated as free legal services providers do not accept the cases of immigrants who are detained during their removal proceedings.  Most of the organizations that do represent detained immigrants can only accept a low volume of "detained cases" due to resource constraints.  Accordingly, one immigration judge in San Francisco routinely advises detained immigrants to look for private counsel because the nonprofit legal services organizations are inundated with requests for assistance.

65.     When Plaintiffs are able to locate and retain an attorney, the restriction and denial of telephone access also severely undercuts the effectiveness of the representation and Plaintiffs' ability to gather evidence and obtain a fair hearing.  Plaintiffs have limited ability to call their attorneys, and their attorneys have limited ability to call or arrange calls with Plaintiffs.  Unlike pretrial criminal defendants, who are detained in the county where their public defenders are based, most Plaintiffs are incarcerated hours away from their attorneys.  Legal correspondence to and from ICE custody can take a week in each direction.  Letters must be inspected to ensure that they are indeed legal mail and do not contain contraband, and incoming letters must be opened in the presence of the detainee to protect the confidentiality of legal mail.  Moreover, some Plaintiffs cannot communicate by mail because they cannot read or write in any language.

66.     In addition, Defendants' policies and practices restricting and denying telephone access, in light of Plaintiffs' geographic isolation and the inherent limitations on alternative

1    means of communication, impose logistical constraints that make it impossible for lawyers who

2    are otherwise willing and able to represent Plaintiffs in connection with removal proceedings to

3    do so, which further restricts and denies Plaintiffs' right to be represented by counsel.

4    **Denial of Right to Gather and Present Evidence**

5        67.     The denial and restriction of telephone access to immigrants in ICE custody also

6    prevent Plaintiffs, and particularly Plaintiffs who must represent themselves, from obtaining and

7    presenting evidence necessary to obtain a fair hearing.  This includes evidence that would entitle

8    them to release from detention, relief from removal, or immigration benefits from CIS that would

9    terminate deportation proceedings.  For example, a Plaintiff seeking relief from removal via a U

10    visa may need to contact a police department to obtain a police report, a hospital to obtain

11    medical records, or a district attorney's office to obtain a law enforcement certification. Plaintiffs

12    seeking bond redetermination from an immigration judge may need to contact character

13    witnesses and obtain documentary evidence of their good works in the community, completion

14    of rehabilitation programs, or the financial hardship their detention imposes on their United

15    States citizen children.

16        68.     Defendants' restriction and denial of telephone access make it difficult or

17    impossible for Plaintiffs to obtain this documentation while held in ICE custody.  Even in the

18    rare circumstance when Plaintiffs are theoretically able to make a telephone call during business

19    hours that is not blocked by Defendants' technological barriers, the prohibitive telephone rates

20    render most Plaintiffs unable to actually complete the call.

21    **Prolonged Incarceration**

22        69.     In addition to denying Plaintiffs' their statutory and constitutional rights to be

23    represented by counsel, to gather and present evidence, to a fair hearing and to meaningful

24    participation in proceedings in which ICE seeks to remove them from the United States,

25    Defendants' restriction and denial of telephone access to immigrants held in ICE custody

26    substantially prolongs Plaintiffs' incarceration pending removal hearings.  At master calendar

27    hearings, Plaintiffs are forced to ask the immigration judge for a continuance to retain counsel, to

1    prepare their cases, or simply to obtain legal advice that permits them to make an informed

2    decision whether to seek relief from deportation or accept a removal order.  Some Plaintiffs state

3    during their master calendar hearings that lack of telephone access is the reason they need a

4    continuance.  Plaintiffs routinely seek and receive multiple continuances.

5            70.    The prolonged periods of incarceration resulting from Defendants' restriction and

6    denial of telephone access to immigrants held in ICE custody deprives Plaintiffs of their

7    freedom, not as punishment for conviction of a crime, but rather because Defendants' policies

8    and practices have made it difficult or impossible for Plaintiffs to exercise their statutory and

9    constitutional rights.  The fact that Plaintiffs are willing to endure prolonged incarceration in

10   their efforts to obtain those rights underscores the egregiousness of the violations alleged herein.

