BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
ELIZABETH J. STEVENS
Assistant Director, District Court Section
KATHERINE J. SHINNERS
Trial Attorney, District Court Section
BRIAN C. WARD
Trial Attorney, District Court Section
JENNIFER A. BOWEN
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 598-8259
Email: Katherine.J.Shinners@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| AUDLEY BARRINGTON LYON, JR., *et al.*, | ) ) ) No. 3:13-cv-05878-EMC ) |
| Plaintiffs, | ) **DEFENDANTS' NOTICE OF MOTION** ) **AND CROSS-MOTION FOR SUMMARY** |
| vs. | ) **JUDGMENT AND OPPOSITION TO** ) **PLAINTIFFS' MOTION FOR SUMMARY** |
| U.S. IMMIGRATION & CUSTOMS ENFORCEMENT, *et al.*, | ) **ADJUDICATION** ) ) Date:   February 11, 2016 |
| Defendants. | ) Time:  1:30 p.m. ) Courtroom: 5 ) Judge:  Hon. Edward M. Chen ) ) |

**UNREDACTED VERSION SOUGHT TO BE SEALED**

PLEASE TAKE NOTICE that on February 11, 2016, at 1:30 p.m., or as soon thereafter as the parties may be heard, Defendants will bring a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The hearing will take place before the Honorable Edward M. Chen in Courtroom 5, 10th Floor, at 450 Golden Gate Avenue, San Francisco, California. This motion is based on the Memorandum of Law In Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Adjudication, the Declaration of Katherine J. Shinners in support of the Motion/Opposition and the exhibits attached thereto, Exhibit A to the Motion/Opposition, as well as all pleadings, papers, and files in this action, and any oral argument or hearing as may be presented at the hearing on this motion.

Defendants respectfully request that this Court grant summary judgment in their favor and dismiss all claims in Plaintiffs' complaint, and deny Plaintiffs' motion for summary adjudication in its entirety because they are not entitled to relief on their claims as a matter of law.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**

# TABLE OF CONTENTS

I.    Introduction ........................................................................................................1

II.   Issues Presented ...............................................................................................1

III.  Statement of Facts ...........................................................................................2

   A.  Detention and Removal...................................................................................3

      1.   Statutes Governing Removal and Detention..........................................3

      2.   Section 1229a Removal Proceedings in the San Francisco Immigration Court ......5

      3.   Legal Representation for Detained Alien Respondents ...........................6

      4.   The Four Detention Facilities, Oversight, and Communications Options...............7

      5.   Telephone Rates and Charges ...............................................................13

      6.   Security Issues in ICE Detention .........................................................13

   B.  The Named Plaintiffs ....................................................................................15

IV.   Argument .......................................................................................................17

   A.  Legal Standard .............................................................................................17

   B.  The Court Shoud Grant Judgment for Defendants on Plaintiffs' Due process and Statutory Claims in the First and Second Claims for Relief because Plaintiffs Have Not Shown that Defendants' Policies or Practices Interfered With Their Claimed Rights. ....18

      1.   The Facts Do not Demonstrate a Deprivation of Statutory Rights under the INA 18

      2.   For the Same Reasons, The Facts Do Not Demonstrate a Denial of a Full and Fair Hearing..............................................................................................25

   C.  The Court Should Grant Summary Judgment for Defendants on All Claims for Relief Because Plaintiffs Have Not Shown an Actual Injury....................................................26

      1.   The Court Should Import the "Actual Injury" Requirement ot Plaintiffs' Claims 26

   2.  Plaintiffs and Class Members Have Not Suffered Any Actual Injury..................28

D.  The Facts Do Not Demostrate "Punitive" Conditions Relating to Telephone Access or Unconstitutionally Prolonged Detention.............................................................29

E.  The Court Should Reject Plaintiffs' Proposed Procedural Due Process Analysis............32

   a.  It is Improper to Apply the *Mathews v. Eldridge* Procedural Due Process Analysis to Plaintiffs' Conditions of Confinement Claims. ...........................32

   b.  Even if the *Mathews v. Eldridge* Test Applied, Plaintiffs Are Not Entitled to Summary Judgment on Their Procedural Due Process Claim........................33

F.  Defendants Are Entitled to Summary Judgment on Plaintiffs' First Amendment Claim (Third Claim for Relief) as Matter of Law because Plaintiffs Have Not Alleged or Shown Interference with a Right Recognized by the Petition Clause. ...........................................36

G.  The Named Plaintiffs Do not Have Standing to Assert Claims of Injury on Behalf of Class members Who Speak Minority Languages or Who Are Indigent...........................38

H.  For All of these Reasons, the Record Does Not Demonstrate Entitlement to the Systemwide Declaratory and Injunctive Relief Plaintiffs Seek. .........................................39

I.  The Court Should Not Consider Inadmissible Hearsay and Testimony Unsupported by Personal Knowledge on Summary Judgment ....................................................42

V.  Conclusion .........................................................................................................42

# <u>TABLE OF AUTHORITIES</u>

*Acker v. McCormick,*
    110 F.3d 67 (9th Cir. 1997) ............................................................................. 21

*Ah Chiu Pang v. I&NS,*
    368 F.2d 637 (3rd Cir. 1966) .......................................................................... 19

*Allee v. Medano,*
    416 U.S. 802 (1974) ....................................................................................... 39

*Am. Immigration Lawyers Ass'n v. Reno,*
    18 F. Supp. 38 (D.D.C. 1998) .......................................................................... 4

*Antolos v. I&NS,*
    402 F.2d 463 (9th Cir. 1968) ......................................................................... 19

*Bank Melli Iran v. Pahlavi,*
    58 F.3d 1406 (9th Cir. 1995) ......................................................................... 40

*Barthelemy v. Air Lines Pilots Ass'n,*
    897 F.2d 999 (9th Cir.1990) ...................................................................... 40, 41

*Bell v. Wolfish,*
    441 U.S. 520 (1979).................................................................................. 27, 29

*Biwot v. Gonzales,*
    403 F.3d 1094, (9th Cir. 2005) .............................................................. 5, 19, 20

*Boone v. Ashcroft,*
    113 F. App'x 749 (9th Cir. 2004) ............................................................ 21, 22

*Borough of Duryea, Pa. v. Guarnieri,*
    564 U.S. 379, 131 S. Ct. 2488 (2011).............................................................. 36

*Boyd v. City of Oakland,*
    458 F. Supp. 2d 1015 (N.D. Cal. 2006) .................................................... 40, 41

*Brittain v. Hansen,*
    451 F.3d 982 (9th Cir. 2006) ........................................................................ 33

*Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v. McElroy,*
    367 U.S. 886 (1961) ...................................................................................... 33

*California v. Campbell,*
    319 F.3d 1161 (9th Cir. 2003) ...................................................................... 18

*Casas-Castrillon v. DHS,*
    535 F.3d 942 (9th Cir. 2008) .......................................................................... 4

*Castro-O'Ryan v. INS,*
    847 F.2d 1307 (9th Cir. 1987) ...................................................................... 24

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986).............................................................................. 18, 40

*Clark v. Whiting,*
    607 F.2d 634 (4th Cir. 1979) ........................................................................ 33

*Coleman v. Quaker Oats Co.,*
    232 F.3d 1271 (9th Cir. 2000) ...................................................................... 21

*Colindres–Aguilar v. I.N.S.,*
    819 F.2d 259 (9th Cir.1987) ........................................................................ 25

*Colmenar v. I.N.S.,*
    210 F.3d 967 ................................................................................................ 25

*Demore v. Kim,*
    538 U.S. 510 (2003)..................................................................................... 30

*Dent v. Holder,*
    627 F.3d 365 (9th Cir. 2010) .................................................................. 19, 24

*Estelle v. Gamble,*
    429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)........................................... 39

*Flexible Lifeline Sys. v. Precision Lift, Inc.,*
    654 F.3d 989 (9th Cir. 2011) .................................................................... 38

*Franco-Gonzalez v. Holder,*
    No. CV 10-02211, 2013 WL 3674492 (C.D. Cal. Apr. 23, 2013)............................ 18, 20

*Friedl v. City of New York,*
    210 F.3d 79 (2d Cir. 2000)....................................................................... 36

*Gomez-Granillo v. Holder,*
    654 F.3d 826 (9th Cir. 2011) ...................................................................... 3

*Gonzalez v. City of Fed. Way,*
    299 F. App'x 708 (9th Cir. 2008) ................................................................ 21

*Greenidge v. Allstate Ins. Co.,*
    446 F.3d 356 (2d Cir.2006)...................................................................... 21

*Gray v. Suttell & Assoc.,*
--F. Supp. 3d ---, Nos. CV-09-251-EFS, CV-10-5132-EFS, 2015 WL 4756837 (E.D. Wash. Aug.
    12, 2015) ...........................................................................................40

*Greenidge v. Allstate Ins. Co.,*
    446 F.3d 356 (2d Cir.2006)...................................................................... 21

*Harisiades v. Shaughnessey,*
    342 U.S. 580 (1952)............................................................................... 19

*Hernandez v. Ashcroft,*
    345 F.3d 824 (9th Cir. 2003) ...................................................................... 3

*Hill v. Walker,*
    No. 3:14-cv-62, 2015 WL 1486531 (S.D. Miss. Mar. 31, 2015)................................ 36

*Hopper v. John Doe Myers Recreational Coach,*
    2006 WL 3337388 (W.D. Wash. Nov. 9, 2006) ................................................. 28

*Hopper v. Melendez,*
    No. C05-5680, 2007 WL 4111366 (W.D. Wash. Nov. 16, 2007) ................................ 18

*Ibarra-Florez v. Gonzales,*
    439 F.3d 614 (9th Cir. 2006) ....................................................... 24

*Insurance Co. of N. Am. v. Moore,*
    783 F.2d 1326 (9th Cir.1986) ....................................................... 21

*Johannes v. County of Los Angeles,*
    No. CV02-3197, 2011 WL 6149253 (C.D. Cal. April 8, 2011) ............................. 23, 28

*Jones v. Blanas,*
    393 F.3d 918 (9th Cir. 2004) ....................................................... 29, 30

*Landon v. Plasencia,*
    459 U.S. 21 (1982)................................................................ 32

*Lewis v. Casey,*
    518 U.S. 343 (1996)................................................... 26, 27, 37, 39

*Lyman v. CSX Transp., Inc.,*
    364 F. App'x 699 (2d Cir. 2010) .................................................... 21

*Martin-Mendoza v. I& NS,*
    499 F.2d 918 (9th Cir. 1974) ....................................................... 19

*Mathews v. Eldridge,*
    424 U.S. 319 (1975)............................................................. 2, 31

*Medina v. Multaler, Inc.,*
    547 F.Supp.2d 1099 (C.D.Cal. 2007) ................................................ 40

*Melendres v. Arpaio,*
    784 F.3d 1254 (9th Cir. 2015) ...................................................... 38

*Miller v. Glenn Miller Prods., Inc.,*
    454 F.3d 975 (9th Cir. 2006) ..................................................... 17, 18

*Montes-Lopez v. Holder,*
    694 F.3d 1085 (9th Cir. 2012) .................................................................. 19, 24

*Morrissey v. Brewer,*
    408 U.S. 471 (1972) ........................................................................................ 33

*Murgia-Melendrez v. I&NS,*
    407 F.2d 207 (9th Cir. 1969) ........................................................................ 19

*Nelson v. City of Los Angeles,*
    No. CV 11-5407, 2015 WL 1931714 (C.D. Cal. April 28, 2015) .................. 27

*Norse v. City of Santa Cruz,*
    629 F.3d 966 (9th Cir. 2010) ........................................................................ 40

*389 Orange St. Partners v. Arnold,*
    179 F.3d 656 (9th Cir. 1999) ........................................................................ 21

*Orantes-Hernandez v. Meese,*
    685 F. Supp. 1488 (C.D. Cal. 1988) ............................................................ 32

*Orr v. Bank of Am.,*
    285 F.3d 764 (9th Cir. 2002) ........................................................................ 40

*Perez-Funez v. District Director, INS,*
    619 F. Supp. 656 (C.D. Cal. 1985) ........................................................ 32, 39

*Ramirez v. Immigration & Naturalization Serv.,*
    550 F.2d 560 (9th Cir. 1977) ........................................................................ 19

*Rendon v. Holder,*
    603 F.3d 1104 (9th Cir. 2010) ...................................................................... 20

*Sands v. Lewis,*
    886 F.2d 1166 (9th Cir. 1989) ...................................................................... 28

*Scott v. City of New York Dep't of Correction,*
    641 F. Supp. 2d 211 (S.D.N.Y. 2009) .......................................................... 21

*Silva v. Di Vittorio,*
    658 F.3d 1090 (9th Cir. 2011) ...................................................................... 36

*Singh v. Holder,*
    405 F. App'x 193 (9th Cir. 2010) ................................................................. 25

*Solano v. Godines,*
    120 F.3d 957 (9th Cir. 1997) ....................................................................... 19

*Stallcop v. Kaiser Found. Hosps.,*
    820 F.2d 1044 (9th Cir.1987) ...................................................................... 21

*State of California ex rel. Lockyer v. FERC,*
    329 F.3d 700 (9th Cir. 2003) ....................................................................... 32

*Steinert v. Winn Group, Inc.,*
    440 F.3d 1214 (10th Cir. 2006) .................................................................... 33

*Stonefire Grill, Inc. v. FGF Brands, Inc.,*
    987 F. Supp. 2d 1023 (9th Cir. 2013) ......................................................... 40

*Strandberg v. City of Helena,*
    791 F.2d 744 (9th Cir. 1986) ....................................................................... 27

*Trias-Hernandez v. I&NS,*
    528 F.2d 366 (9th Cir. 1975) ....................................................................... 19

*Turner v. Safly,*
    482 U.S. 78 (1987) ....................................................................................... 27

*Woodby v. I&NS,*
    385 U.S. 276 (1966) ..................................................................................... 19

*Zadvydas v. Davis,*
    533 U.S. 678 (9th Cir. 2001) ............................................................ 5, 19, 31