11                    **ADDITIONAL ALLEGATIONS RE INDIVIDUAL PLAINTIFFS**

12   **Audley Barrington Lyon, Jr.**

13           71.    Plaintiff Audley Barrington Lyon, Jr. is a 35-year-old man currently on

14   conditional release from ICE custody.  At the time the original complaint was filed and Plaintiffs

15   moved for class certification in this matter, Mr. Lyon was detained in the Richmond Facility.  He

16   entered the United States as a lawful permanent resident when he was approximately ten years

17   old.

18           72.    Mr. Lyon seeks relief from removal in the form of a U visa, as the victim of a

19   shooting who cooperated with the East Palo Alto Police Department in connection with the

20   crime.  He is also seeking protection relief under 8 U.S.C. § 1231(b)(3).

21           73.    Mr. Lyon cannot afford to retain an immigration attorney.  After more than two

22   months in immigration custody at the Richmond Facility, Mr. Lyon was able to retain pro bono

23   counsel, Eleni Wolfe-Roubatis of Centro Legal de la Raza.

24           74.    Due to Defendants' denial of telephone access to immigration detainees, Mr.

25   Lyon was unable to call the East Palo Alto Police Department to obtain a police report and the

26   law enforcement certification required for his U visa application.  Because the Richmond Facility

27   does not permit detainees to purchase calling cards or phone credit, Mr. Lyon's only option was

1   to place a collect call to the police department.  Government agencies, however, generally do not

2   accept collect calls.

3       75.     Until Mr. Lyon retained pro bono counsel, he relied on his wife to assist him with

4   his U visa application.  However, Mr. Lyon's wife earns limited income and could not afford to

5   accept collect calls or establish a prepaid account to accept calls from Mr. Lyon.  Instead, Mr.

6   Lyon and his wife communicated with one another regarding his U visa application by mail.

7       76.     Mr. Lyon's wife attempted to obtain a police report on his behalf, but was

8   informed that the police department would only release the report to Mr. Lyon or his legal

9   representative.

10      77.     It was only after retaining counsel that Mr. Lyon was able to secure the

11  documents required to seek relief from removal.

12      78.     Defendants' restrictions on telephone access severely obstructed Mr. Lyon's

13  attempts to apply for a U visa and to seek advice and pro bono representation.

14  **José Elizandro Astorga-Cervantes**

15      79.     Plaintiff José Elizandro Astorga-Cervantes is a 53-year-old man currently on

16  conditional release from ICE custody.  At the time the original complaint was filed and Plaintiffs

17  moved for class certification in this matter, Mr. Astorga-Cervantes was detained in the Elk Grove

18  Facility.  He has lived in the United States since he was a child and became a lawful permanent

19  resident of the United States in 1977.

20      80.     While Mr. Astorga-Cervantes was detained at the Elk Grove Facility, he sought

21  release from custody by demonstrating to an immigration judge or ICE that he does not pose a

22  risk of flight or a danger to society.

23      81.     Mr. Astorga-Cervantes intends to apply for relief from removal under former

24  section 212(c) of the Immigration and Nationality Act, a form of discretionary relief similar to

25  cancellation of removal.  Release from custody and 212(c) relief both require letters or testimony

26  from family and community members who can attest to Mr. Astorga-Cervantes's character and

27  community ties.

82. Due to Defendants' telephone access policies and practices, Mr. Astorga-Cervantes was almost completely unable to speak to his family members and community contacts in connection with his efforts to secure release from custody and immigration relief for more than a month. Mr. Astorga-Cervantes did not have sufficient funds in his inmate account to purchase phone credit.

83. Mr. Astorga-Cervantes was also unable to complete a collect call to his home for more than a month. As Mr. Astorga-Cervantes was the primary income earner in his household, his family faced severe financial strain and could not afford to pay for expensive telephone calls from detention.

84. Defendants' restrictions on telephone access severely obstructed Mr. Astorga-Cervantes's attempts to prepare for his bond hearing, apply for a U visa, and seek legal advice and representation.

**Nancy Neria-Garcia**

85. Plaintiff Nancy Neria-Garcia is a 26-year-old woman currently in ICE custody in the Richmond Facility. She first came to the United States in November 2010.

86. Ms. Neria-Garcia is seeking withholding of removal and protection under the Convention Against Torture, based on abuse and fear of abuse and torture by her ex-partner if she is returned to Mexico.