*Zinermon v. Burch,*
    494 U.S. 113 ................................................................................................. 32

# **STATUTES**

6 U.S.C. § 557 ............................................................................................ 3

8 U.S.C. § 251(b) ....................................................................................... 3

8 U.S.C. § 252 ........................................................................................... 3

8 U.S.C. § 1158(b)(2)(B)(i) ........................................................................ 6

8 U.S.C. § 1225(b) ..................................................................................... 3

8 U.S.C. § 1225(b)(1)(A)(i) ........................................................................ 4

8 U.S.C. § 1225(b)(1)(A)(ii) ....................................................................... 4

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ............................................................... 4

8 U.S.C. § 1226(a) .................................................................................. 3, 4

8 U.S.C. § 1226(c) ....................................................................... 3, 6, 31, 34

8 U.S.C. § 1228(b)(5) ................................................................................. 6

8 U.S.C. § 1229a ......................................................................................... 4

8 U.S.C. § 1229a(b)(4) .............................................................................. 25

8 U.S.C. § 1229a(b)(4)(A) ........................................................................ 21

8 U.S.C. § 1229a(b)(4)(B) ........................................................................ 24

8 U.S.C. § 1229b(a)(3) ............................................................................... 6

8 U.S.C. § 1229c(a)(1) ............................................................................... 6

8 U.S.C. § 1231(a) ..................................................................................... 4

8 U.S.C. § 1231(a)(2)...........................................................................................5, 34

8 U.S.C. § 1231(a)(5)................................................................................................4

8 U.S.C. § 1362........................................................................................................2

Pub. L. No. 107–296 § 471, Homeland Security Act of 2002 ("HAS")........................3

## **RULES**

Fed. R. Civ. P. 56(a) ..........................................................................................17, 35

Fed. R. Civ. P. 56(c)(2) ......................................................................................39, 40

Fed. R. Civ. P. 56(c)(4) ......................................................................................40, 41

Fed. R. Civ. P. 56(e) ................................................................................................40

Fed. R. Evid. 602 .....................................................................................................41

Fed. R. Evid. 801(c) .................................................................................................40

Fed. R. Evid. 802 .....................................................................................................40

## **REGULATIONS**

8 C.F.R. § 208.31(b) ..................................................................................................4

8 C.F.R. § 208.31(e) ..................................................................................................4

8 C.F.R. § 1208.2(c)(3)(i) ..........................................................................................4

8 C.F.R. § 1240.10(a)(1)(2) ......................................................................................20

# I.   Introduction.

Defendant U.S. Immigration and Customs Enforcement ("ICE") ensures the provision of a variety of communications options—including telephones—to aliens that are detained in ICE custody pending removal proceedings or processing.  Plaintiffs argue that the telephone access afforded to ICE detainees is insufficient to meet detainees' needs to communicate with prospective and current attorneys or to gather evidence for their immigration hearings or applications for immigration benefits.  The Court should grant summary judgment on Plaintiffs' claims, however, because Plaintiffs have failed to show any actual interference with the statutory and due process rights that the Ninth Circuit has recognized with respect to their immigration proceedings, or any actual injury that hindered them from pursuing their claims for relief or defenses in those proceedings, as required to succeed on their claims.  Further, Plaintiffs have not stated a claim for a violation of the First Amendment's Petition Clause as a matter of law and Defendants are thus entitled to summary judgment on that claim for this reason as well.

# II.   Issues Presented.

1)   Whether Summary Judgment should be granted for Defendants on Plaintiffs' First Claim for Relief because the evidence of record does not demonstrate that Defendants have violated the named Plaintiffs' or class members' statutory rights to representation by counsel in removal proceedings or related Fifth Amendment due process rights governing immigration proceedings.

2)   Whether Summary Judgment should be granted for Defendants on Plaintiffs' Second Claim for Relief because the evidence of record does not demonstrate that Defendants have violated named Plaintiffs' or class members' statutory rights to present evidence in removal proceedings or related Fifth Amendment due process rights governing fair immigration proceedings.

3)   Whether Summary Judgment should be granted for Defendants on Plaintiffs' First and Second Claims for Relief because the evidence of record does not demonstrate that conditions of confinement with respect to telephone access have caused actual injury to class members' rights to fair immigration proceedings.

**4)** Whether Plaintiffs can state a substantive due process claim, where the conditions of detainees' confinement are reasonably supported by legitimate security and institutional concerns, and where Plaintiffs have not challenged, and cannot challenge, the legality of the fact of class members' detention in this proceeding.

**5)** Whether the Court may properly evaluate Plaintiffs' due process claims—which seek to regulate detention conditions rather than pre-deprivation procedures—under the rubric of procedural due process and the analysis set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1975), as Plaintiffs propose.

**6)** Whether Summary Judgment should be granted for Defendants on Plaintiffs' Third Claim for Relief because Plaintiffs have not stated a claim for a violation of the First Amendment right to Petition for Redress of Grievances as a matter of law, and because the evidence of record does not demonstrate that Defendants have interfered with Plaintiffs' First Amendment petition rights.

**7)** Whether Plaintiffs have standing to seek declaratory and injunctive relief on behalf of those who speak minority languages or who are indigent where the Plaintiffs themselves speak English and/or Spanish, and where there is no evidence that they are indigent.

**8)** Whether Plaintiffs have established systemwide violations to justify systemwide relief, when they have not established their own injuries or widespread injury.

### III.    Statement of Facts.

The four detention facilities at issue in this litigation house alien detainees who are in the custody of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") pursuant to contracts with ICE.  As Plaintiffs themselves acknowledge, these ICE detainees are detained for different reasons and are in different stages of processing for removal.  *See* Plaintiffs' Motion for Summary Adjudication (ECF No. 120) ("Pls.' Mot."), at p. 3 & nn.5-6.  Some are in removal proceedings before the San Francisco Immigration Court based on various grounds of removal or deportation (including criminal grounds); for some, the decision in their removal proceedings is on appeal to the administrative appeals tribunal (the "BIA") or is on review with the Ninth Circuit Court of Appeals; a few may be arriving, excludable aliens eligible for expedited removal; some are aliens with reinstated removal orders

awaiting removal processing or evaluation as to whether they have a reasonable fear of returning to their home country; for some detained aliens, their removal proceedings and all stays of removal have terminated and they are awaiting removal to their home country.

At each of the four detention facilities, a variety of communications options—including a variety of telephones—are available for detainees to communicate with attorneys or other sources relevant to their immigration cases. As evidenced by the named Plaintiffs' and class members' own testimony, there is significant evidence that detainees are able to communicate with attorneys and other case-related contacts by phone and other methods with frequency and regularity.

**A.      Detention and Removal**

       1.      <u>Statutes Governing Removal and Detention.</u>

The Immigration and Nationality Act ("INA") grants the Attorney General the discretionary authority, transferred to DHS,[1] to detain any alien in removal proceedings pending a final order. 8 U.S.C. § 1226(a). Other statutory provisions mandate the detention of aliens who have committed certain criminal or terrorist offenses (8 U.S.C. § 1226(c)) and arriving aliens (8 U.S.C. § 1225(b)) during the pendency of their removal proceedings. As explained by ICE's

---

[1] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002 ("HSA"), Pub. L. No. 107–296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals ("BIA"). *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003). Until 2003, detention authority under section 1226(a) was exercised by the Immigration and Naturalization Service ("INS"), a component of the Department of Justice. However, the INS ceased to exist in 2003, and the HSA transferred various immigration functions to DHS, including, "[t]he detention and removal program." *See* 8 U.S.C. §§ 251(b), 252. To reflect this, rather than amend each use of the term "Attorney General" in the pre-HSA INA, Congress instead provided through 6 U.S.C. § 557 that "reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary." Thus, under these statutes, references to the "Attorney General" in the INA are read to refer to the Secretary to the extent the function was transferred to DHS. *See, e.g.*, *Gomez-Granillo v. Holder*, 654 F.3d 826, 833 (9th Cir. 2011).

Assistant Field Office Director Michael Vaughn, the ICE detainee population is often made up of individuals who are brought into ICE custody after serving criminal sentences. *See* Decl. of Katherine J. Shinners ("Shinners Decl.") Ex. 1, Deposition of Michael Vaughn ("Vaughn Dep.) at p. 175:25-176:4.

Aliens charged with removability or deportability are generally placed in removal proceedings before an immigration judge under 8 U.S.C. § 1229a ("Section 1229a proceedings"). *See* 8 U.S.C. § 1229a.  Not all detained aliens are placed in Section 1229a removal proceedings, however.  Some arriving aliens are initially subject to expedited removal proceedings under the procedures at 8 U.S.C. § 1225(b)(1)(A)(i), but shall be detained pending a credible fear determination if they express a fear of persecution under 8 U.S.C. § 1225(b)(1)(A)(ii).  8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  *See also generally Am. Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 38, 42-43 (D.D.C. 1998).   Still other aliens have re-entered the U.S. illegally after having been removed or after having departed the country under an order of removal, ████████ ████████████████, and are subject to detention and reinstatement of their prior removal orders and are ineligible for any form of relief under the INA.  8 U.S.C. § 1231(a)(5).  If the alien subject to a reinstated removal order expresses fear of persecution or torture in his native country, however, the alien may be eligible for protection in the form of withholding of removal; an alien who expresses such a fear is first referred to United States Citizenship and Immigration Services ("USCIS") for a "reasonable fear" interview by an asylum officer.  8 C.F.R. § 208.31(b).  If the asylum officer determines that the alien has a reasonable fear of persecution or torture, the alien is referred to the immigration judge for withholding-only proceedings, the jurisdiction of the immigration judge is limited to consideration of this form of protection. 8 C.F.R. §§ 208.31(e), 1208.2(c)(3)(i).

Aliens who have completed all administrative removal or withholding only proceedings are generally detained subject to post-order statutory provisions, *see* 8 U.S.C. § 1231(a), unless the Ninth Circuit Court of Appeals has entered a stay of removal.  *See Casas-Castrillon v. DHS*, 535 F.3d 942, 948 (9th Cir. 2008) (treating aliens with a pending petition for review of the alien's final order of removal and a stay of the removal order as detained under 8 U.S.C. §

1226(a)).  Under Section 1231, certain post-order aliens must be detained during the 90-day period to effect removal, *see* 8 U.S.C. § 1231(a)(2), and certain post-order aliens may remain detained for a presumptively reasonable period of at least six months, and after that six-month period may remain detained for as long as there remains a significant likelihood of removal in the reasonably foreseeable future. *Zadvydas v. Davis,* 533 U.S. 678, 701 (9th Cir. 2001).

2.  <u>Section 1229a Removal Proceedings in the San Francisco Immigration Court.</u>

Removal cases in the San Francisco Immigration Court do not all proceed at the same pace.  The "detained docket"—that is, the immigration cases of alien respondents who are detained—is an expedited docket.  *See* Shinners Decl. Ex. 2, Deposition of Ilyce Shugall ("Shugall Dep.") at p. 57:12.  In expedited cases, the master calendar hearing is usually scheduled "a few weeks" after the Department of Homeland Security ("DHS") files a Notice to Appear ("NTA") with the immigration court, whereas the master calendar hearing in non-expedited cases are scheduled for a "year or more" after the NTA is filed.  *See* Shinners Decl. Ex. 2, Shugall Dep. at pp. 57:16-24, 58:8-14.  The Immigration Court generally uses the master calendar hearing to resolve any issues that must be resolved before an individual hearing and to schedule the individual hearing on an alien's challenge to or request for relief or protection from removal.  *See* Shinners Decl. Ex. 2, Shugall Dep. at pp. 58:15-25, 59:16-23.  Immigration judges at master calendar hearings will generally grant at least one request to continue a case to locate counsel whether the alien is detained or not.  *See id.* at pp. 58:15-25; *cf. Biwot v. Gonzales*, 403 F.3d 1094, (9th Cir. 2005) (finding that immigration judge violated petitioner's due process rights where continuance was not reasonably calculated to allow petitioner to obtain counsel).  In a detained case, the time period between the master calendar hearing and the individual hearing is shorter than in non-detained cases:  at least one immigration judge tries to schedule the individual hearing in detained cases no later than forty-five (45) to sixty (60) days after the master hearing.  *See* Shinners Decl. Ex.2, Shugall Dep. at 60:23-61:4.  In non-detained cases, however, as of July 2015 immigration judges were scheduling individual hearings for some time in 2018 and 2019.  *See* Shinners Decl. Ex. 2, Shugall Dep. at pp. 61:10-13.  Given that the time period between the master calendar and the individual hearing is so elongated for the non-

detained docket, it is "unlikely" that an attorney would need to request a continuance of the individual hearing in a non-detained case. *See* Shinners Decl. Ex. 2, Shugall Dep. at pp. 63:25-64:4. Accordingly, it is impossible to compare the number of continuances sought in a detained case with the number of continuances sought in non-detained cases. Further, the amount of time necessary to gather evidence and documents necessarily varies by case and factual circumstances (regardless of whether the alien respondent is detained), and thus it would be very difficult to determine on an aggregate basis whether continuances were the result of challenges faced in detention or simply the result of the nature of that case combined with the expedited nature of the detained docket. *Cf.* Shinners Decl. Ex. 3, Deposition of Marco Garzon ("Garzon Dep.") at pp. 53:5-54:17 (in a non-detained case, attorneys often request a certain amount of time between a master calendar and an individual hearing depending on how much time they believe is required to gather evidence and documents, draft declarations, and prepare briefs and motions).