87. Ms. Neria-Garcia entered ICE custody on or about June 26, 2014. She was detained at the Yuba Facility from June 26, 2014 until March 26, 2015, when she was transferred to the Bakersfield Facility. She remained in custody at the Bakersfield Facility until June 3, 2015, when she was transferred to the Richmond Facility, where she is currently in custody.

88. Defendants' denial and restriction of telephone access has severely undercut Ms. Neria-Garcia's statutory and constitutional right to be represented by counsel and to gather and present evidence or witnesses for her immigration case. While she was in the Yuba Facility, she often lacked sufficient funds to call her attorney and others in support of her immigration case. In one of the housing units where Ms. Neria-Garcia was detained at the Yuba Facility, she was

1   locked down in her cell for 23 hours a day with no access to the telephone.  Even when she was

2   able to access the telephones and pay for calls, the limited functionality of the telephones and the

3   lack of privacy for housing unit telephones made confidential attorney-client communications

4   impossible. The semi-private telephone room that was added to the Yuba Facility during Ms.

5   Neria-Garcia's detention there was also insufficient. Ms. Neria-Garcia did not receive a response

6   -- much less a telephone call -- to many of her requests to use the semi-private room.

7        89.     While in the Bakersfield Facility, Ms. Neria-Garcia was unable to use the

8   telephone to communicate confidentially with her attorney regarding sensitive matters in her

9   immigration case.  Given the lack of adequate telephone access, Ms. Neria-Garcia resorts to

10  writing letters or waiting for in-person visits with her attorney, which, because of the

11  geographical distance from the detention facilities, are rare.

## CLASS ALLEGATIONS

13       90.     The Individual Plaintiffs bring this action on behalf of themselves and all others

14  similarly situated under Rule 23 of the Federal Rules of Civil Procedure.  They propose the

15  following Class:

17       All current and future adult immigration detainees who are or will be held by ICE
         in Contra Costa County, Kern County, Sacramento County, or Yuba County.

19       91.     Defendants have engaged in a common course of conduct that has denied

20  constitutional and statutory rights on a classwide basis, including by promulgating,

21  implementing, maintaining and enforcing the policies and practices that deny and restrict

22  Plaintiffs' telephone access at the Bakersfield, Richmond, Elk Grove and Yuba Facilities, and by

23  failing to take actions necessary to allow Plaintiffs to consult with or obtain representation by

24  counsel, to gather and present evidence, to petition government agencies to obtain immigration

25  benefits and documents necessary to seek relief from removal, and to obtain a fair hearing.

26       92.     Plaintiffs seek injunctive and declaratory relief only, on grounds that apply

27  broadly to the Class as a whole.

---

93.     Members of the Class are so numerous that joinder is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that the Bakersfield, Richmond, Elk Grove, and Yuba Facilities hold a combined total of between 600 and 700 immigration detainees on an average day.

94.     Joinder is also impracticable because membership in the Class is fluid, as immigration detainees are frequently released from custody, transferred to other regions of the country, or removed from the United States.  The Class includes individuals who will be subjected to Defendants' policies, practices, and omissions in the future and therefore cannot be joined.

95.     There are numerous questions of law and fact common to the Class, which predominate over any individual questions, including:

        (a)     the extent to which Defendants' policies, practices and omissions denying and restricting telephone access interfere with Plaintiffs' ability to consult with and retain counsel; communicate effectively with counsel; and gather information and evidence in support of their claims, defenses, and applications for relief;

        (b)     whether Defendants' policies, practices and omissions in denying and restricting telephone access violate Plaintiffs' right to be represented by counsel under the Fifth Amendment Due Process Clause, and the Act and its implementing regulations;

        (c)     whether Defendants' policies, practices and omissions in denying and restricting telephone violate Plaintiffs' right to a fair hearing, and to gather and present evidence, under the due process clause of the Fifth Amendment and the Act and its implementing regulations;

        (d)     whether Defendants' policies, practices and omissions in denying and restricting telephone access violate the First Amendment's Petition Clause by denying and restricting the ability of Class members to obtain information, documents, and immigration benefits that can provide relief from removal; and

(e)     whether Defendants' policies, practices and omissions violate the detention standards promulgated by ICE with respect to telephone access.