### 3. Legal Representation for Detained Alien Respondents.

Detained aliens do not struggle to secure legal representation for their removal proceedings or communicate with an attorney simply because they are detained. Rather, attorneys may decline to take an alien's case where there is no possibility of obtaining relief or protection from removal. *See* Shinners Decl. Ex. 3, Garzon Dep. at p. 27:1-8; Shinners Decl. Ex. 2, Shugall Dep. at p. 29:21-24. One of the reasons that there may be no or limited possibility for obtaining relief or protection is that the alien has a criminal conviction for an aggravated felony (*see, e.g.*, 8 U.S.C. §§ 1158(b)(2)(B)(i), 1228(b)(5), 1229b(a)(3), 1229c(a)(1)), which would also render the alien subject to mandatory pre-removal order detention under 8 U.S.C. § 1226(c). Additionally, alien respondents may not be able to afford an attorney regardless of their detention status. *See* Shinners Decl. Ex. 3, Garzon Dep. at 27:9-12 (noting that his firm takes into consideration a potential client's ability to pay when deciding whether to take a case). Some nonprofit organizations, such as the Community Legal Services in East Palo Alto, have geographic restrictions, requiring that a potential client's family live in a particular locale or that the potential client have resided in that locale before her or his detention. *See* Shinners Decl. Ex. 2, Shugall Dep. at 28:16-20, 29:5-9. Finally, some organizations have income guidelines and

mission statements that further limit the cases they can accept.  *See* Shinners Decl. Ex. 2, Shugall Dep. at 28:16-20.

4.   The Four Detention Facilities, Oversight, and Communications Options.

ICE Enforcement and Removal Operations ("ERO") contracts with various entities to provide space, resources, and services for the housing of ICE detainees.  *See e.g.*, Shinners Decl. Ex. 4, Deposition of Roberta Halls ("Halls Dep.") at pp. 11:1-3, 21:3-5, 25:6-13.  The housing of ICE detainees at the four detention facilities at issue is governed by such contracts, and each contract requires compliance with a version of ICE's detention standards.[2]  Each facility is thus required to submit to various compliance inspections by ICE or its contractors, as well as biweekly visits from ICE officers who speak with detainees and review conditions in the facility, including telephone operability.  Shinners Decl. Ex. 1, Vaughn Dep. at pp. 22:24-23:5; 30:21-32:12; 32:18-33:5; 36:4-37:14; 37:22-38:9; 39:14-40:7 (describing various inspection and monitoring processes for ICE detention facilities in the San Francisco Area of Responsibility); *see also* Shinners Decl. Ex. 5, Deposition of Tonya Andrews ("Andrews Dep.") at pp. 36:19-38:5, 40:7-41:1 (describing certain inspections and audits of Mesa Verde).  Through these inspections, compliance issues are identified and corrected in various ways.  *See generally* Shinners Decl. Ex. 1, Vaughn Dep. at pp. 22:24-23:5; 30:21-32:12; 32:18-33:5; 36:4-37:14; 37:22-38:9; 39:14-40:7.  For example, ICE detainees were moved from a previous detention facility, the Sacramento County Jail, after inspections identified deficiencies in areas such as telephone access.  Shinners Decl. Ex. 1, Vaughn Dep. at pp. 55:5-22; 204:9-18.

Detainees at all four facilities have access to housing unit telephones as well as telephones that afford no-cost calling and higher degrees of privacy, both inside and outside the facility.  As noted by the Plaintiffs, Detainees in all four facilities have access to the "Free Call

---

[2] Shinners Decl. Ex. 1, Vaughn Dep. at pp. 123:25-125:1 (contract requires Yuba to comply with 2000 INS Detention Standards); *Id.* at pp. 129:4-130:3 (current contract with Sacramento County requires RCCC to comply with 2000 Detention Standards); *Id.* at pp. 218:10-15 (WCDF inspected under the 2000 Detention Standards); Shinners Decl. Ex. 5, Andrews Dep. at pp. 70:13-71:1 (Mesa Verde facility required by contract to comply with 2011 ICE Performance-Based National Detention Standards).

Platform" or "Pro Bono Platform," from their housing unit phones and some private-room phones. *See generally* Shinners Decl. Ex. 6, Deposition of Kevin Landy ("Landy Dep.") at p. 159:14-22; *see also* Pl.'s Mot. at p. 10 n.41; Shinners Decl. Ex. 7, Deposition of Jose Astorga-Cervantes ("Astorga-Cervantes Dep.") pp. 17:16-20:12 (demonstrating Plaintiff's use of the platform to call four or five attorneys or legal services organizations). That platform allows calls free of charge to various free legal service providers, consulates, and U.S. government agencies. *See* Shinners Decl. Ex. 6, Landy Dep. at pp. 172:15-174:4.

Since March 20, 2015, the medium-security Mesa Verde Facility in Bakersfield, California ("Mesa Verde") has housed ICE detainees of various levels of security risk. Shinners Decl. Ex. 8, Deposition of Ronald Murray ("Murray Dep.") at pp. 37:2-38:1; 40:1-43:23, 56:19-57:12; Shinners Decl. Ex.11, Murray Dep. Ex. 308. As noted by Plaintiffs, there are several telephone options available to those ICE detainees: the 40 housing unit telephones, for which services are provided by Talton Communications, Inc. ("Talton"), and which provide access to collect and paid telephone calls as well as to ICE's Pro Bono Platform[3]; several private room telephones located within the Mesa Verde facility, from which detainees may make calls at no cost to them or to the call recipient[4]; and, as a back-up, telephones within ICE ERO's Bakersfield field office, located within one mile of Mesa Verde.[5]

Although telephone calls from the housing unit telephones at Mesa Verde are typically recorded, calls to the Pro Bono Platform and to attorneys registered with the facility and/or Talton are never recorded or monitored (although monitoring of any call is rare). Shinners Decl. Ex. 10, Bonnar Decl. ¶¶ 16, 18; Shinners Decl. Ex. 12, Deposition of Julius Talton ("Talton

---

[3] Shinners Decl. Ex. 10, Decl. of Erik Bonnar ("Bonnar Decl.") ¶¶ 6, 9, 1; Shinners Decl. Ex. 11, Deposition of Catherine Harvey ("Harvey Dep.") at p. 47:1-8.

[4] Shinners Decl. Ex. 10. Bonnar Decl. ¶¶ 20-29 (as of June 25, 2015, four private rooms available for private legal calls; additional office space available for such calls as needed); Shinners Decl. Ex. 5, Andrews Dep. at pp. 93:16-94:22; 95:17-96:18 (testifying that there are five VTC rooms plus an office in an intake area that are used for detainee telephone calls; at least one and often more are available during business hours).

[5] Shinners Decl. Ex. 10, Bonnar Decl. ¶ 28.

Dep.") at pp. 66:1-9, 69:18-70:8, 217:10-14; Shinners Decl. Ex. 11, Harvey Dep. at pp. 55:19-56:5; Shinners Decl. Ex.7, Andrews Dep. at 49:21-10. As for the private rooms, telephone calls between detainees and attorneys are scheduled with regularity. Shinners Decl. Ex. 11, Harvey Dep. at pp. 94:22-96:16, 97:5-16, 98:6-19, 100:19-102:22; Shinners Decl. Ex. 13, Andrews Dep. Ex. 293; Shinners Decl. Ex.14, Harvey Dep. Ex. 299; Shinners Decl. Ex. 15, Harvey Dep. Ex. 300; Shinners Decl. Ex. 16, Harvey Dep. Ex. 301. Further, calls to non-attorneys are also permitted from these phones to facilitate certain calls related to the detainee's immigration case, among other reasons. Shinners Decl. Ex. 17, Harvey Dep. Ex. 296; Shinners Decl. Ex. 11, Harvey Dep. at pp. 36:20-38:23; 66:12-69:18; Shinners Decl. Ex. 10, Bonnar Decl. ¶ 22.[6] The facility may also permit private telephone calls to friends for purposes related to the detainee's immigration case, but there is no evidence in the record that a detainee has directly made such a request. *See* Shinners Decl. Ex. 11, Harvey Dep. at p. 70:2-14. Detainees can receive incoming messages in two ways: the caller may call the facility and leave a message to be delivered (for attorneys or emergencies), or the caller may leave a voice mail message through Talton's telephone system. Shinners Decl. Ex. 10, Bonnar Decl. ¶¶ 31-32; Shinners Decl. Ex. 12, Talton Dep. at 80:2-20. Attorney and other visitation is also available, as well as legal mail and regular mail. Shinners Decl. Ex.8, Murray Dep. at pp. 82:14-25; Shinners Decl. Ex. 18, Murray Dep. Ex. 317; Shinners Decl. Ex. 19, Murray Dep. Ex. 318.

The West County Detention Facility in Richmond, California ("WCDF" or "CoCo") is an open, campus-style facility that houses ICE detainees. Shinners Decl. Ex. 20, Deposition of Brian Bonthron ("Bonthron Dep.") at p. 45:15-24; Shinners Decl. Ex. 21, Bonthron Dep. Ex. 234 at p. 2. Because WCDF has an open layout, it can only house detainees who fall into certain security classifications, and it does not house any ICE detainees who are classified as high risk. Shinners Decl. Ex. 20, Bonthron Dep. at pp. 45:15-46:14; 118:18-22. At the inception of this litigation, detainees were able to make telephone calls from WCDF's housing unit telephones, as well as from the ICE Field Office at 630 Sansome Street in San Francisco on days when

---

[6] Plaintiffs' citations to the contrary are misleading. *See* Pl.'s Mot. at 16.

detainees were transported to the Immigration Court, or upon request. Shinners Decl. Ex. 22, Bonthron Dep. Ex. 230 at p. 4; Shinners Decl. Ex. 21, Bonthron Dep. Ex. 234 at pp. 14-15; Shinners Decl. Ex. 1, Vaughn Dep. at pp. 168:8-19; 174:1-18. Since that time, WCDF has made two additional phone options available to ICE detainees: (1) private rooms located within the housing units, *see* Shinners Decl. Ex. 20, Bonthron Dep. at p. 38:12-20; Shinners Decl. Ex. 23, Bonthron Dep. Ex. 228 at pp. 1-2; and (2) private rooms located outside of the housing unit, in the VTC area that is monitored by ICE agents, *see* Shinners Decl. Ex. 20, Bonthron Dep. at pp. 64:9-15, 191:8-20. ICE Detainees are permitted to make calls to case-related contacts from the private rooms in the housing unit at any time upon request. Shinners Decl. Ex. 23, Bonthron Dep. Ex. 228 at pp. 1-2; Shinners Decl. Ex. 20, Bonthron Dep. at p. 38:15-28. Contrary to Plaintiffs' assertions, *see* Pls.' Mot. at p. 15, detainees or their attorneys have been able to schedule calls from these rooms. Shinners Decl. Ex. 24, Deposition of Audley Barrington Lyon, Jr. ("Lyon Dep.") at p. 66:14-24 (describing a call scheduled with an ACLU attorney, even though it was during count). And ICE detainees have been permitted to make calls to friends and family from the VTC rooms as well as the private rooms. Shinners Decl. Ex. 25, Deposition of V. V. ("V.V. Dep.") at pp. 94:25-95:21; Shinners Decl. Ex. 37, Contra Costa County VTC Room Call Logs (indicating calls to attorneys as well as friends and family). Further, ICE detainees housed at WCDF may receive incoming messages in two ways: attorneys may send email messages through a dedicated email address for such messages, which facility staff deliver to the detainees, and anyone may send email messages through a service known as SmartMail. Shinners Decl. Ex. 23, Bonthron Dep. Ex. 228 at pp. 4-5; Shinners Decl. Ex. 20, Bonthron Dep. at pp. 207:8-208:10; Shinners Decl. Ex. 26, Deposition of Patty Grant ("Grant Dep.") at pp. 88:15-89:9. As with all the facilities, attorney and other visitation is also available, Shinners Decl. Ex. 22, Bonthron Dep. Ex. 230 at pp. 20-26, as well as legal mail and regular mail, Shinners Decl. Ex. 22, Bonthron Dep. Ex. 230 at pp. 27-35; Shinners Decl. Ex. 20, Bonthron Dep. at p. 240:13-24.

The Yuba County Jail in Marysville, California ("Yuba") also houses ICE detainees. As Plaintiffs acknowledge, ICE detainees have access to multiple different calling options within the

facility. There are telephones within the housing units that detainees can use to make calls with calling cards, or make free calls to consulates or other numbers that are included in the free call platform. Shinners Decl. Ex. 27, Deposition of Damon Gil ("Gil Dep.") at p. 21:13-21. Although the facility has the capability to monitor calls made from the housing unit phones, the calls are not routinely monitored. Shinners Decl. Ex. 27, Gil Dep. at p. 67:15-19. Detainees are also regularly permitted to use a phone in the booking area where they can make free calls. Shinners Decl. Ex. 27, Gil Dep. at pp. 21:22-23, 61:12-18. Detainees can put in a request at any time to use the phone in the booking area, even if the call is not a legal call or a call to an attorney. Shinners Decl. Ex. 27, Gil Dep. at p. 74:3-7.

In the last two years, Yuba also added a phone room that contains two phones detainees can use to make free calls. Shinners Decl. Ex. 27, Gil Dep. at p. 24:19-24. Detainees can use the phones in the phone room to call anywhere in the United States, and the phones are available every day typically between 8 in the morning and 4 in the afternoon. Shinners Decl. Ex. 27, Gil Dep. at p. 25:8-21. The phone room is sometimes made available at other times when necessary, for instance earlier in the day if a detainee needs to contact someone on the east coast. Shinners Decl. Ex. 27, Gil Dep. at p. 25:19-23. The calls from the phone room are not monitored. Shinners Decl. Ex. 27, Gil Dep. at p. 27:21-24. There is a time limit on calls to ensure that everyone who requests to use the phone room can access it, however, if an attorney calls in to arrange a call with a detainee, the facility will allow the call to go beyond the time limit if necessary. Shinners Decl. Ex. 27, Gil Dep. at p. 27:7-20. If an attorney needs to arrange for a lengthy call with the detainee, or wants to arrange for a call at a time when the phone room is occupied, the detainee can alternatively use the phone in the booking area to make a free call. Shinners Decl. Ex. 27, Gil Dep. at p. 61:22-25.

Detainees at Yuba can receive incoming messages from attorneys. Shinners Decl. Ex. 27, Gil Dep. at p. 68:18-20. Attorneys can call the facility, and facility staff will take a message and deliver it to the detainee within hours. Shinners Decl. Ex. 27, Gil Dep. at pp. 68:22-69:17. In addition, an attorney can email or fax the facility a message to be delivered to a particular detainee. Shinners Decl. Ex. 27, Gil Dep. at pp. 69:18-24, 70:4-7. Attorneys, and others, can

visit detainees at the facility, and detainees can communicate through legal and regular mail. Shinners Decl. Ex. 28, Yuba County Jail Manual Order #E-1101; Shinners Decl. Ex. 29, Yuba County Jail Manual Order #E-801; Shinners Decl. Ex. 30, Yuba County Jail Manual Order #E-601.