96.     The Individual Plaintiffs are members of the Class or were previously certified as Class Representatives, and are or will be, in the event they are returned to custody, subjected to telephone access policies and practices that deny, violate and impair the constitutional and statutory rights of the Class as a whole.

97.     The Individual Plaintiffs will fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(a)(4).  They seek relief identical to the relief sought by all Class members and have no interests adverse to other members of the Class.  Plaintiffs are represented by *pro bono* counsel who are experienced in federal class action and civil rights litigation, and will adequately represent the interests of the class.

98.     A class action is superior to all other available methods for adjudicating this controversy, and is manageable, because:

(a)     Defendants are acting and refusing to act on grounds generally applicable to the Class;

(b)     many Class members are unaware of their legal rights, and are unable to obtain individual counsel due to the conduct alleged herein;

(c)     prosecution of individual actions would be impossible because individual Class members would not remain in ICE custody pending removal proceedings long enough to prosecute such actions to a conclusion;

(d)     even if it were possible, prosecution of separate actions by individual Class members would be inefficient, create a risk of conflicting or inconsistent adjudications, and might, as a practical matter, be dispositive of the interests of individual members of the Class;

(e)     by virtue of Defendants' roles in contracting with the facilities in which Class members are held in ICE custody, in promulgating, implementing, enforcing, and

1    in failing to promulgate, implement and enforce, detention standards relating to telephone

2    access for Class members; and

3              (f)  the injunctive and declaratory relief sought herein will enable Defendants to

4    formulate and implement measures necessary to address and remedy the constitutional

5    and statutory violations resulting from denial and restriction of telephone access, without

6    undue intrusion on legitimate governmental interests.

7                        **DECLARATORY RELIEF ALLEGATIONS**

8         99.    An actual and substantial controversy exists between Plaintiffs and Defendants as

9    to their respective legal rights and duties with respect to Defendants' policies, practices and

10   omissions in denying and restricting telephone access to the Class.  Plaintiffs contend that

11   Defendants' policies, practices and omissions alleged herein violate their constitutional and

12   statutory rights as alleged in the foregoing paragraphs.  Defendants deny that their policies,

13   practices and omissions violate Plaintiffs' constitutional and statutory rights, and intend to

14   continue such conduct.

15                           **FIRST CLAIM FOR RELIEF**

16                       **Right to Representation of Counsel**

17       **(Fifth Amendment Due Process Clause; 8 U.S.C. §§ 1362; 1229a(b)(4)(A))**

18        100.   Plaintiffs reallege the foregoing paragraphs and incorporate them herein by this

19   reference.

20        101.   The due process clause of the Fifth Amendment guarantees Plaintiffs the right to

21   representation of counsel of their choice, at no expense to the government.

22        102.   Plaintiffs also have a statutory right to representation of counsel at no expense to

23   the government under the Act.  8 U.S.C. §§ 1362; 1229a(b)(4)(A).

24        103.   Defendants have violated Plaintiffs' right to representation of counsel by denying

25   and severely restricting Plaintiffs' ability to make telephone calls to locate, consult with, and

26   retain counsel, and Plaintiffs' ability to communicate with retained counsel.

27

104.    Plaintiffs have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and omissions and are entitled to injunctive relief to avoid any further injury.

## SECOND CLAIM FOR RELIEF

### Right to a Full and Fair Hearing

### (Fifth Amendment Due Process Clause; 8 U.S.C. § 1229a(b)(4)(B))

105.    Plaintiffs reallege the foregoing paragraphs and incorporate them herein by this reference.

106.    The due process clause of the Fifth Amendment guarantees Plaintiffs the right to a full and fair hearing of their removal cases, including a reasonable opportunity to gather and present evidence.

107.    Plaintiffs also have a statutory right to gather and present evidence in connection with their removal proceedings under the Act.  8 U.S.C. § 1229a(b)(4)(B).

108.    Defendants have violated Plaintiffs' right to a full and fair hearing by denying and severely restricting Plaintiffs' ability to make telephone calls to gather information and obtain evidence in support of their immigration cases.

109.    Plaintiffs have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and omissions and are entitled to injunctive relief to avoid any further injury.