The Rio Cosumnes Correctional Center in Elk Grove, California ("RCCC") houses only male detainees. Shinners Decl. Ex. 31, Deposition of Michael Butler ("Butler Dep.") at p. 41:2. It is located within 20 miles of the ICE ERO Sacramento Field Office. Shinners Decl. Ex. 1, Vaughn Dep. at p. 67:19-21. ICE detainees are housed in dormitory-style housing units that contain phones the detainees can access at any time. Shinners Decl. Ex. 31, Butler Dep. at p. 32:8-14. Detainees can use these phones to access the Talton Free Call Platform. Shinners Decl. Ex. 31, Butler Dep. at pp. 78:21-79:19. Detainees can also arrange to make phone calls from a private phone in the facility's law library. Shinners Decl. Ex. 31, Butler Dep. at pp. 37:16-38:1, 67:23-68:7. There is no time limit on calls made from the law library and detainees can talk for as long as is necessary. Shinners Decl. Ex. 31, Butler Dep. at p. 81:18-20. Contrary to Plaintiffs' claim, *see* Pls.' Mot. at p. 13, RCCC does provide detainees with a private calling option by allowing them to use the phone in the law library. Shinners Decl. Ex. 31, Butler Dep. at p. 85:21-23 (describing the law library as a place where facility staff "could take an inmate securely to make an absolutely private phone call"). In addition, detainees can always request to be transported to the ICE Field Office to make telephone calls. Shinners Decl. Ex. 31, Butler Dep. at p. 87:13-22; Shinners Decl. Ex. 1, Vaughn Dep. at pp. 168:8-19; 174:1-15. Attorneys can also visit detainees at the RCCC facility. Shinners Decl. Ex. 31, Butler Dep. at p. 91:18-23. And detainees can communicate through legal mail and receive messages through email. Shinners Decl. Ex. 31, Butler Dep. at pp. 91:24-92:23.

Detainees at any of the four facilities who are having difficulties making telephone calls may also request and receive private telephone calls from ICE, at the ICE ERO Field Offices in Bakersfield, Sacramento, and San Francisco, or within the facility. Shinners Decl. Ex. 1, Vaughn Dep. at pp. 167:16-168:15; 174:1-4; 177:12-16 (describing various circumstances under which ICE would facilitate such a call); Shinners Decl. Ex. 10, Bonnar Decl. ¶ 28; Decl. of K.M.

ISO Pls.' Mot. (ECF No. 120-10) ¶ 11 (ICE agent escorted detainee having difficulty using housing unit telephone to private room to make telephone call). Further, attorneys from various non-profit legal service providers visit the four facilities regularly. Shinners Decl. Ex. 2, Shugall Dep. at pp. 89:22-91:9; *cf.* Decl. of B.M. ISO Pls.' Mot. (ECF No. 120-16), ¶¶ 10, 20 (referencing attorneys who come to visit WCDF). Detainees have also been able to meet with their pro bono attorneys via videoteleconference, and ICE will also transport detainees to the Immigration Court/ICE Field Office at 630 Sansome Street in San Francisco to meet with pro bono attorneys. Shinners Decl. Ex. 2, Shugall Dep. at pp. 120:13; Decl. of H.S. ISO Pls.' Mot. (ECF No. 120-13), ¶¶ 13, 17.

### 5. Telephone Rates and Charges

As Plaintiffs suggest (*see* Pls.' Mot. at p. 6, n.22 & p. 36 & n.125), the current cost for housing unit telephone calls at Mesa Verde, WCDF, Yuba, and RCCC, will soon be largely irrelevant to their request for prospective injunctive relief, because the Federal Communications Commission ("FCC") has undertaken regulation of inmate and detainee calling. In 2013, the FCC ordered caps on rates for interstate debit, prepaid, and collect calls. *See* FCC 13-113: *Report and Order and Further Notice of Proposed Rulemaking*, (Sept. 26, 2013), at ¶ 5, *available at* https://apps.fcc.gov/edocs_public/attachmatch/FCC-13-113A1.pdf. In November 2015, the FCC issued a *Second Report and Order and Third Further Notice of Proposed Rulemaking*¸ extending rate caps to intrastate calls. *See* FCC 15-136: *Second Report and Order and Third Further Notice of Proposed Rulemaking*, (Nov. 5, 2015), at ¶ 9, *available at* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-136A1.pdf. In addition to imposing caps on both interstate and intrastate calling rates, the 2015 FCC order will eliminate connection fees and flat-rate calling. *Id.* ¶¶ 23, 101, 105. According to Plaintiffs' expert Don J. Wood, these FCC orders, once implemented, "will help ensure reasonable rates for [detainee telephone services]." Pls.' Mot., Wood Report (ECF No. 120-24), ¶ 35.

### 6. Security Issues in ICE Detention

The ICE detainee population consists of detainees of various security classifications based on flight risk, need for protective custody, or criminal history. Shinners Decl. Ex. 1,

Vaughn Dep. at pp. 198:11-199:23; Shinners Decl. Ex. 32, Vaughn Dep. Ex. 58 (demonstrating that, from December 10, 2012 through August 31, 2014, over half the ICE detainee population in WCDF, RCCC, Yuba, and the Sacramento County Jail received a medium-high or high security classification, based on the "RCA" system, which includes factors such as flight risk, protective custody factors such as age, and the seriousness or violent nature of criminal convictions). And generally, those who run a detention facility must be concerned with institutional order and the safety and security of detainees and facility staff. Shinners Decl. Ex. 1, Vaughn Dep. at p. 120:14-15 ("The facility has to ensure the security and safety of their facility").

Controls on telephone usage are typical and necessary in a detention environment, for various reasons. As Plaintiffs' own expert, Michael Berg, testified, the ability to "control" phone usage is important to a jail administrator. Shinners Decl. Ex. 33, Deposition of Michael Berg ("Berg Dep.") at pp. 46:23-47:18; 50:14-20; 122:11-17. According to Mr. Berg, telephones are well-suited to allow or facilitate rule violations and criminal activity, even among the ICE detainee population. *Id.* at pp. 121:24-122:7, 122:11-17, 122:23-123:2. For example, being able to verify who the detainee is calling from the private phone rooms or requiring affirmative receipt of the call from the housing unit phones, protects the community, victims, and others from unwanted and harassing telephone calls. Shinners Decl. Ex. 33, Berg Dep. at 48:7-15, 48:20-50:13; Shinners Decl. Ex. 34, Rule 26 Report from Michael J. Hackett ("Hackett Report") at ¶¶ 8, 14; Shinners Decl. Ex. 1, Vaughn Dep. at 177:24-178:12. Routine prohibitions on three-way calling supplement security measures such as the requirement of affirmative receipt and call-blocking, by preventing circumvention of these controls in order to call criminal associates, crime victims, or others. Shinners Decl. Ex. 34, Hackett Report ¶ 11.[7] Monitoring and/or recording of telephone calls—although not permitted for legal calls—also provides important investigative and control tools for law enforcement and jail/detention administrators. Hackett

---

[7] Notably, three-way calling from the housing unit phones at Mesa Verde in which the call recipient is a registered or apparent attorneys is never blocked (*see* Shinners Decl. Ex. 12, Talton Dep. at 65:12-67:7), and three-way calling is not prohibited from the private room or law library phones at Mesa Verde, WCDF or RCCC.

Report ¶¶ 3-4, 15.  Limiting call duration similarly promotes safety and security by reducing the possibility of fights for telephone access, and promotes equitable access to the phones.  Shinners Decl. Ex. 34, Hackett Report ¶ 12; Shinners Decl. Ex. 1, Vaughn Dep. at pp. 175:21-176:13; 177:18-23.  Likewise, time limits on housing unit dayroom (and thus telephone) access may help ensure that violent or unruly individuals are segregated, or to segregate individuals from other detainees who may harm them.  *See generally* Shinners Decl. Ex. 1, Vaughn Dep. at p. 201:2-22 (further noting that telephone calls are made available upon request); Shinners Decl. Ex. 35, Deposition of John Trinidad ("Trinidad Dep.") at p. 66:6-8; Shinners Decl. Ex. 27, Gil Dep. at pp. 76:20-78:25.  Further, having phones located in banks allows facility staff to more easily visually monitor the use of housing unit phones.  *See* Shinners Decl. Ex. 8, Murray Dep. at p. 76:5-24.

Payment limitations are also justified by security concerns and institutional limitations.  Cash cannot be used to make phone calls within detention facilities, as currency is well considered to be unsafe in a detention environment.  *See* Shinners Decl. Ex. 34, Hackett Report ¶ 9.  Even calling cards are the subject of debate, as prepaid cards may be used as currency and thus form the basis for "extortion, theft, and other forms of victimization."  *Id.* ¶ 18.  Further, institutional limitations may dictate the payment options available.  In the case of WCDF, it is currently unable to offer a calling card option, because such options must be accompanied by some sort of "PIN" number, or detainee identification system, that would help prevent misuse, abuse, or victimization as a result of the calling cards.  Shinners Decl. Ex. 26, Grant Dep. at pp. 56:23-58:23; *see also generally* Shinners Decl. Ex. 33, Berg Dep. at pp. 82:20-84:15 (discussing PIN numbers and potential for abuse with respect to using calling accounts as cash).  And WCDF's "jail management system" does not have the capability to assign a PIN to all inmates/detainees at this time, although it is currently exploring obtaining a new jail management system.  *See* Shinners Decl. Ex. 26, Grant Dep. at pp. 56:23-58:23, 96:20-97:2.

**B.    The Named Plaintiffs.**

The three named Plaintiffs in this action were detained in different detention facilities at different times, but all are represented by lawyers in their immigration proceedings, and, while

detained, all were able to communicate with their lawyers through a variety of means.  All three have been released from detention, and one (Nancy Neria-Garcia) has been ████████████ ████████ .

Plaintiff Jose Astorga-Cervantes was detained at RCCC for ninety days beginning on or about November 20, 2013.  Shinners Decl. Ex. 7, Astorga-Cervantes Dep. at pp. 31:18-20, 33:16-17   He was able to make telephone calls to attorneys using the Pro Bono Platform on the housing unit phones at RCCC shortly after his arrival there.  Shinners Decl. Ex. 7, Astorga-Cervantes Dep. at pp. 17:5-18:15.  Further, he obtained a lawyer for his immigration case by December 18, 2013.  Shinners Decl. Ex. 7, Astorga-Cervantes Dep. at p. 40:10-18.   Mr. Astorga-Cervantes was granted release on bond by the Immigration Judge on January 23, 2014; he paid bond to secure his release on February 20, 2014. Shinners Decl. Ex. 7, Astorga-Cervantes Dep. at pp. 60:17-61:10.

Plaintiff Nancy Neria-Garcia was detained at Yuba from June 26, 2014, until March 26, 2015; at Mesa Verde from March 26, 2015, to June 3, 2015; and at WCDF from June 4, 2015, until the time of her release from ICE detention on October 22, 2015.  *See* Decl. of Nancy Neria-Garcia ISO Pls.' Mot. (ECF No. 120-7) ¶¶ 7-10; Shinners Decl. Ex. 36, Deposition of Nancy Neria Garcia ("Neria-Garcia Dep.") at p. 18:11-22.  Ms. Neria-Garcia understand that she was taken into ICE custody because she had a prior removal order and had illegally re-entered the country.  Shinners Decl. Ex. 36, Neria-Garcia Dep. at 18:25-20:21.  Ms. Neria-Garcia officially retained immigration counsel for her immigration proceedings within two weeks of being taken into ICE Custody.[8]  During her stay at Yuba, Ms. Neria-Garcia spoke with her attorney from the private phone room numerous times; she also corresponded with him; spoke to him from the housing unit phones; and visited with him in person both at the Immigration Court and/or ICE offices at 630 Sansome Street as well as at the Yuba facility.  *See* Shinners Decl. Ex. 36, Neria-

---

[8] *See* Shinners Decl. Ex.36, Neria-Garcia Dep. at pp. 20:12-14, 27:1-14, 28:8-12, 161:6-25 (demonstrating that Plaintiff Neria-Garcia was arrested and taken into ICE custody on June 26, 2014; retained immigration counsel no later than interview on July 7, 2014; and spoke with said counsel two or three times prior to that interview); *see also* Pls.' Mot., Neria-Garcia Decl. (ECF No. 120-7) ¶ 6.

Garcia Dep. at pp. 80:22-81:20, 84:13-85:22, 86:2-14, 92:18-21, 93:9-94:9, 96:10-98:3, 100:21-24, 115:8-21, 116:5-15, 116:23-117:3, 133:16-25, 162:6-164:4.  While she was at Mesa Verde, Ms. Neria-Garcia's immigration case was on appeal to the Board of Immigration Appeals, but she still spoke to her attorney from both the private phone rooms and the housing unit phones, as well as by mail.  *See* Shinners Decl. Ex. 36, Neria Garcia Dep. at pp. 125:6-11129:18-20 (had one or two calls with her immigration attorney from the Mesa Verde private rooms), 140:21-141:18 (called attorney 8 or 10 times from Mesa Verde housing unit telephones); 133:16-25 (communicated with attorney by mail several times).  While at WCDF, Ms. Neria-Garcia spoke with her attorney numerous times as well, and her attorney visited her between seven and ten times.  Shinners Decl. Ex. 36, Neria-Garcia Dep. at pp. 143:18-144:5, 144:24-145:20.  Ms. Neria-Garcia was ultimately granted ███████████████ and release from detention in October 2015.  Shinners Decl. Ex. 36, Neria-Garcia Dep. at pp.69:6-9.