## THIRD CLAIM FOR RELIEF

### Right to Petition the Government for Redress of Grievances

### (First Amendment Petition Clause)

110.    Plaintiffs reallege the foregoing paragraphs and incorporate them herein by this reference.

111.    The First Amendment guarantees Plaintiffs the right to petition the government for redress of grievances, including the right to petition a federal agency for immigration benefits that, if granted, would result in termination of their removal proceedings.

112.    Defendants have violated Plaintiffs' right to petition the government by denying and severely restricting the telephone access necessary to seek legal representation and obtain documents and evidence in support of their applications for immigration benefits.

113.    Plaintiffs have suffered and will imminently suffer irreparable injury as a result of Defendants' policies, practices, and omissions and are entitled to injunctive relief to avoid any further injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1.    Issue an order certifying this action to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2.    Appoint the undersigned as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

3.    Issue a judgment declaring that Defendants' policies, practices, acts, and omissions described herein violate Plaintiffs' rights under the United States Constitution and the Immigration and Nationality Act.

4.    Enjoin Defendants, their subordinates, agents, employees, and all others acting in concert with them from subjecting Plaintiffs to the unlawful conditions described herein, and issue an injunction sufficient to remedy the violations of Plaintiffs' constitutional and statutory rights, including:

   a.    An order that Defendants afford sufficient time during business hours to complete legal calls, and establish a process by which Plaintiffs can make legal calls outside of free time;

   b.    An order that Defendants establish an adequate process by which immigration attorneys can schedule legal calls with Plaintiffs;

   c.    An order that Defendants make reasonable accommodations for Plaintiffs who are indigent and cannot afford to make legal calls, including international calls;

d.    An order that Defendants afford Plaintiffs the ability to make private, unmonitored, unrecorded calls with attorneys, without being overheard by other detainees or staff;

e.    An order that Defendants afford Plaintiffs the ability to penetrate automated telephone voicemail trees to make legal calls;

f.    An order that Defendants afford Plaintiffs the opportunity to leave voicemail messages when making legal calls;

g.    An order that Defendants provide adequate notice to Plaintiffs of the communication options available to them; and

h.    An order that Defendants provide accommodations for non-English proficient Plaintiffs, illiterate Plaintiffs, and Plaintiffs with disabilities that impact their access to legal calls.

5.    Grant Plaintiffs their reasonable attorney fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable law.

6.    Grant such other relief as the Court deems just and proper.

Dated:  August 27, 2015          AMERICAN CIVIL LIBERTIES UNION FOUNDATION
                                 OF NORTHERN CALIFORNIA


                       By:    _/s/ Megan Sallomi_____
                              MEGAN SALLOMI (SBN 300580)
                              JULIA HARUMI MASS (SBN 189649)
                              MICHAEL T. RISHER (SBN 191627)
                              39 Drumm Street
                              San Francisco, CA 94111
                              Telephone:  (415) 621-2493
                              Facsimile:  (415) 255-8437
                              Email:  jmass@aclunc.org

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

ORRICK, HERRINGTON & SUTCLIFFE LLP
ROBERT P. VARIAN (SBN 107459)
CHARLES J. HA (WA Bar No. 34430 (*pro hac vice*))
DAVID KEENAN (WA Bar No. 41359 (*pro hac vice*))
JUDY KWAN (SBN 273930)
ALEXIS YEE-GARCIA (SBN 277204)
MATTHEW R. KUGIZAKI (SBN 286795)
ORRICK, HERRINGTON & SUTCLIFFE, LLP
405 Howard Street
San Francisco, CA  94105
Telephone: (415) 773-5700
Facsimile: (415) 773-5759
Email: rvarian@orrick.com

AMERICAN CIVIL LIBERTIES UNION
NATIONAL PRISON PROJECT
CARL TAKEI (SBN 256229)
915 15th Street, N.W., 7th Floor
Washington, DC 20005
Telephone: (202) 393-4930
Facsimile: (202) 393-4931
Email: ctakei@aclu.org

*Attorneys for Plaintiffs*

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on August 27, 2015, a true and correct copy of the foregoing FIRST

3    SUPPLEMENTAL COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF was

4    served with the Clerk of the Court by using the CM/ECF system, which provided an electronic

5    notice and electronic link of the same to all attorneys of record through the Court's CM/ECF

6    system.

7

8    Dated:  August 27, 2015            By:        _/s/ Megan Sallomi_
                                                    MEGAN SALLOMI
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27