Plaintiff Audley Barrington Lyon, Jr., was detained at WCDF from October 22, 2013 to April 23, 2015.  Shinners Decl. Ex. 24, Lyon Dep. at p. 11:6-8; Suppl. Compl. (ECF No. 99) ¶ 11; Answer to Am. Compl. (ECF No. 100) ¶ 11.  Mr. Lyon was able to make telephone calls to attorneys using the Pro Bono Platform on the housing unit phones as early as December 3, 2013.  Shinners Decl. Ex. 24, Lyon Dep. at pp. 97:16-98:14.  Because of his criminal charges, Mr. Lyon was not initially eligible for release on bond.  Shinners Decl. Ex. 24, Lyon Dep. at pp. 94:13-95:1.  At his first hearing before the immigration judge, Lyon admitted that he also had difficulty obtaining counsel due to his criminal charges. Shinners Decl. Ex. 24, Lyon Dep. at p. 38:3-20.  Nevertheless, Mr. Lyon was able to retain counsel sometime around the beginning of 2014.  Shinners Decl. Ex. 24, Lyon Dep. at p. 28:18-23.  Mr. Lyon does not claim to have had any difficulty communicating with his counsel once retained, either to prepare his immigration case or to request release on bond.  Shinners Decl. Ex. 24, Lyon Dep. at 43:1-13, 94:2-5, 96:6-9.

## IV.    Argument.

### A.    Legal Standard.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  Once the moving party meets its initial burden of establishing the absence of any genuine dispute of material fact, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir. 2003).  On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  *Miller*, 454 F.3d at 988.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**B.      The Court Should Grant Judgment for Defendants on Plaintiffs' Due Process and Statutory Claims in the First and Second Claims for Relief Because Plaintiffs Have Not Shown that Defendants' Policies or Practices Interfered With Their Claimed Rights.**

> **1.      The Facts Do Not Demonstrate a Deprivation of Statutory Rights under the INA.**

This case is about whether ICE detainees are afforded adequate telephone access while in confinement, yet the INA nowhere dictates or addresses the precise level or quality of telephone access to be afforded an ICE detainee, in removal proceedings or otherwise.  Nor have Plaintiffs alleged that Defendants have directly denied them their privilege to be represented by counsel in removal proceedings, or their statutory right to present evidence in those proceedings. At most, they set forth telephone practices that they claim have an attenuated effect on statutory rights— but that is insufficient to sustain a claim for a statutory violation of the INA.  *See, e.g.*, *Hopper v. Melendez*, No. C05-5680, 2007 WL 4111366, at *7-8 (W.D. Wash. Nov. 16, 2007) (rejecting argument that statutory or due process right of ICE detainee to obtain counsel of their own choice at their own expense "translates into an unfettered or unlimited right to use the telephone for confidential calls to make an initial contact or cold call attorneys"); *cf. Franco-Gonzalez v.*

*Holder*, No. CV 10-02211, 2013 WL 3674492, at *9 (C.D. Cal. Apr. 23, 2013) (rejecting statutory claim seeking appointment of counsel for mentally disabled aliens in removal proceedings because, "[a]lthough Plaintiffs attempt to frame the requirement of fundamental fairness as 'statutory' in nature, they point to no specific statutory provisions that require the particular relief they seek."). Nor have Plaintiffs cited any decision holding that the telephone access accorded in detention facilities is a direct component of the statutory rights they assert.[9] To the contrary, the decisions cited by Plaintiffs demonstrate that the proper place to address and prevent statutory deprivations is in the immigration court itself, and that there are sufficient safeguards inherent in the immigration court hearing and the appellate review process to protect these statutory rights. *See, e.g.*, *Dent v. Holder*, 627 F.3d 365, 374 (9th Cir. 2010) (noting the Immigration Judge's "critical" role to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts"); *Biwot*, 403 F.3d at 1098-1099 (holding that immigration

---

[9] Plaintiffs argue that the Court should interpret these statutory provisions with reference to the Sixth Amendment rights of criminal defendants. *See* Pl.'s Mot. at pp. 25-26. This comparison is inapposite, as Plaintiffs have shown no direct relationship between the right to *appointed* counsel or the corollary right to self-representation under the Sixth Amendment to the meaning of the INA's statutory privilege to be represented by counsel in immigration proceedings at no expense to the government, nor have they provided any reason why the logic guiding Sixth Amendment decisions is applicable to the facts at issue in this case. Indeed, Sixth Amendment rights are generally not instructive, because deportation and removal "proceedings … are civil, not criminal, and we assume that they are nonpunitive in purpose and effect." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As the Ninth Circuit has explained:

> A deportation hearing is a proceeding that is civil, not criminal, in nature. *Trias-Hernandez v. I&NS*, 528 F.2d 366, 368 (9th Cir. 1975). *See Woodby v. I&NS*, 385 U.S. 276 (1966); *Harisiades v. Shaughnessey*, 342 U.S. 580 (1952); *Ah Chiu Pang v. I&NS*, 368 F.2d 637 (3rd Cir. 1966). Constitutional due process requirements under the Fifth Amendment are satisfied by a full and fair hearing. *Cf. Antolos v. I&NS,402 F.2d 463* (9th Cir. 1968). The Sixth Amendment's guarantee of the right to counsel is not applicable to deportation proceedings. *Martin-Mendoza v. I & NS*, 499 F.2d 918 (9th Cir. 1974); *Murgia-Melendrez v. I&NS*, 407 F.2d 207 (9th Cir. 1969).

*Ramirez v. Immigration & Naturalization Serv.*, 550 F.2d 560, 563 (9th Cir. 1977); *accord Solano v. Godines*, 120 F.3d 957, 960 (9th Cir. 1997). In any event, the Sixth Amendment rights to present a defense and to access counsel while in detention are not so expansive as Plaintiffs would ascribe.

court should have granted continuance to allow additional time to retain counsel; "[immigration judges] must provide aliens with reasonable time to locate counsel and permit counsel to prepare for the hearing")[10]; *Montes-Lopez v. Holder*, 694 F.3d 1085, 1088 (9th Cir. 2012) (noting that, under 8 C.F.R. § 1240.10(a)(1)(2), the immigration judge "must '[a]dvise the respondent [in a removal proceeding] of his or her right to representation' and of 'the availability of free legal services.'"); *Rendon v. Holder*, 603 F.3d 1104, 1110-11 (9th Cir. 2010) (holding that continuance should have been granted in order to allow time to obtain additional evidence).[11] For these reasons, Plaintiffs cannot state any statutory violation based on their allegations that the telephone access is inadequate.

Moreover, Defendants' provision of telephone access does not interfere with ICE detainees' statutory rights under the INA to retain counsel and to present evidence at their

---

[10] Although Plaintiffs argue that continuances do not provide sufficient safeguards because an alien's detention may end up being longer as a result of such continuances (*see* Pls.' Mot. at p. 30), the statute does not require that counsel be obtained at any particular time. Further, Plaintiffs have not supported this statement by evidence. They introduce evidence that the average length of class members' detention is 36 days, with the majority of class members having detention stays of less than three weeks—thereby undercutting their argument that class members' detention is "prolonged." *See* Pl.'s Mot. at p. 5 & n.15. Although Plaintiffs appear to suggest that shorter stays may be a result of "rapid deportation" (*see id.*; *see also id.* at p. 45 n.161), Plaintiffs have introduced no evidence that the individuals with shorter detention stays were removed rapidly, as detainees could have been released on bond or on conditional release after a short detention stay, or placed in post-order detention for purposes of effecting removal after removal proceedings were complete. *Cf., e.g.*, Decl. of Charles Ha ISO Pls.' Mot. (ECF No. 120-27) at Ex. 20 (citing public ICE statistics indicating that in fiscal year 2012, approximately 28%, or 171 out of 613, of the San Francisco Area ICE detainee population were detained with final orders of removal).

Nor have Plaintiffs introduced evidence that shows that longer detention stays were causally related to continuances, or that continuances were caused by telephone access rather than the complexity of the case, the difficulty in obtaining information generally (vs. from detention), or the detainee's ineligibility for bond.

[11] Notably, these decisions also recognize that the inherent nature of incarceration may require granting more time to seek a lawyer, without any determination or even comment that incarceration conditions themselves contributed to the denial of the right to counsel. *See Biwot*, 403 F.3d at 1099 (noting that petitioners' incarceration "increases the difficulty of contacting prospective attorneys").

removal hearings nor, as discussed below, any due process rights that Plaintiffs argue emanate from those statutory rights or removal proceedings generally.

**Statutory Right to Representation by Counsel.** Plaintiffs correctly state that an alien in removal proceedings has a statutory right to retain counsel (but not to appointed counsel).[12] Specifically, aliens in non-expedited removal proceedings before an immigration judge under Section 1229a "shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings." 8 U.S.C. § 1229a(b)(4)(A); *see also* 8 U.S.C. § 1362.[13]

---

[12] Plaintiffs correctly point out that certain mentally disabled aliens in the San Francisco area of responsibility are being afforded appointed counsel under the decision in *Franco-Gonzalez v. Holder*, 2013 WL 3674492 (C.D. Cal. April 23, 2013), which determined that appointment of counsel for these disabled aliens was required under Section 504 of the Rehabilitation Act (not under due process or the INA).

[13] The statutes cited in the Complaint relate to representation in removal proceedings before the immigration court and on appeal from those proceedings and do not extend, as Plaintiffs suggest, a right to be represented by counsel to *all* aliens in detention. To the extent Plaintiffs claim that class members also have rights by regulation to consult with an attorney during the credible or reasonable fear process or regarding expedited removal, these claims are not properly before the Court. *See* Pl.'s Mot. at p. 23:14-19. Plaintiffs did not claim violations of these regulations in the Complaint, never alleged rights relating to the credible or reasonable fear process, and never sought to amend their claims in this regard. *See generally* First Supplemental Complaint (ECF No. 99) ("Compl."), at pp. 25-26 ("First Claim for Relief."). Further, these regulations do not arise under the authority of either 8 U.S.C. § 1229a or § 1362. *See generally* 8 C.F.R. Part 208 (listing statutory authority for 8 C.F.R. §§ 208.30, 208.31).

Plaintiffs cannot now obtain judgment on this basis or use their claims of right to counsel during the credible or reasonable fear process (or facts related thereto) to defeat summary judgment for the Defendants, as it is generally inappropriate to consider such claims on summary judgment. *See, e.g.*, *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (holding that district court did not err in failing to consider on summary judgment claims that were never pleaded in the complaint) (citing *Insurance Co. of N. Am. v. Moore*, 783 F.2d 1326, 1328 (9th Cir.1986); *Gonzalez v. City of Fed. Way*, 299 F. App'x 708, 710 (9th Cir. 2008) (holding that district court properly refused to consider a claim raised for the first time in plaintiff's summary judgment motion, because the complaint did not provide fair notice of this claim (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000)); *Acker v. McCormick*, 110 F.3d 67 (9th Cir. 1997) (unpub.) ("We do not consider Acker's retaliation claim because it was raised for the first time in her response to the defendants' motion for summary judgment, but never raised as a cause of action.") (citing *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 n.5 (9th Cir. 1987)); *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (affirming district

The undisputed facts demonstrate that the right to retain and be represented by counsel has not been infringed upon. Aliens who are represented by counsel during their immigration hearings are not denied the statutory right to counsel. *Boone v. Ashcroft*, 113 F. App'x 749, 750 (9th Cir. 2004) (holding that alien was not denied the right to counsel of choice when he was represented). Each of the named Plaintiffs, as well as all but one of the class members who submitted declarations, were able to retain counsel, many admittedly very soon after being detained.[14]

Further, many class members admit that they were able to communicate frequently with their attorneys by telephone, including from the private phone rooms within the facilities. Indeed, Plaintiff Neria-Garcia completed at least ten calls to her attorney from the phone room at Yuba—including a telephone call to prepare her declaration in support of her immigration case. Shinners Decl. Ex. 36, Neria-Garcia Dep. at pp. 80:22-81:20, 84:13-85:22, 86:2-14, 92:18-21, 93:9-94:9, 96:10-98:3, 100:21-24, 162:6-164:4. Ms. Neria-Garcia also made several additional

court's refusal to consider claims raised for the first time in briefing on summary judgment; citing, *inter alia*, *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir.2006) and 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1183, at 23 n.9 (3d ed. 2004)); *Scott v. City of New York Dep't of Correction*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009) (declining to consider claims raised for the first time in opposition to motions for summary judgment, because complaint was never amended to include those claims)).

[14] *See* Shinners Decl. Ex. 36, Neria-Garcia Dep. at pp. 27:1-14, 28:8-12, 161:6-25 (demonstrating that Plaintiff Neria-Garcia retained immigration counsel no later than interview on July 7, 2014, and spoke with said counsel two or three times prior to that interview); Pls.' Mot., Decl. of Neria-Garcia (ECF No. 120-7) ¶ 6 (Plaintiff Neria-Garcia was arrested and taken into ICE custody on June 26, 2014); Shinners Decl. Ex. 25, V.V. Dep. at pp. 26:18-27:9, 33:9-34:2 (retained counsel for immigration case at first immigration court hearing, prior to entering ICE custody); Shinners Decl. Ex. 7, Astorga-Cervantes Dep. at pp. 31:18-20, 33:16-17, 40:10-18 (retained counsel within one month of being detained); . Decl. of B.M. ISO Pls.' Mot. (ECF No. 120-16) ¶ 12 (stating that retained attorney "shortly after" his arrival in the United States); Decl. of E.L. ISO Pls.' Mot. (ECF No. 120-15) ¶ 13 (indicating that E.L. already had an attorney after a week of being detained); Decl. of F.L. ISO Pls.' Mot. (ECF No. 120-14) ¶¶ 28, 35 (located two different attorneys while in ICE detention from 2014 to 2015, including through the Free Call Platform); Decl. of H.S. ISO Pls.' Mot. (ECF No. 120-13) ¶ 13; Decl. of I.P. ISO Pls.' Mot. (ECF No. 120-12) ¶ 28; Decl. of K.M. ISO Pls.' Mot. (ECF No. 120-10) ¶ 14 (indicating that K.M. had an attorney for immigration case); Decl. of O.A. ISO Pls.' Mot. (ECF No. 120-6) ¶¶ 13, 23 (indicating that O.A. had attorney for immigration case).

Defendants' MSJ and Opposition
13-cv-5878-EMC                    22

calls to her attorney from the private room phones at Mesa Verde and WCDF, as well as the housing unit telephones at Yuba, Mesa Verde, and WCDF, the private rooms at Mesa Verde, and the private rooms at WCDF. Shinners Decl. Ex. 36, Neria-Garcia Dep. at pp. 28:8-15 (spoke with attorney two or three times during first two weeks of detention); 121:10-12 (called attorney twice from S cell at Yuba), 129:18-20 (had one or two calls with her immigration attorney from the Mesa Verde private rooms), 140:21-141:18 (called attorney 8 or 10 times from Mesa Verde housing unit telephones); 144:24-145:20 (spoke with attorney 15 or more times from the WCDF private room phone). Class member V.V. talked to her attorneys numerous times from both WCDF and Mesa Verde. Shinners Decl. Ex. 25, V.V. Dep. at pp. 50:4-51:9, 51:17-52:13. The frequency of these calls alone belies the assertion that Plaintiffs and class members were unable to adequately communicate with counsel. *Cf. Johannes v. County of Los Angeles*, No. CV02-3197, 2011 WL 6149253, at *4, 12-13 (C.D. Cal. Apr. 8, 2011) (civil detainee could not succeed on claim for inadequate telephone access under First Amendment where he made 40-50 telephone calls over a two-year period).

Plaintiffs were also satisfied with alternate means of communication with their attorneys: Plaintiff Lyon claimed no difficulty communicating with his counsel, in part because his attorney would visit him at the WCDF detention facility. Shinners Decl. Ex. 24, Lyon Dep. at p. 94:2-8. Plaintiff Neria-Garcia also communicated with her counsel numerous times through the mail or in-person visitation at her detention facilities. *See, e.g.*, Shinners Decl. Ex. 36, Neria-Garcia Dep. at pp. 115:8-21, 116:5-15, 116:23-117:3, 133:16-25, 143:18-144:5.[15] As shown, there are a variety of available means for detainees to communicate with their attorneys, of which class members and their attorneys have demonstrably availed themselves: through visitation at the facility[16] or at ICE offices,[17] through written communication, and through communications with

---

[15] Those class members who claim to have had difficulty calling their attorneys generally do not address these other available communications options. *See, e.g.*, Decl. of B.M. ISO Pls.' Mot. (ECF No. 120-16) ¶¶ 13-14 (failing to address other communications options or why attorney could not accept collect calls or set up a pre-paid account to speak with his client).

[16] *E.g.*, Shinners Decl. Ex. 25, VV. Dep. at 41:25-43:6 (describing more than ten such meetings); Shinners Decl. Ex. 2, Shugall Dep. at 92:19-25 (describing two such meetings).

family members.[18]  All four facilities also allow messaging options for attorneys to contact their

detained clients.  *See supra* Section III.A.4.[19]

By contrast, a deprivation of alien respondents' statutory right to be represented in

removal proceedings has been found to occur only when the respondent was in fact denied the

opportunity to proceed with counsel in removal proceedings—which has not happened to any

Plaintiff or class member.[20]  *Montes-Lopez*, 694 F.3d at 1089-1090 (holding that respondent in

removal proceedings denied statutory right to counsel when IJ forced him to proceed *pro se*

despite counsel's unforeseen unavailability); *Castro-O'Ryan v. INS*, 847 F.2d 1307, 1312-1314

(9th Cir. 1987) (holding that respondent in removal proceedings was denied statutory right to

counsel because the immigration judge improperly found a knowing waiver of the statutory right

where respondent had requested the opportunity to have counsel of his choice).  In fact, there is

ample evidence that class members were able to obtain continuances when needed.[21]

**Statutory Right to Present Evidence.**  The INA also requires, in relevant part, that an

alien in Section 1229a removal proceedings "shall have a reasonable opportunity ... to present

---

[17] *E.g.*, Decl. of H.S. ISO Pls.' Mot. (ECF No. 120-13) ¶ 13 (had videoconference with attorney from the Sacramento ICE Office).

[18] *E.g.*, Decl. of F.L. ISO Pls.' Mot. (ECF No. 120-14) ¶ 31 (able to communicate with attorney through fiancée).

[19] Although Plaintiffs claim that the messaging systems at the detention facilities are ineffective because messages are often delayed, they cite only three examples of the alleged delay, none of which related to Yuba or Mesa Verde.  Pls.' Mot. at 17, n. 80.  Further, only one such message purportedly related to a detainee's immigration case, which is the only proceeding relevant to the class claims.  And in that case, it is clear that the attorney's message to the detainee was delivered on the same day, but the detainee did not call the attorney back until after the filing deadline that same day.  Supplemental Decl. of Marie Vincent ISO Pls.' Mot. (ECF No. 120-17), ¶ 11.  The attorney declarant does not explain why she failed to seek information supporting a request for release on bond until the day of the filing deadline.

[20] The only class member declarant to state that he was unable to find any attorney testifies simply that he is unable to afford one.  Decl. of J.H. ISO Pls.' Mot. (ECF NO. 120-11), ¶ 4.  Although J.H. also states he had difficulty reaching certain private attorneys from the RCCC phones, this is not his professed reason for the fact that he is unrepresented in his immigration proceedings.

[21] *E.g.*, Decl. of H.S. ISO Pls.' Mot. (ECF No. 120-13), ¶ 7.

evidence on the alien's own behalf." 8 U.S.C. § 1229a(b)(4)(B). This language, by its own terms, does not relate to the ability to gather evidence while in the outside world, nor in detention, but instead to the procedures to be applied in removal proceedings. Although Plaintiffs argue that class members' practical ability to present evidence is also implicated by this statutory right, the case law they cite does not extend this right to reach the regulation of conditions of ICE detention. In other words, it does not create a general right to accommodations to that may render it easier to gather evidence. Instead, the authority demonstrates at most that immigration judges may have some obligation to assist the alien in obtaining the government's evidence that supports or negates his case, *see Ibarra-Florez v. Gonzales,* 439 F.3d 614, 621 (9th Cir. 2006), that government officials must provide records as mandated by an express statutory provision, *see Dent*, 627 F.3d at 374, and that a respondent must be provided a "reasonable opportunity to examine the evidence against [him]," *Singh v. Holder*, 405 F. App'x 193, at *1 (9th Cir. 2010).

In any event, the declarations and testimony submitted by Plaintiffs do not demonstrate any systematic interference with the ability to gather evidence to present in removal proceedings, even if such an allegation could state a statutory or due process claim. As an initial matter, most of the class members have lawyers who were, or should have been, able to gather evidence on that class member's behalf. *See* . Decl. of B.M. ISO Pls.' Mot. (ECF No. 120-16) ¶¶ 18-25; Shinners Decl. Ex. 36, Neria-Garcia Dep. at pp. 50:6-12, 53:8-11, 53:20-54:2, 67:24-68:13 (gave names of some witnesses to attorney to call); Decl. of M.G. ISO Pls.' Mot. (ECF No. 120-8) ¶ 29 (stating that his lawyer is handling gathering evidence from governmental entities). The fact that a detainee has a lawyer mitigates, if not negates, the detainee's need for resources to defend himself or pursue claims for relief on his own. If any such lawyers provided ineffective assistance, that is the lawyer's failing, but not a defect in telephone access. For *pro se* detainees, there is an insufficient causal showing between the telephone "restrictions" and the inability to present evidence—particularly given that *pro se* detainees often did not ask ICE or the facilities for a direct phone call to call government agencies or avail themselves of other communications methods. *See* Shinners Decl. Ex. 24, Lyon Dep. at 88:1-92:2.

## 2. For the Same Reasons, the Facts Do Not Demonstrate a Denial of a Full and Fair Hearing.

To the extent that immigration court respondents also have rights to representation of counsel and to present evidence that arise separately from the Fifth Amendment's due process clause and the requirement of a "full and fair" immigration hearing as recognized by the Ninth Circuit, *e.g.*, *Colindres–Aguilar v. I.N.S.,* 819 F.2d 259, 260 n.1 (9th Cir. 1987),  the same analysis mandates that the Court grant summary judgment for Defendants on those claims.  That is, the rights forming the basis for these claims are the same as for the statutory claims.  *See, e.g.*, *Colmenar v. I.N.S.*, 210 F.3d 967, 971 (9th Cir. 2000) (citing 8 U.S.C. § 1229a(b)(4) in stating that an alien facing deportation is entitled, as a matter of due process, to a "full and fair hearing and a reasonable opportunity to present evidence on his behalf").  As Plaintiffs have not demonstrated interference with those rights, the Court should grant summary judgment to Defendants on Plaintiffs' First and Second Claims for Relief.

## C. The Court Should Grant Summary Judgment for Defendants on All Claims for Relief Because Plaintiffs Have Not Shown an Actual Injury.

### 1. The Court Should Import the "Actual Injury" Requirement to Plaintiffs' Claims.

Although Plaintiffs are generally claiming that the telephone access conditions in ICE detention in the four facilities are unconstitutional, the Court must examine the nature of the underlying right that is allegedly being infringed.  Here, Plaintiffs are not asserting a constitutional right to telephone access—as no such right exists, *per se*—but a right to representation by counsel and to present evidence in immigration court proceedings or for applications for immigration benefits.  In light of the nature of Plaintiffs' claims, the Court should employ the "actual injury" requirement that has been applied to prisoners' and others' claims of access to the courts.  *See Lewis v. Casey*, 518 U.S. 343 (1996).

In *Casey*, the plaintiffs asserted a claim on behalf of a statewide class of prison inmates, claiming that they were denied access to the courts based on a number of violations, including lack of training of library staff, lack of updating of legal materials in the law library, lack of adequate availability of photocopying services, lack of adequate access to library for "lockdown

prisoners," and lack of adequate assistance for illiterate or non-English-speaking inmates.  *Id.* at

346-47.  The Supreme Court reversed the lower courts' grant of a systemwide injunctive relief,

holding that a showing of "actual injury" was required in order to demonstrate a violation of the

right of access to the courts—that is, a showing that the "alleged shortcomings in the library or

legal assistance program hindered his efforts to pursue a legal claim."  *Id.* at 350-51.

Plaintiffs' claims are similar to those in *Casey*.  They are arguing that their access to the

telephones, and the technical capabilities or physical placement of those telephones, is

insufficient for them to pursue their consultations with attorneys and their claims for relief or

protection from removal.  As in *Casey*, Plaintiffs should also be required to show an actual

injury—that is, that they have actually been hindered in pursuing their claims for relief—in order

to demonstrate a violation of their rights.  The justification for importing the "actual injury"

requirement to ICE detainees' claims regarding their access to the immigration courts is the fact

that managing the detention environment is a complicated task; detention facilities and prisons

must be afforded flexibility in determining how to meet detainees' and prisoners' needs.  *See,*

*e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("There must be a mutual accommodation

between institutional needs and objectives and the provisions of the Constitution that are of

general application."; "maintaining institutional security and preserving internal order and

discipline are essential goals that may require limitation or retraction of the retained

constitutional rights of both convicted prisoners and pretrial detainees"); *Turner v. Safley*, 482

U.S. 78, 89 (1987) ("Subjecting the day-to-day judgments of prison officials to an inflexible

strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to

adopt innovative solutions to the intractable problems of prison administration.").[22]  Detention

---

[22] *See also Strandberg v. City of Helena,* 791 F.2d 744, 747 (9th Cir. 1986) (with respect to
telephone access, holding that detainees' first amendment right to communicate on the telephone
is subject to rational limitations in the face of a penal institution's legitimate security interests);
*Nelson v. City of Los Angeles*, No. CV 11-5407, 2015 WL 1931714, at *11 (C.D. Cal. Apr. 28,
2015) ("The right of access to resources [for a *pro se* defendant to prepare his defense] is not
unlimited, however, and must be balanced against the prison's security considerations and
resource constraints.").

facilities need the ability to experiment with different approaches to allow access to courts and counsel to determine whether those needs are adequately met or whether access to the courts is hindered. *Casey*, 518 U.S. at 352-53.

In light of the flexibility that must be afforded detention facilities in determining how to reasonably meet needs of detainees and prisoners while maintaining institutional security and order, courts must focus not solely on the conditions that are alleged to violate rights themselves, but on the *effect* of those conditions. Under the guidance of the Supreme Court, this Court should thus require a showing that the Plaintiffs and class members were actually hindered in pursuing their claims for relief from removal as a result of telephone access conditions.

2. <u>Plaintiffs and Class Members Have Not Suffered Any Actual Injury.</u>

There is no question that detention pending removal proceedings is legal. *Demore v. Kim*, 538 U.S. 510, 523 (2001). And detention, by its nature, will present some challenges with respect to attorney-client communication and case preparation that are not present for a non-detained client. The relevant question here, however, is whether the challenges cited by Plaintiffs in their Motion for Summary Adjudication have actually hindered Plaintiffs from pursuing their cases or requests for release on bond. "Actual injury means a specific instance in which an inmate was actually denied access to the courts." *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989). Here, the named Plaintiffs—whose claims are to be representative of the classes'—cannot show an actual injury because there are no facts demonstrating that they have been actually hindered by the telephone access in asserting claims for relief in their immigration proceedings.

As an initial matter, Plaintiffs certainly cannot prove a violation with respect to Mesa Verde, as Plaintiff Neria-Garcia—the only named Plaintiff who was detained at Mesa Verde—does not claim that telephone access at Mesa Verde had any effect on her immigration case. Shinners Decl. Ex. 36, Neria-Garcia Dep. at pp. 125:6-126:1.

Further, the named Plaintiffs had little to no difficulty in obtaining counsel or communicating with counsel from the other three facilities (*see supra* pp. 15-17), and have succeeded in obtaining release, and/or relief and/or protection from removal. Where a plaintiff is

able to "pursue legal remedies despite the alleged inadequacies," defendants are entitled to summary judgment. *Johannes v. County of Los Angeles*, No. CV02-3197, 2011 WL 6149253, at *11 (C.D. Cal. Apr. 8, 2011)  Plaintiff Neria-Garcia was able to use the Yuba and WCDF telephone and mail systems to communicate with her immigration lawyer, including to prepare her declaration in support of her ███████████████████. *See supra* pp. 16-17. Indeed, Plaintiffs Lyon and Neria-Garcia submitted applications for ████████████████ from removal while detained without difficulty (or at least without difficulties relating to detention conditions). *See* Shinners Decl. Ex. 24, Lyon Dep. at 42:14-22, 43:1-9, 43:14-44:9, 85:3-13, 85:16-86:9; Shinners Decl. Ex. 36, Neria-Garcia Dep. at pp. 39:19-22; *see also e.g.*, *Hopper v. John Doe Myers Recreational Coach*, 2006 WL 3337388, at *6-9 (W.D. Wash. Nov. 9, 2006) (holding that ICE detainee who was able to raise various claims in Immigration Court as well as file eight lawsuits, including habeas petitions, had not shown actual injury arising from telephone system that disallowed leaving messages and had allegedly high rates and other claimed technical issues). ████████████████████████████████ and subsequently released from detention, thereby negating a claim of undue interference with her access to counsel or to a fair hearing.  Finally, Plaintiff Astorga-Cervantes was successful in obtaining bond and was released from detention while his immigration proceedings were pending.  Shinners Decl. Ex. 7, Astorga-Cervantes Dep. at pp. 60:17-61:10.  Plaintiffs have presented no evidence that Astorga-Cervantes had any difficulties communicating with his counsel or obtaining evidence regarding his substantive immigration case while in detention.

Even if one of the named Plaintiffs could show actual injury, the class members' and attorney declarations submitted in support of Plaintiffs' Motion fail to demonstrate widespread actual injury that is attributable to the telephone access (as opposed to ineffective representation of counsel or other issues).  As shown above, the class members have generally been able to obtain continuances when needed and have not been thwarted in their attempts to seek relief from removal.

**D.    The Facts Do Not Demonstrate "Punitive" Conditions Relating to Telephone Access or Unconstitutionally Prolonged Detention.**

The facts also do not evidence a violation of substantive due process regarding class members' conditions of confinement—a claim that, yet again, was never expressly pleaded in the Complaint and should be rejected on this ground alone. *See* Pls.' Mot. at pp. 44-45; *supra* n. 13.

Assuming that Plaintiffs are correct, and that the proper test with respect to the conditions of detention for ICE detainees is that set forth in *Bell v. Wolfish,* 441 U.S. 520 (1979), for criminal pretrial detainees—that is, whether the conditions of confinement violate substantive due process depends on whether those conditions "amount to punishment," *id.* at 535—the telephone access conditions at issue in this case are not punitive as a matter of law.

Not all restrictions, of course, constitute punishment under this standard: "Loss of freedom of choice and privacy are inherent incidents of confinement in [a detention] facility." *Id.* at 537. "A restriction is punitive where it is intended to punish, or where it is 'excessive in relation to [its] non-punitive purpose.'" *Jones v. Blanas*, 393 F.3d 918, 933-34 (9th Cir. 2004). "[T]he Government need only show some rational nexus to security, order, or the apparently open-ended class of 'operational concerns' facing the jail administrator, and the restriction will be upheld." *Wolfish*, 441 U.S. at 535 n.16. The telephone access conditions at issue in each of the facilities readily meet this test. As Plaintiffs' own expert has indicated, the ability to "control" the use of telephones is a legitimate need of a jail administrator of any detainee population. Shinners Decl. Ex. 33, Berg Dep. at pp. 45:22-47:11, 50:14-51:12. Further, any restrictions on the housing unit phones are amply justified and are proportional to these security interests, particularly given the availability of other phones—both within the facility and without—from which class members can place legal telephone calls. *See* Shinners Decl. Ex. 34, Hackett Report at ¶¶ 23-29; *see generally supra* Section III.A.4, 6. And certain limitations at Yuba on the use of the private phones is necessary to ensure equitable access to those phones, which serves to protect the interests of all detainees, rather than to punish some detainees. Shinners Decl. Ex. 27, Gil Dep. at 27:6-20.

Plaintiffs do not engage in any analysis of whether the telephone access "restrictions" in the four different facilities are in fact excessive. Instead, they rely solely on the inapplicable

"presumption" set forth in *Jones v. Blanas*. That case addressed the status of "an individual confined awaiting adjudication under civil process" and determined that conditions of that individual's confinement are rebuttably presumed to be punitive if they are similar to or more restrictive than those faced by pretrial criminal detainees or more restrictive than those faced by individuals who have already been civilly committed. *See Jones*, 393 F.3d at 934 (cited in Pl.'s Mot. at p. 44). This presumption, however, cannot apply to immigration detainees such as the class members in this case. Plaintiffs do not even attempt to draw any parallel as to why someone who is awaiting potential civil commitment receives the same constitutional status as an alien charged with removability from the United States. It is without doubt that protections afforded to aliens pending removal proceedings are different from those afforded non-aliens. As noted by the Supreme Court in upholding mandatory detention of criminal aliens pending removal proceedings, the political branches have plenary power to control immigration, and "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521-22 (2003).

Similarly, Plaintiffs' arguments that the class members' detention violates substantive due process because it is "prolonged" fail. First, Plaintiffs' claims as pleaded in the Complaint relate to conditions of detention; they have never challenged the legality of that detention itself— nor can they, in this non-habeas proceeding. Indeed, as the Supreme Court explained in its most recent pronouncement on the Government's detention authority under 8 U.S.C. § 1226(c), "[d]etention during removal proceedings is a constitutionally permissible part of the process." *Id.* at 531. Plaintiffs are now essentially arguing that all class members' detention is "prolonged" to such a degree that it violates due process. Plaintiffs certainly cannot prove unconstitutionally prolonged detention across the class. Indeed, Plaintiffs themselves cite statistics demonstrating that the average detention length is the brief period of 36 days—far shorter than the six-month period described as prolonged by the Ninth Circuit Court of Appeals. *See* Pls.' Mot. at p. 5; *Rodriguez v. Robbins*, 804 F.3d 1060, 1069 (9th Cir. 2015).

Further, as an individualized inquiry for each alien would be necessary to determine whether continued detention is justified in each individual circumstance, Plaintiffs cannot assert

this claim on behalf of the class. While aliens are protected by the Due Process Clause of the Fifth Amendment, "the nature of that protection may vary depending upon status and circumstance." *Zadvydas*, 533 U.S. at 694. Accordingly, Plaintiffs' belated attempt to claim a classwide substantive due process violation based on "prolonged" detention must be rejected.

**E.     The Court Should Reject Plaintiffs' Proposed Procedural Due Process Analysis.**

         1.     It is Improper to Apply the *Mathews v. Eldridge* Procedural Due Process Analysis to Plaintiffs' Conditions of Confinement Claims.

First, Plaintiffs' attempt to assert a procedural due process claim (*see* Pl's Mot. at pp. 27-44) must be rejected, because this claim was not pleaded in the Complaint. *See supra* n. 13. Although Plaintiffs cited the Due Process Clause of the Fifth Amendment in their First and Second Claims to Relief, they claimed specific violations of the rights to counsel, the right to gather evidence, and correlating due process rights assuring fairness in immigration hearings— not a right to *additional* pre-deprivation procedures. *See generally* Suppl. Compl. at pp. 25-26, ¶¶ 100-09 (First and Second Claims to Relief).

The balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976) was designed to evaluate what procedures, if any, are necessary prior to the deprivation of a liberty or property interest. *See id.* at 333 (noting that the dispute in *Mathews* centered upon "what process is due prior to the initial termination of benefits, pending review"); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (discussing application of *Mathews* balancing test to assess adequacy of procedures employed in immigration proceedings); *Zinermon v. Burch*, 494 U.S. 113, 127 ("To determine what *procedural protections* the Constitution requires in a particular case, we weigh several factors .. . .") (emphasis added); *State of California ex rel. Lockyer v. FERC*, 329 F.3d 700, 709-10 (9th Cir. 2003). Yet Plaintiffs' claims do not seek to determine the constitutional adequacy of *procedures* in an immigration removal or bond hearing. Instead, they ask the Court to evaluate whether ICE's acts or omissions with respect to telephone access conditions in detention deprive Plaintiffs of certain procedural rights relating to their immigration proceedings. Defendants are not aware of any instance of the test's application to conditions of confinement as

they relate to access to the courts—which is the crux of Plaintiffs' claims. *See generally Lockyer*, 329 F.3d at 709 n.8 (describing the Ninth Circuit's applications of the *Mathews* test to evaluating whether administrative procedures are adequate). One of the cases cited by Plaintiffs (at p. 28) as supposedly supporting application of the *Mathews* test in fact undermines their argument. In *Orantes-Hernandez v. Meese*, 685 F. Supp. 1488 (C.D. Cal. 1988), the district court applied the *Mathews* test to evaluate whether the notice given of the right to apply for asylum and other immigration rights was constitutionally adequate. *Id.* at 1506-1508. It evaluated other claims regarding "access to counsel" separately under an "access to the courts" analysis. *Id.* at 1508-1509.[23]

Indeed, applying this balancing test would circumvent the case law assessing the rights of individuals in detention with deference afforded to detention facilities. In essence, Plaintiffs are attempting to use the *Mathews* test to create or expand substantive rights to access to the courts or counsel under the guise of a procedural due process claim. The Court should thus decline to apply a procedural due process analysis to Plaintiffs' claims.

### 2. Even if the *Mathews v. Eldridge* Test Applied, Plaintiffs Are Not Entitled to Summary Judgment on Their Procedural Due Process Claim.

In any event, application of the procedural due process analysis does not entitle Plaintiffs to summary judgment on their First and Second Claims to Relief for at least three reasons.

As an initial matter, Plaintiffs' belated attempt to apply this analysis to class claims regarding telephone access of all ICE detainees in all four facilities is inappropriate. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."

---

[23] Plaintiffs cite one other district court case in support of their argument that the *Mathews* test should apply here, but the plaintiffs in that case did not directly challenge the conditions of detention. *See* Pls.' Mot. at p. 20. In *Perez-Funez v. District Director, INS*, 619 F. Supp. 656 (C.D. Cal. 1985), the district court addressed whether procedures for alien's acceptance of voluntary departure in lieu of deportation proceedings provided adequate notice and process. Although the court proposed that "access to telephones prior to presentation of the voluntary departure form" would better safeguard plaintiffs' liberty interests, *id.* at 665, the Court was addressing the adequacy of particular voluntary departure procedures, not the adequacy generally of telephone access in detention.

*Mathews*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)); *Clark v. Whiting*, 607 F.2d 634, 643 (4th Cir. 1979) ("Due process is a flexible concept, the very nature of which negates any concept of inflexible procedures universally applicable to every imaginable situation."); *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1222 (10th Cir. 2006) ("The precise procedural protections of due process vary, depending upon the circumstances, because due process is a flexible concept unrestricted by any bright-line rules.").  In determining what process is due, the Court must take into account the particular facts and circumstances, as the need for procedural safeguards varies with the situation and "different interests can give rise to many differing procedural requirements." *Brittain v. Hansen*, 451 F.3d 982, 1000 (9th Cir. 2006); *see also, e.g., Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v. McElroy*, 367 U.S. 886, 895 (1961).  As Plaintiffs themselves acknowledge, governmental interests differ: individual security concerns for individual detainees mean that the governmental interests in restricting free time or certain telephone access, and their relative weight, will vary by detainee. Pls.' Mot. at p. 38:7-9.  The class members' interests will vary as well, as detainees may have different communications needs depending on the status of their case or whether they are represented by counsel.  Shinners Decl. Ex. 34, Hackett Report ¶¶ 6, 20-23 (distinguishing among communications needs of different cohorts of detainees).  Finally, Plaintiffs fail to adequately consider the differences in administrative burdens facing each facility, which may have different needs based on differences in physical layout, telephone costs, or other constraints.  Accordingly, as the telephone access, if any, that is "due" to ICE detainees will undeniably vary based on the status of the detainees' proceedings, their representation status, and their security classification, it is impossible to find a past or ongoing procedural due process violation on a classwide basis.

Second, even if the Court adopts a procedural due process analysis for these claims, Plaintiffs' analysis is flawed for the additional reason that it does not appropriately frame or weigh the governmental interests and burdens involved.  The *Mathews* test asks courts to weigh the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335.

Plaintiffs' analysis frames the governmental interest as "avoiding" additional procedures such as those in the 2011 PBNDS or "violating its own standards" (Pls.' Mot. at pp. 35, 37), and ignores the legitimate governmental interests in fulfilling Congress's mandates regarding immigration detention, *see, e.g.*, 8 U.S.C. §§ 1226(c), 1231(a)(2), as well as the legitimate security interests that each facility faces in granting telephone access to ICE detainees while still ensuring control over use of the telephones, security for those inside and outside of administrative segregation, and equitable access to telephones. *See supra* Part III.A.6. The fact that detainees may be permitted to make calls from ICE field offices in no way undermines the legitimate need to control use of the phones within the detention environment, or the security and staffing issues involved in transporting detainees from one area of the facility to another. *See, e.g.*, Shinners Decl. Ex. 31, Butler Dep. at 37:13-38:1, 109:12-110:10. As explained, these interests are legitimate and also significant. Further, the administrative burdens of both cost and ensuring detention space outweigh class members' interests in additional telephone access, particularly in light of the significant telephone access already afforded and the other available means of communication through which detainees may communicate with prospective counsel, retained counsel, and sources of evidence.

Third, and relatedly, certain assertions of fact underlying Plaintiffs' procedural due process theory are unsupported by any evidence, and Plaintiffs thus cannot be entitled to summary judgment on their First and Second Claims to Relief under this theory. *See generally* Fed. R. Civ. P. 56(a).[24] With respect to the first and second prongs, Plaintiffs posit (at p. 30) that

---

[24] Of course, Defendants argue that the Court should instead grant summary judgment for Defendants on these claims under the theory that there is no actual interference with class members' rights, let alone any "actual injury" with respect to their immigration court cases. *See supra* Sections IV.B, C.

the class members' liberty interests at stake are weighty and the risk of erroneous deprivation high in part because they assume that individuals remain detained longer by virtue of seeking continuances in order to obtain counsel or evidence for their immigration cases. Yet Plaintiffs do not point to any evidence that class members are actually detained longer than they would otherwise have been due to these continuances. *See also supra* Part III.A.2 (describing reasons why continuances cannot necessarily be attributed to the fact of detention). With respect the third prong, the facts regarding the administrative cost to both ICE and the facilities of enhancing telephone access are at least partially disputed. *Compare* Shinners Decl. Ex. 34, Hackett Report ¶¶ 34-35, *with* Berg Report, attached as Ex. A to Berg Decl. ISO Pls.' Mot. (ECF No. 120-23) at pp. 27-28 (differing as to the calculation of cost of hiring additional staff members).

**F. Defendants Are Entitled to Summary Judgment on Plaintiffs' First Amendment Claim (Third Claim for Relief) as Matter of Law Because Plaintiffs Have Not Alleged or Shown Interference with a Right Recognized by the Petition Clause.**

As a matter of law, Plaintiffs cannot succeed on their allegation that restrictions on telephone access "necessary to seek legal representation and obtain documents and evidence in support of their applications for immigration benefits" violate their right to petition the government for redress of grievances. Compl. ¶¶ 110-113 ("Third Claim for Relief"). First, applications for discretionary immigration benefits outside of the context of removal proceedings have not been considered petitions for redress of grievances under the meaning of the First Amendment's Petition Clause. Second, Plaintiffs have not demonstrated any actual interference with this right.

The First Amendment provides: "Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances." U.S. Const. Amend. I. "[T]he Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 131 S. Ct. 2488, 2494 (2011). "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives," and a petition "usually requests action by the government to address those concerns." *Id.* at 2495. An

application for immigrant or non-immigrant status is not a lawsuit, appeal, "dispute" or an airing of a political grievance to elected or other governmental officials; instead, it is an affirmative application for a discretionary benefit from the government. Such benefit applications are not considered petitions for redress of grievances. *See, e.g.*, *Friedl v. City of New York*, 210 F.3d 79, 86 (2d Cir. 2000) (in context of Section 1983 retaliation claim, distinguishing between *statutory* right to *apply* for public welfare benefits, and the right to *appeal* the denial of public benefits, the latter of which is protected by the First Amendment right to petition for redress of grievances); *Hill v. Walker*, No. 3:14-cv-62, 2015 WL 1486531, at *3-6 (S.D. Miss. Mar. 31, 2015) (finding a "major distinction" between the access to the courts protected by the Petition Clause and an application for government benefits).

Second, assuming for argument's sake that the Petition Clause did apply to applications for discretionary benefits, Plaintiffs have not shown that the telephone access conditions actually interfere with their ability to apply for such benefits. Notably, the right to petition does not guarantee any response, yet alone a successful petition. *Petersen v. Cazemier*, 164 F. Supp. 2d 1217, 1225 (D. Or. 2001) ("Plaintiff is not guaranteed redress, simply the right to seek it."); *Reardon v. Keating*, 980 F. Supp. 2d 302, 313 (D. Conn. 2013). And Defendants have not restricted mail or other means of petitioning USCIS for immigration benefits. Even if Plaintiffs could state a claim based on the alleged inability to obtain information for those applications, as enumerated in detail above, they have not shown that Defendants actively interfered with this ability. *Silva v. Di Vittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011) (holding that access claims based on the First Amendment right to petition require "active interference" with that right), *overruled on other grounds by Richey v. Dahne*, 807 F.3d 1202 (9th Cir. 2015). Although Plaintiff Lyon claims he had difficulty reaching government agencies to obtain information relevant to his ▮▮▮▮▮▮▮▮ before he retained a lawyer, he never specifically asked ICE—or anyone at his detention facility—to make a telephone call to the government agency for this purpose. *See, e.g.*, Shinners Decl. Ex. 24, Lyon Dep. at 88:1-92:2. He did not seek to write to the government agencies, *see id.*, nor does he assert that he sought assistance in sending legal mail to

the government agencies.[25]  Accordingly, he cannot show actual interference with his ability to either gather evidence for, or to submit, ███████████████

### G.    The Named Plaintiffs Do Not Have Standing to Assert Claims of Injury on Behalf of Class Members Who Speak Minority Languages or Who Are Indigent.

The named Plaintiffs in this action do not have standing, or lack representative capacity, to complain of and seek relief relating to conditions that do not affect them.  *See Casey*, 518 U.S. at 358 (holding that named plaintiffs cannot seek relief related to conditions that did not cause any injury to them).  Plaintiffs ask this Court to find numerous violations that do not bear in any way on their own claims or claimed injuries.  *See, e.g.*, Pl.'s Mot., Proposed Order Granting Summary Adjudication ("Proposed Order") (ECF No. 120-1).  The Court cannot do so, as Plaintiffs lack standing to assert violations on behalf of these individuals.

First, Plaintiffs cannot seek accommodations on behalf of those who speak languages other than English or Spanish, as all three named Plaintiffs speak either Spanish or English. Shinners Decl. Ex. 36, Neria-Garcia Dep. at pp. 7:21-8:25 (speaks and understands both Spanish and English); Shinners Decl. Ex. 7, Astorga-Cervantes Dep. at pp. 8:12-16, 24:10-25 (deposition conducted in Spanish; Plaintiff Astorga-Cervantes also speaks and understands English); Shinners Decl. Ex. 24, Lyon Dep. (deposition conducted in English).  None of the named Plaintiffs claim to have been injured by the failure to provide postings or other instructions in languages other than English or Spanish, nor do they claim that the interpreter services provided by ICE and the facilities were inadequate.

Second, Plaintiffs cannot seek accommodations on behalf of indigent detainees because there is no evidence cited in Plaintiffs' Motion for Summary Adjudication demonstrating that any of the three named Plaintiffs were indigent.  Plaintiffs have submitted no declaration from

---

[25] To the extent that Plaintiffs now raise a First Amendment freedom of speech claim (*see* Pls.' Mot. at pp. 46:28-47:22), this claim was not pleaded in the Complaint and again, should not be considered for the reasons stated *supra*, note 13.  *See* Suppl. Compl. at pp. 26-27 (Third Claim for Relief) (expressly stating "Right to Petition the Government for Redress of Grievances (First Amendment Petition Clause)").

Plaintiff Astorga-Cervantes, nor any documentation reflecting his commissary account or other means of demonstrating indigence. The declarations submitted by Plaintiffs Neria-Garcia and Lyon likewise do not demonstrate indigence throughout their detention. *See* Decl. of Nancy Neria-Garcia ISO Pls.' Mot. (ECF No. 120-7); Decl. of Audley Barrington Lyon ISO Pls.' Mot. (ECF No. 120-4).[26]

## H. For All of These Reasons, the Record Does Not Demonstrate Entitlement to the Systemwide Declaratory and Injunctive Relief Plaintiffs Seek.

Plaintiffs ask the Court to now declare classwide violations of detainees' rights and to order the parties to meet and confer to arrive at appropriate injunctive relief. *See* Pls.' Mot, Proposed Order. In considering whether permanent injunctive relief is warranted, a court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 997 (9th Cir. 2011).

Plaintiffs have not shown a demonstrable or imminent interference with their rights to be represented by counsel, to present evidence, and to a fair immigration hearing, or with any other due process rights they now claim. Further, their First Amendment claim fails as a matter of law. Accordingly, they are not entitled to the systemwide declaratory and injunctive relief that they seek.

At most, Plaintiffs have demonstrated isolated incidences of interference with communication with counsel or gathering evidence. Plaintiffs' argument that the Court may establish a constitutional floor on this basis, regardless of whether they have demonstrated a widespread actual or imminent violation of detainees' rights, is contrary to Supreme Court precedent. *See Casey*, 518 U.S. at 358; *see also Perez-Funez v. District Director, INS*, 619 F.

---

[26] *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), is not to the contrary. In *Melendres*, the Court expressly distinguished *Lewis* because redress of the constitutional injuries suffered by the plaintiffs in *Melendres*—that is, being subject to racial discrimination by law enforcement during "saturation patrols"—would redress the injuries of those who suffered the same constitutional injury by law enforcement outside of saturation patrols. *Id.* at 1263-64. Here, however, redress of the injuries allegedly suffered by the Named Plaintiffs could not redress injuries, if any, of unnamed class members who speak only minority languages or who are indigent, who would potentially have different needs or requirements.

Supp. 656 (C.D. Cal. 1985) ("[E]ven if some isolated incidents of mistreatment occurred, these are insufficient to justify the nationwide relief plaintiffs seek." (citing *Allee v. Medano*, 416 U.S. 802, 815 (1974)).

As the Supreme Court explained in *Casey*, the requirement that widespread actual injury be established is important to the preservation of the judiciary's role in adjudicating actual controversies:

> It is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts; it is for the political branches of the State and Federal Governments to manage prisons in such fashion that official interference with the presentation of claims will not occur. Of course, the two roles briefly and partially coincide when a court, in granting relief against actual harm that has been suffered, or that will imminently be suffered, by a particular individual or class of individuals, orders the alteration of an institutional organization or procedure that causes the harm. But the distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly. If—to take another example from prison life—a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care, see *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976), simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons.

*Casey*, 518 U.S. at 349-50. Plaintiffs cannot justify a finding of a systemwide violation on the basis of the current record, and cannot seek systemwide relief.

I.    **The Court Should Not Consider Inadmissible Hearsay and Testimony Unsupported by Personal Knowledge on Summary Judgment.**

Under Federal Rule of Civil Procedure 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *See Norse v. City of Santa Cruz*, 629 F.3d 966 (9th Cir. 2010) ("While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through

admissible evidence." (citing Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324)); *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can [ ] consider [only] admissible evidence in ruling on a motion for summary judgment."). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Gray v. Suttell & Assoc.*, --- F. Supp. 3d --- , Nos. CV-09-251-EFS, CV-10-5132-EFS, 2015 WL 4756837, at *9 (E.D. Wash. Aug. 12, 2015) (quoting Fed. R. Civ. P. 56(c)(2) 2010 advisory committee's note). Further, "[a]n affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Defendants object to several portions of the declarations and depositions submitted by Plaintiffs as containing inadmissible hearsay under Federal Rules of Evidence 801(c) and 802, and as relying on speculation rather than personal knowledge as required by Federal Rule of Evidence 602. A table outlining Defendants' specific objections is attached as Exhibit A hereto.

Assertive statements made by someone other than the testifying witness, which are offered for the truth of the matter asserted, are generally prohibited unless an exception to the hearsay rule applies. Fed. R. Evid. 801(c), 802. Accordingly, the Ninth Circuit has held that courts "may not consider inadmissible hearsay evidence which could not be presented in an admissible form at trial." *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1037 (9th Cir. 2013) (citing *Medina v. Multaler, Inc.*, 547 F.Supp.2d 1099, 1122 (C.D. Cal. 2007)). Even at the summary judgment stage, "[t]he matters must be known to the declarant personally, as distinguished from matters of opinion or hearsay." *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1023 (N.D. Cal. 2006) (citing *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995)). "A declarant's mere assertions that he or she possesses personal knowledge and competency to testify are not sufficient." *Id.* (citing *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir.1990)). For example, in *Boyd*, the court found that hearsay asserted in a declaration could not support a motion for summary judgment where there was no basis for a hearsay exception. 458 F.3d at 1025. Here, Plaintiffs rely on several direct hearsay statements,

or statements based on hearsay, in the submitted declarations and deposition. *See, e.g.*, Decl. of Anoop Prasad ISO Pls.' Mot. (ECF No. 120-22) ¶ 10 ("However, detainees frequently told me that they have difficulty navigating the platform or are unaware of its existence. In my experience, people in detention typically learn of the platform and how to use it from someone who has been in detention for a longer period of time."). Plaintiffs have not shown that any of the out-of-court statements upon which the testifying declarants rely can be proven in an admissible form at trial, as they have not identified those out-of-court declarants as witnesses, either in their initial disclosures or in their instant Motion for Summary Judgment.

Similarly, speculative statements for which the declarant obviously lacks personal knowledge cannot be used to support a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.")); *see also Welenco, Inc v. Corbell*, --- F. Supp. 3d ---, No. 2:13-cv-0287, 2015 WL 5026190, at *2-3 (E.D. Cal. Aug. 25, 2015) (declining to rely on declarations lacking personal knowledge submitted to support a motion for summary judgment); *Clark v. County of Tulare*, 755 F. Supp. 2d 1075, 1084 (E.D. Cal. 2010) ("Attorney affidavits made on information and belief do not satisfy the summary judgment procedural requirements."). Plaintiffs include declarations containing speculative statements that are not obviously supported by personal knowledge. *See, e.g*, Supplemental Decl. of Marie Vincent ISO Pls.' Mot. (ECF No. 120-17) ¶ 12 ("As far as I know, telephone access near the video hearing rooms ('VTC') at the West County Detention Facility is limited to individuals who are scheduled for court hearings.").

For these reasons, the Court should strike and decline to consider the objected-to portions of the materials submitted by Plaintiffs in support of their Motion for Summary Adjudication.

## V. Conclusion

For the foregoing reasons, the Court should grant summary judgment for the Defendants on all claims asserted in the Complaint.

DATED:  January 5, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
District Court Section

ELIZABETH J. STEVENS
Assistant Director
District Court Section

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
BRIAN C. WARD
JENNIFER A. BOWEN
Trial Attorneys
Office of Immigration Litigation
Civil Division
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-8259
Email: Katherine.j.shinners@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of January, 2016, a copy of **DEFENDANTS' NOTICE OF MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION** was served with the Clerk of Court by using the CM/ECF system, which provided an electronic notice and electronic link of the same to all attorneys of record through the Court's CM/ECF system.

*/s/ Katherine J. Shinners*
KATHERINE J. SHINNERS
Trial Attorney, District Court Section
Office of Immigration Litigation
Civil Division
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044